ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Plaintiff in Error*, v. ROBERT BEAZLEY, *Defendant in Error*.

1. Where an assignment of error is predicated upon the overruling of a demurrer to the declaration, the plaintiff in error will be confined to 'the ground stated in the demurrer and

argued in the appellate court, and such grounds as are not argued will be treated as abandoned.

2. A demurrer cannot be addressed to fragmentary parts of a pleading or to certain portions of the counts in a declaration, and, where a demurrer is interposed to the declaration "and each of the four counts thereof," in passing thereon the entire declaration must be considered and, if it is found to contain one good count, the demurrer should be overruled.

3. In adopting a statute from another state, any known and settled constitution placed thereon by the courts of last resort of such state is likewise adopted, in so far as that construction is not inharmonious with the spirit and policy of our own general legislation upon the same subject.

4. Sections 3148, 3149 and 3150 of the general statutes of 1906 were originally adopted here from the Code of the State of Georgia, with the exception of the concluding words of section 3150, "No contract which restricts such liability shall be legal or binding," which words were added by the legislature of the state of Florida, therefore the known and settled constructions placed upon such sections, with the exception noted, by the Supreme Court of the state of Georgia, prior to our adoption of such sections, must be held to have been likewise adopted.

5. Section 3150 of the general statutes of 1906 limits the rule that an employe cannot recover for an injury occasioned by the negligence of a fellow servant to cases where the person injured is guilty of contributory negligence, and the word "employe" as used in that relation means such an employe as would be a fellow servant under the rule above mentioned.

6. The conductor in charge of a railroad train is not a fellow servant with brakemen and flagmen employed on such train, but as to them occupies the position or relation of vice-principal, standing in the place of and representing the railroad corporation, and it is the duty of such brakemen and flagmen to obey all reasonable rules and orders given them by such conductor about the business of their employment.

7. A flagman or other employe of a railroad company would not be warranted or justified in obeying an order of the conductor in charge of a train commanding him to go into a place or

position of extra hazard, unusual danger or great peril, which would be readily apparent, or to assume a rash or dangerous risk that would be patent to any reasonably cautious or prudent man and repugnant to good judgment and common sense, and an employe who obeyed such an order as above indicated would do so at his own risk and peril.

8. In actions where negligence is the basis of recovery, it is not necessary for the declaration to set out the facts constituting the negligence; but an allegation of sufficient acts causing injury, coupled with an allegation that they were negligently done, will be sufficient.

9. In an action where negligence is the basis of recovery and the first three counts of the declaration allege that the injury to the plaintiff was occasioned by the fact that the conductor of defendant's train "negligently and carelessly left said switch open," &c., and the fourth count alleges "that the defendant, regardless of its duty in this respect, negligently and carelessly left said switch and track in an unsafe and dangerous condition, whereby," &c., and all four counts allege that plaintiff was without negligence on his part, it is sufficient to withstand an attack by a demurrer addressed to such grounds.

10. In an action where negligence is the basis of recovery, a declaration which alleges in substance that plaintiff, within the scope of his employment or in the ordinary discharge of his duties as a flagman or brakeman of defendant's train, was ordered and required by the conductor in charge thereof to station himself on the top of the car or cab for the purpose of giving signals to the engineer, which order plaintiff obeyed and while engaged in so doing was injured by the negligence of defendant, is not demurrable on the ground that the allegations of the declaration show that plaintiff voluntarily exposed himself to a known and obvious danger which was impending at the time he obeyed such order, or that he was guilty of such negligence in so doing as to preclude his recovery of damage for injuries sustained by him. It is not apparent as a matter of law from such allegations nor could it be judicially declared that it is necessarily hazardous or dangerous for a flagman or brakeman in the employ of a railroad company to obey such an order so as to make him guilty of negligence in so doing.

11. There is no absolute rule applicable to all actions where negligence is the basis of recovery by which to determine the question of the liability of the master to the servant, when the servant is injured in the performance of a duty which he is ordered or required by the master or his repesentative to perform, but the question of liability will depend upon the circumstances of each case.

12. An employe of a railroad company, acting in the strict line of his duty, may properly do that which, in a stranger, would clearly be negligent, but which may not stop the employe from recovery against such company.

13. In an action at law wherein a demurrer is interposed to replications to a plea, all previous pleadings are thereby opened up, and judgment should be rendered thereon against the party who committed the first serious error, and if the plea should be held to be bad, judgment on the demurrer is properly rendered against the defendant.

14. Public policy is variable, the very reverse of that which is the policy of the public at one time may become public policy at another; hence no fixed rules can be given by which to determine what is public policy. A contract is not void as against public policy, unless it is injurious to the interests of the public, or contravenes some established interest of society. It is the province of a court to expound the law only, not to speculate upon what is the best, in its opinion, for the advantage of the community, hence the public policy of a state or nation should be determined by its constitution, laws and judicial decisions; not by the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public. Judicial tribunals should hold themselves bound to the observance of rules of extreme caution when called upon to declare a transaction void on the grounds of public policy, and prejudice to the public interest must clearly appear before a court would be warranted in pronouncing the transaction void on this account.

15. A contract between an employe of a railroad company and such company, by the terms of which such employe when physically injured, whether as a result of his own negligence or not, or when sick, is to receive pecuniary and other valuable benefits, and which stipulates that the voluntary accep-

ance by such employe of such benefits in case of injury to him is to operate as a release of the railroad company from all liability on account of such injury, such contracts being popularly or generally known as "Relief and Hospital Department" contracts, is not void as being opposed and contrary to public policy.

16. All parties litigant who are *sui juris*, whether railroad corporations or their employes, in the eyes of the law, before the court, stand upon an equal footing, entitled to equal rights and protection, and none to special privileges. All parties are tree to make whatever contracts they please, so long as no fraud or deception is practiced and the contract is legal in all respects.

17. While it may be conceded that, generally speaking, among the inalienable rights of the citizen is that of contract, yet such liberty is not absolute and universal. It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts. The legislature undoubtedly had the power to enact section 3150 of the general statutes of 1906, relating to the liability of railroad companies for injuries to employes, and to provide, as was done therein, that "no contract which restricts such liability shall be legal or binding," and such section is constitutional.

18. In the absence of the charter of a railroad company, a foreign corporation, from the record and of any information therein as to what powers were conferred upon it by such charter, we cannot undertake to say whether the formation by such railroad company of a "Relief and Hospital Department" and guaranteeing the payment of its obligations was, or was not, *ultra vires*.

19. Any pleading, whether at law or in equity, is to be most strictly construed against the pleader thereof, and this principle applies with especial force to a plea which is in the nature of a confession and avoidance, and where such a plea has on the face of it two intendments, it must be construed most strongly against the party who pleads it.

20. In an action by an employe against a railroad company seeking to recover damages for personal injuries alleged to have been occasioned by or through the negligence of the defendant

and a plea is interposed attempting to set up as a defense and a bar to the action a contract and release executed by the plaintiff in pursuance of the terms thereof, all of the facts and circumstances connected with the making of such contract, as well as all of its terms and conditions, and also of the facts and circumstances connected with the execution of such release, must be deemed to be peculiarly within the knowledge of the defendant and it must be assumed that it has stated them in its plea, by which it seeks to discharge itself as favorably and strongly as possible, and, if it has omitted essential facts therefrom or has stated such facts therein as show that the contract attempted to be pleaded as a defense is not valid, legal or binding, or that the release does not constitute a defense, it must suffer the consequences of so doing. In a plea of this nature, where the contract invoked as a defense lies close to the line dividing agreements that are lawful from those which are unlawful, it is proper to require the defendant to set out the arrangement which existed between itself and its employes, in the form of a relief department, with such fullness and certainty that the court may be able to say from an examination of the same that the arrangement is fair and reasonable, and that it is neither objectionable on the grounds of public policy or because it is in contravention of a statute, nor voidable for lack of mutuality or for want of a valuable or sufficient consideration. The plea examined and found to be bad, consequently the demurrer was properly sustained thereto. (Taylor and Parkhill, JJ., dissenting.)

21. In determining the correctness of charges and instructions, they should be considered as a whole; and, if as a whole, they are free from error, an assignment predicated on insolated paragraphs or portions, which, standing alone, might be misleading, must fail.

22. No error was committed in giving the following charge or instruction:

"The jury are the sole judges of the weight of the evidence and the credibility of the witnesses and where the testimony is conflicting it is your duty to reconcile it if you can upon the theory that such witnesses have sworn to the truth, but if you cannot do so, then you are privileged to discard so much or such parts of it as you deem unworthy of credit."

23. Assumption of risk by an employe must be specially pleaded, being an affirmative defense, in order to be available.

24. Where one of the grounds in the motion for a new trial is that the amount of the verdict is excessive, and the trial court has denied such motion, in passing upon an assignment predicated thereon, an appellate court will not disturb the verdict on such grounds, unless the amount is such as to shock its judicial conscience or as to indicate that the jury must have been unduly influenced in some way, or swayed by bias, passion or prejudice. (Taylor and Parkhill, JJ., dissenting.)

This case was decided by Division A.

Writ of Error to the Circuit Court for Jefferson County.

The facts in the case are stated in the opinion of the court.

*W. E. Kay, Jno. E. Hartridge* and *D. A. Finlayson,* for plaintiff in error;

*Alex. St. Clair Abrams* and *T. L. Clarke,* for defendant in error.

SHACKLEFORD, C. J.—This is an action of trespass on the case instituted by the defendant in error as plaintiff against the plaintiff in error as defendant in the circuit court for Jefferson county, seeking to recover damages for personal injuries received by plaintiff by reason of the alleged negligence of defendant. Trial was had before a jury, resulting in a verdict for the sum of $20,-000 in favor of plaintiff, upon which judgment was entered, which defendant seeks to have reviewed here by writ of error.

The first error assigned is based upon the overruling

of the demurrer to the declaration. The declaration contains four counts, but there is no occasion for setting them out in full. It will suffice to state that the declaration alleges that on the 14th day of January, 1905, the plaintiff was in the employ of defendant in the capacity of flagman, and on that day while in the due and proper course of his employment as such flagman on a freight train of defendant drawn by a locomotive, which train was in charge of a conductor, an employe of defendant, it became necessary to back such train on to a certain siding in the county of Citrus, and "plaintiff was ordered by the conductor of said train, whose orders he was required and compelled to obey, to station himself on the car or cab at the rear end of the train, and to give signals for the engineer to back said train, as soon as he, the conductor, had turned the switch at the siding, and had notified him to give such signals;" that, in obedience to the signal of the conductor, plaintiff gave the necessary signal to the engineer, but that said switch was not turned so as to enable the backing train to pass safely over the switch on the rails, but, on the contrary, was negligently and carelessly left open, or partly open, by reason whereof the cab or car on which plaintiff was stationed was thrown from the track and the plaintiff was hurled therefrom and occasioned great bodily injuries, which are described and which resulted in the permanent crippling of plaintiff and caused him to suffer great pain and anguish. The damages were laid at $50,000.

The demurrer contained three grounds, but the first and third grounds are expressly abandoned by defendant in its brief, therefore only the second ground is before us for consideration. Atlantic Coast Line Railroad Company v. Crosby, 53 Fla. 400, 43 South. Rep. 318 authorities there cited. This ground is as follows:

"The statute makes no distinction between the grades or classes of employes, and an employe is not compelled to obey the order of a superior when obedience thereto would take him into a place of danger or expose him to danger, or be likely to cause injury to him."

In its brief defendant says that this ground of the demurrer "goes to this part of the declaration" which alleges that "plaintiff was ordered by the conductor of said train, whose orders he was required and compelled to obey, to station himself on the car or cab at the rear end of the train," and the entire argument in support of this assignment is made along this line.

On inspection it is found that the demurrer was interposed to the declaration as a whole "and each of the four counts thereof." It is settled law in this court that where the demurrer is to the whole declaration, and it is found to contain one good count, the judgment on the demurrer must be for the plaintiff. See concurring opinion in Atlantic Coast Line Railroad Company v. Benedict Pineapple Co., 52 Fla. 165, 42, South. Rep. 530, text 534, and authorities there cited. It is also well settled "that a demurrer cannot be addressed to fragmentary parts of a pleading. Thus a demurrer to a count in a declaration must be to the whole count if it presents a single cause of action, and will not be entertained if directed against a part thereof." 6 Ency. of Pl. & Pr., 300, and authorities there cited. This is in accordance with the principle decided by this court, that a demurrer to a plea goes to the whole of it, and should be sustained or overruled as an entirety. Hooker v. Forrester, 53 Fla. 392, 43 South. Rep. 241, and authorities therein cited; Griffing Brothers Co. v. Winfield, 53 Fla. 589, 43 South. Rep. 687. All four of the counts in the declaration contain the statement in the same language, to which defendant says its demurrer

is directed, and the negligence of defendant is charged with only slightly varying language in such counts. We must consider the declaration, then, as an entirety, but confine ourselves to the ground of demurrer urged before us and the argument made in support thereof. The only authority cited by defendant is Duval v. Hunt, 34 Fla. 85, 15 South. Rep. 876. The following language in the opinion rendered therein, on page 107 of 34 Fla., pages 883 of 15 South. Rep., quoted by this court from Western & Atlantic R. R. Co. v. Adams, 55 Ga. 279, text 281, is relied upon by defendant in support of its contention: "The statute makes no distinction between the grades or classes of employes of a railroad company, and therefore the courts are not authorized to recognize any such distinction, so as to enable the plaintiff to recover on the principle of contributory negligence, as assumed in the charge of the court." We find that this quoted language in the case of Duval v. Hunt, *supra* was applied to the construction of Chapter 3744, Laws of 1887, which this court found was adopted by our legislature from the statutes of the state of Georgia. As was said in the opinion in the cited case, 34 Fla. 105, 15 South. Rep. 882, "Besides our adoption of the terms of the statute itself, according to the well settled rule, we also adopt, as forming an integral part of the same, any known and settled construction that had been placed thereon by the courts of the state from which it has been adopted, in so far as that construction is not inharmonious with the spirit and policy of our own general legislation on the same subject." In line with the Georgia court, this court in Duval v. Hunt, *supra,* held that "under the provision of the statute an employe of a railroad company cannot recover damages from such company for injuries sustained by him on account of the negligence or carelessness of another employe, unless

wholly without fault himself, even though in perform-ing the act that results in the injury he was acting under the orders of a superior."

Chapter 3744 Laws of 1887, was expressly repealed by Chapter 4071, Laws of 1891, which forms sections 3148, 3149 and 3150 of the General Statutes of 1906. However, as was said by this court in Atlantic Coast Line R. R. Co. v. Ryland, 50 Fla. 190, text 198, 40 South. Rep. 24, text 27, in construing Chapter 4071, Laws of 1891, and noting the changes made therein, "Therefore the adjudications of our own and of the Georgia courts touching other features of the statute that remain unchanged by the said Chapter 4071, Laws of 1891, will still govern." It was therein asserted by this court, "that according to the express terms of the statute an employe, in order to recover from the mas-ter for an injury sustained through the negligence of a fellow servant must himself be entirely free from fault or negligence." Also see Florida Cent. & P. R. Co. v. Mooney, 40 Fla. 17, 24 South. Rep. 148. Conceding the correctness of the principles to which we have re-ferred as enunciated in the three cited cases, as well as of the principles enunciated in the Georgia cases, upon which the decisions of this court were based, as applied to the facts and circumstances disclosed in such cases, how does it avail defendant in support of its contention?

As was said by this court in Louisville & Nashville R. R. Co. v. Wade, 46 Fla. 197, 35 South. Rep. 863, "Section 3 of Chapter 4071 of the Acts of 1891 limits the rule that an employe cannot recover for an injury occasioned by the negligence of a fellow servant to cases where the person injured is guilty of contributory neg-ligence, and the word 'employe' as used in that relation means such an employe as would be a fellow servant un-der the rule above mentioned." We must determine,

21—Vol. 54

then, whether or not the conductor in charge of a train and a flagman are fellow-servants.

Turning now to the decisions of the Georgia supreme court, we find that the following instructive distinction has been made by that court in opinions rendered both prior and subsequent to the adoption of our statute.

As was said in Central Railroad v. DeBray, 71 Ga. 406, text 418, decided in 1883, "But it is insisted that the plaintiff was not bound to obey the orders of the conductor to get off of the train before the same had ceased running. The conductor acted for the defendant corporation; he had charge and command of the train, and it was not the fault of the plaintiff in obeying this order, and defendant cannot set up the wrongful act of itself or agents to excuse itself from liability to one who merely obeys an order of this sort."

In Prather v. Richmond & D. R. Co., 80 Ga. 427, text 436, 9 S. E. Rep. 530, it was said, "The conductor was in charge of the train.  *  *  *  The servant is bound to obey all reasonable rules and orders given him by his superior about the business of his employment."

In Mills v. East Tennessee, V. & G. Ry. Co., 87 Ga. 102, text 105, 13 S. E. Rep. 205, it was said, "In the absence of a rule or regulation prescribed by such superior officer, addressed to and binding alike on subordinates, the doctrine seems to be well settled that a conductor has the charge and control of all persons employed on his train, and that they are bound to obey *his* orders. In the case of Chicago, M. & St. P. Ry. Co. v. Ross, 112 U. S. 377, text 390, 5 Sup. Ct. Rep. 184, Justice Field said: 'We know from the manner in which railroads are operated that, subject to the general rules and orders of the directors of the companies, the con-

ductor has entire control and management of the train to which he is assigned. . He directs when it shall.start, at what speed it shall run, at what stations it shall stop, and for what length of time, and everything essential to its successful movements, and all persons employed on it are subject to his orders. In no proper sense of the term is he a fellow-servant with the fireman, the brakeman, the porters and the engineer. The latter are fellow-servants in the running of the train under his direction; as to them and the train, he stands in the place of and represents the corporation.' This doctrine has also been recognized by this court in Prather v. Richmond & D. R. Co., 80 Ga. 427, text 436, 9 S. E. Rep. 530, wherein Justice Simmons remarked:  'The conductor was in charge of the train.  *  *  *  He represented the company. It was his right and duty to give all necessary orders for the protection of the interests of the company and the safety of its servants.' Other authorities could be cited, but the above are doubtless sufficient to support a proposition so well-founded in common sense and experience."    Also see to the same effect Krogg v. Atlanta and West Point R. R., 77 Ga. 202, and especially Spencer v. Brooks, 97 Ga. 681, 25 S. E. Rep. 480, citing the Prather and Mills cases *supra,* and holding that "under such circumstances the conductor is the vice-principal of the railroad company." Brush Electric Light & Power Co. v. Wells, 110 Ga. 192 S. E. Rep. 365, and City Council of Augusta v. Owens, 111 Ga. 464, 36 South. E. Rep. 830, contain valuable discussions of the question and citations of authorities along the same line.    Thus we see that it has been distinctly and repeatedly recognized by the Supreme Court of Georgia that the conductor of a railroad train is not a fellow servant with brakemen and flagmen, but as to them occupies the position or relation of vice-principal.

The statute having had this known and settled construction put upon it by the Georgia court prior to our adoption thereof, we must be held to have adopted such construction also.   However, we fully approve of this distinction and of the language which we have quoted from the Georgia decisions.

Of course a flagman or other employe of a railroad company would not be warranted or justified in obeying an order of the conductor commanding him to go into a place or position of extra hazard, unusual danger or great peril, which would be readily apparent, or to assume a rash or dangerous risk that would be patent to any reasonably cautious or prudent man and repugnant to good judgment and common sense.   See Roul v. East Tennessee, V. & G. Ry. Co., 85 Ga. 197, 11 S. E. Rep. 558, and authorities there cited; Whatley v. Macon & Northern Ry. Co., 104 Ga. 764, 30 S. E. Rep. 1003; Wrightsville & T. R. Co. v. Lattimore, 118 Ga. 581, 45 S. E. Rep. 453.   An employe who obeyed such an order as we have indicated above would do so at his own risk and peril.

We turn again to the declaration in the instant case and find that the first three counts thereof allege that the injury to plaintiff was occasioned by the fact that the conductor of defendant's train "negligently and carelessly left said switch open," etc., and that the fourth count alleges "that the defendant, regardless of its duty in this respect, negligently and carelessly left said switch and track in an unsafe and dangerous condition, whereby," etc., and all four counts allege that plaintiff was without negligence or fault on his part.   It is settled law in this court that in actions where negligence is the basis of recovery, it is not necessary for the declaration to set out the facts constituting the negligence; but an allegation of sufficient acts causing injury,

coupled with an averment that they were negligently done, will be sufficient. Jacksonville Electric Co. v. Schmetzer, 53 Fla. 370, 43 South. Rep. 85, and authorities there cited. It is also elementary that a demurrer admits the truth of all such matters of fact as are sufficiently pleaded. Atlantic Coast Line R. R. Co. v. Crosby, 53, Fla. 400, 43 South. Rep. 318, and authorities there cited.

If the plaintiff within the scope of his employment or in the ordinary discharge of his duties as a flagman of defendant was ordered and required by the conductor to station himself on the top of the car or cab for the purpose of giving signals to the engineer, can it be said that he was negligent in obeying such order and that such negligence on his part occasioned or contributed to the injury? In order to answer this question in the affirmative, we would have to hold that we judicially know that it is necessarily hazardous or dangerous for a flagman in the employ of a railroad company to station himself on the top of a car or cab for the purpose of giving signals to the engineer, in obedience to the orders of the conductor. It is a matter of common knowledge and every-day observation that employes of railroad companies whether flagmen or brakemen, in the ordinary discharge of their duties, do go on top of the cars of freight trains, station themselves thereon even when the train is moving. See Au v. New York, L. E. & W. R. Co., 29 Fed. Rep. 72, text 83. If the declaration had failed to show what right plaintiff had to be on top of the car, or for what purpose he stationed himself there, or that he was engaged in the discharge of any duty to defendant at the time he was injured, it might well have been open to attack by proper grounds of demurrer. See Louisville & Nashville R. R. Co. v. Hall, 87 Ala. 708, 6 South. Rep. 277, S. C. 13 Amer. St. Rep. 84, 4 L.

R. A. 710. Such defects, however, are not found in the declaration in the instant case.

As we said in Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516, "There is no absolute rule applicable to all cases by which to determine the question of the liability of the master to the servant, where the servant is injured in the performance of a duty which he is ordered or required by the master or his representative to perform, but the question of liability will depend on the circumstances of each case."

Among many authorities which we have examined, the following, in addition to those already cited, will prove instructive concerning the assignment under consideration: Roul v. East Tennessee, Virginia & Georgia Ry. Co., 85 Ga. 197, 11 S. E. Rep. 558; Wood v. Georgia R. R. & Banking Co., 84 Ga. 363, 10 S. E. Rep. 967; Central R. R. Co. v. Hubbard, 86 Ga. 623, 12 S. E. Rep. 1020; Simmons v. East Tennessee V. & G. Ry. Co., 92 Ga. 658, 18 S. E. Rep. 999; Middle Georgia & Atlantic Ry. Co. v. Barnett, 104 Ga. 582, 30 S. E. Rep. 771; Augusta Southern R. R. Co. v. McDade, 105 Ga. 134, 31 S. E. Rep. 420; Whatley v. Macon & Northern Ry. Co., 104 Ga. 764, 30 S. E. Rep. 1003; Wrightsville & Tenville R. R. Co. v. Lattimore, 118 Ga. 581, 45 S. E. Rep. 453; Rolseth v. Smith, 38 Minn. 14, 35 N. W. Rep. 565, S. C. 8 Amer. St. Rep. 637; Wallace v. Central Vermont R. R. Co., 138 N. Y. 302, 33 N. E. Rep. 1069; Hopkins Law of Personal Injuries, §§277, 311 and 312.

Giving the ground of the demurrer urged before us the most favorable construction possible, we could not say, as a matter of law, that the allegations of the declaration show that plaintiff voluntarily exposed himself to a known and obvious danger which was impending at the time he obeyed the order of the conductor to sta-

tion himself on the car or cab at the rear end of the train for the purpose of giving signals to the engineer as to the backing of the train. Western & Atlantic R. R. Co. v. Bryant, 123 Ga. 77, 51 S. E. Rep. 20. In other words, it is not apparent as a matter of law from the allegations of the declaration that plaintiff was guilty of negligence, so as to preclude any recovery for the injuries sustained by him. Wood v. Georgia R. R. & Banking Co., 84 Ga. 363, 10 S. E. Rep. 967; Central R. R. Co. v. Hubbard, 86 Ga. 623, 12 S. E. Rep. 1020; Central R. R. Co. v. DeBray, 71 Ga. 406.

As is well said on page 273 of Buswell's Personal Injuries (2nd ed.), "An employe, acting in the strict line of his duty, may properly do that which, in a stranger, would clearly be negligent, but which may not estop the employe from recovery against his master."

We are clear that no error was committed in overruling the demurrer to the declaration, therefore the first assignment must fail.

## II.

Upon the overruling of the demurrer to the declaration, defendant filed a plea setting up what is termed in defendant's brief "the Relief and Hospital Department Contract" of plaintiff with defendant, to which plea plaintiff filed ten replications; to all of which defendant demurred and also filed a motion to strike them out under section 1043 of the Revised Statutes of 1892, as well as a motion to require plaintiff to be put to his election as to which replication he would retain. Subsequently defendant also filed a plea of not guilty.

Upon the argument of the demurrer to the plaintiff's replications to the defendant's plea, the court made the

following order: "This cause coming on to be heard upon the defendant's demurrer to the plaintiff's replications to defendant's plea, and was argued by counsel for the respective parties, and after due consideration thereof, the court being of opinion that the defendant's said plea is bad and that its insufficiency is reached by said demurrer—

It is thereupon considered and ordered by the court that the defendant's demurrer to plaintiff's replications be and the same is hereby overruled, and that the defendant's plea to plaintiff's declaration be and the same is hereby overruled, set aside and vacated, and that the defendant have leave to plead over on or before the first Monday in June, A. D. 1906."

This ruling forms the basis for the second assignment. No ruling appears from the transcript to have been made on either motion. By leave of the court, defendant filed the following additional pleas: "The defendant, by John E. Hartridge and D. A. Finlayson, its attorneys, for a further plea in this behalf to the declaration and each of the four counts thereof, by leave of the court first had and obtained, says: That prior to the time of the accident complained of the defendant and its employees organized a relief department as a department of the defendant company's service, of the nature of a mutual benefit association for the relief of the employes of said defendant company injured or becoming sick while in the service of said defendant company, and for other purposes, known as the Relief Department of the Atlantic Coast Line Railroad Company, which was a department of the defendant company, divided into five classes of members and determining the class in which an employee might be a member by his regular or usual monthly pay, as follows:

Monthly Pay.                    Highest Class.

Less than $35.00...............................1st.
$35.00 or more but less than $55.00..............2nd.
$55.00 or more but less than $75.00..............3rd.
$75.00 or more, but less than $95.00.............4th.
$95.00 or more................................5th.

and with further provisions covering employes paid by
the trip, piece or in any other way than by the month;
that said association thus formed was a department for
the protection and relief solely of employes of said de-
fendant company injured or becoming sick, or dying in
the service of said company, and provided for the pay-
ment of definite sums of money for temporary and per-
manent injuries received, and in case of sickness or dis-
ability, temporary or permanent, or death from any cause
while in the service of the company, and for care and
maintenance under certain specified terms and condi-
tions provided in the organization and rules of said Re-
lief Department, and that said membership in said de-
partment was voluntary; that the relief fund of said
department consists of voluntary contributions from the
members thereof, as follows: First class: seventy-five
cents per month; Second class: one dollar and fifty cents
per month; Third class: two dollars and twenty-five
cents per month; Fourth class: three dollars per month;
Fifth class: three dollars and seventy-five cents per
month, income derived from investments and from in-
terest paid by the defendant company, and advances
made by said defendant company, when necessary to
pay benefits, as they become due; that said Atlantic Coast
Line Railroad Company, under and by virtue of said
rules and regulations governing said Relief Department,
assumed general charge of the department and guaran-
teed the fulfillment of its obligations and has taken
charge thereof continuously, and has the custody of the

moneys belonging to the relief fund, and has become re-
sponsible for the safe keeping of said fund and guaran-
teed to pay into the fund interest at the rate of four per
cent. per annum on monthly balances in its hands and
to advance from its own funds money to pay benefits
when the amount contributed by the members, with in-
terest and other income is not sufficient to pay benefits
as they become due and to supply the necessary facilities
for conducting the business of the department and to pay
all of the operating expenses thereof, and has in pur-
suance thereof, complied with, performed and discharged
all of said obligations before mentioned upon the part
of said defendant company to be complied with, per-
formed and discharged, and has also furnished the neces-
sary hospital buildings and furniture, bedding, instru-
ments, utensils, appliances, surgeons and nurses for the
care of employes who become disabled by injuries, sick-
ness or otherwise; that at and prior to the time of said
injury, complained of in said first, second third and
fourth counts of plaintiff's declaration, to-wit: on the
18th day of July, 1903, the plaintiff made application for
membership in the first class, with no additional death
benefit, in the relief fund of the relief department of
said defendant railroad company, and in and by said
application, in express terms, consented and agreed to
be bound by the regulations of the said relief depart-
ment, which regulations he stated in said application he
had read himself, or had had same read to him, and was
accepted and became a member thereof, and continued
to be and was a member thereof at the time of the in-
juries sustained by him, to-wit:    on the 14th day of
January, 1905; that the plaintiff, as a condition of his
membership in said relief fund, in his said application
promised and agreed to and with the said Atlantic Coast
Line Railroad Company that in consideration of the

amounts paid and to be paid by said defendant company for the maintenance of said relief department, and of the guarantee of said defendant company of the payment of said benefits, that the acceptance by him of benefits for injuries should operate as a release and discharge and satisfaction of all claims against the said defendant company, and all other companies associated therewith in the administration of their relief departments, for damages arising from, or growing out of any injuries that might be received by the said plaintiff, while at the same time the plaintiff was, under the rules and regulations governing said relief department in cases of injuries to members thereof, at full liberty to elect to accept the benefits of the said relief department in pursuance of the regulations, or to prosecute such claim as he might have at law against this defendant company, or any company associated therewith in the administration of their relief departments, but that the acceptance by said plaintiff of the benefits after receiving injuries should operate as a release and satisfaction of all claims against the defendant company or any of the companies associated with it as aforesaid, for damages arising from or growing out of injuries received by the plaintiff; that said contract of membership in no way limited the time in which benefits should be paid thereunder, but specifically provided that payment for each day of disability classed as due to accident for a period not longer than fifty two weeks as follows: To a member of the first class, fifty cents; second class, one dollar; third class, one dollar and fifty cents; fourth class, two dollars; fifth class, two dollars and fifty cents, and at half these rates thereafter during the continuance of disability; that the contract of membership in no wise sought to exempt the master from liability to the servant, arising from negligence of the master, or of his or its servants, as

such liability is fixed by law, but that under said contract, rules and regulations it was left wholly optional with the said plaintiff in the event he should receive injuries under the employment of the defendant to elect to receive benefits under his membership in said relief dapartment or to decline to receive benefits and to proceed thereunder to assert whatever claim he might have by appropriate legal remedies; that the plaintiff elected to proceed under the terms of his contract, and the rules and regulations of said relief department, and accept the same in lieu of any claim he might have by reason of the injuries received by him and the subject matter of this law suit, and after his said election and subsequent to the injuries complained of in the declaration, applied for and then and there subsequently received medical and surgical treatment by reason of his membership in said relief department, on account of the injury complained of in the first, second, third and fourth counts of the declaration, and the defendant company, after the plaintiff received the injuries complained of, paid to the plaintiff benefits by reason of his membership in said relief department, on account of said injuries, and the same were received by the plaintiff as benefits accruing to him by reason of said injuries on account of his membership in said relief department, and more particularly, the defendant alleges, there were paid by the said relief department to the said plaintiff, on account of said injuries, benefits to the amount of $8.50 on or about, to-wit: the 20th day of February, 1905, which was the benefit rate to which the plaintiff was entitled as a member, under the rules and regulations of said relief department, and there was also paid by said department the sum of $50.00 to certain physicians for care and surgical attendance upon said plaintiff, and also, the sum of $42.00 for board for plaintiff, and also the

sum of $8.00 for dressings of plaintiff's injuries, making a total of $100.00 expended by said relief department for medical attention, care and board for said plaintiff, independent of said sum of $8.50 benefits paid directly to said plaintiff. And the said relief department did all on its part to be done for and in behalf of said plaintiff by virtue of his membership in said department, whereby the defendant was released from any and all claims for damages against the defendant arising in any way out of the injuries of which plaintiff complains in his declaration.

And for a further plea in this behalf, by leave of the court first had and obtained, the defendant says that before the commencement of this suit it discharged and satisfied plaintiff's claim by payment."

To the first of such additional pleas plaintiff interposed a demurrer, setting forth the following matters of law to be argued:

"1. That the contract and agreement set up is contrary to public policy.

2, That the contract and agreement set up is contrary to the law of the state.

3. That the contract and agreement set up is a limitation of the liability of the defendant and is null and void, being contrary to the law of the state.

4. That that contract and agreement set up do not relate to injuries inflicted by or through the negligence of the defendant, or any of its employes.

5. That a contract void in law is not binding and cannot estop a party from pleading its invalidity.

6. That the plea no where shows that, if the relief association was at any time short of funds to meet its obligations to the plaintiff, he could have maintained an action against the defendant company for the amount that was due him.

7.   The plea fails to show that the defendant ever expended any money of its own in the case of the injured and disabled members of the association, or that the monies alleged to have been paid to the plaintiff had not been paid out of the fund contributed by the members.

8.   That the plea fails to set forth what authority the defendant company had under its charter to guarantee the payment of the sums set forth in the alleged contract by the relief association to injured or disabled members.

9.   That the plaintiff was incompetent to make a valid contract with the defendant limiting its liability, such contract being forbidden by law."

The court sustained the demurrer, which ruling forms the basis for the third assignment.

Defendant discusses the second and third assignments together.   Defendant admits that it is the settled law in this court that a demurrer opens all the previous pleadings, and judgment will be given against the party who committed the first error, and concedes that if its first plea constituted no defense to the action the ruling of the court was right.   See Sanford v. Cloud, 17 Fla. 532.   In making such ruling it was not necessary for the court to pass upon the replications or to determine whether they were good or bad.   If such ruling is correct, then the replications for all practical purposes are out of the case and we do not have to consider them. Before taking up the first plea for investigation, it seems advisable for us to take up the first additional plea and determine whether or not the demurrer was properly sustained to it, for the reason that defendant admits that such plea sets up the same matters which are contained in its original plea, only more fully and completely.   If then the demurrer was properly sustained to

this plea, it would seem that no error was committed in holding the original plea bad.

The question of the validity of these "Relief and Hospital Department" contracts, as they have been termed, is a new one in our court, though it is not a novel question, generally speaking, having been passed upon by a number of the courts of this country, as we shall see later on in this opinion. It is true that such a contract was incidentally referred to in Florida Southern R. R. Co. v. Steen, 45 Fla. 313, 34 South. Rep. 571, but it was not necessary for us to pass upon its validity, the question not being raised.

We turn first to the Georgia decisions for the reason that, as we have already seen in considering the first assignment, Chapter 3744, Laws of 1887, was adopted by our legislature from the statutes of the state of Georgia, but was expressly repealed by Chapter 4071, Laws of 1891. For convenience in comparison we quote in full Chapter 3744 Laws of 1887 and Chapter 4071 of 1891.

"Chapter 3744—(No. 64.)

An Act to Apportion the Damages in Actions against Railway Companies by Persons and Employees, and to Provide for such Recovery of Damages against said Railway Companies by its Employees.

*Be it enacted by the Legislature of the State of Florida:*

Section 1. That no person shall recover damages from a railroad company for injury to himself or his property when the same is done by his consent or is caused by his own negligence. If the complainant and the agents of the company are both at fault the former may recover, but the damages shall be diminished by the jury trying the case in proportion to the amount of default attributable to him.

Sec. 2.   If the person injured is himself an employee of the company, and the damage was caused by another employee, and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to the recovery, and no contract which restricts such liability shall be legal or binding.

Approved June 7, 1887."

"Chapter 4071—(No. 62.)

An Act Defining the Liabilities of Railroad Companies in Certain Cases.

*Be it enacted by the Legislature of the State of Florida:*

Section 1.   A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damages done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company.

Sec. 2.   No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence.   If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him.

Sec. 3.   If any person is injured by a railroad company by the running of the locomotives, or cars, or other machinery of such company, he being at the time of such injury an employee of the company, and the damage was caused by negligence of another employee, and with-

out fault or negligence on the part of the person injured, his employment by the company shall be no bar to a recovery. No contract which restricts such liability shall be legal or binding.

Sec. 4. That Chapter 3744, Laws of Florida, approved June 7, 1887, be, and the same is hereby repealed.

Sec. 5. This act shall take effect and become of force from and after its passage.

Approved May 4, 1891."

The differences in these two Chapters are obvious and were pointed out and discussed in Florida Cent. & P. Ry. Co. v. Mooney, 40 Fla. 17, 24 South. Rep. 148, and Atlantic Coast Line R. R. Co. v. Ryland, 50 Fla. 190, 40 South. Rep. 24, to which we had occasion to refer in considering the first assignment. As was pointed out in Florida Cent. & P. Ry. Co. v. Mooney, *supra,* section 1 of Chapter 4071, Laws of 1891, which formed no part of Chapter 3744, Laws of 1887, was also adopted by our legislature from the statutes of Georgia, forming section 3033 of the Georgia Code of 1882, so that both sections of Chapter 3744 and the first three sections of Chapter 4071 were adopted from the Georgia statutes. However, our legislature, after copying section 2 of Chapter 3744, without change from section 3036 of the Georgia Code of 1873, made an important addition thereto by inserting at the close the words, "and no contract which restricts such liability shall be legal or binding." These words form no part of the section of the Georgia Code from which we adopted such section 2 of Chapter 3744. Such section 3036 of the Georgia Code of 1873 was brought forward unchanged as section 3036 of such code of 1882 and as section 2323 of such code of 1895. It will also be observed that the quoted words also form a part of section 3 of Chapter 4071, Laws of

1891, therefore, so far as the question which we are now considering in the instant case is concerned, our two statutes are identical.

We turn now to the cases of Petty v. Brunswick & Western Ry. Co., 109 Ga. 666, 35 S. E. Rep. 82, and Carter v. Brunswick & Western Ry. Co., 115 Ga. 853, 42 S. E. Rep. 239, upon which defendant strongly relies in support of its contention. We find upon examination that the statute before the court for construction in the two cited cases was section 2613 of the Georgia Code of 1895, which reads as follows: "§2613. *Contracts exempting master from liability for his negligence, void.* All contracts between master and servant, made in consideration of employment, whereby the master is exempted from liability to the servant arising from the negligence of the master or his servants, as such liability is now fixed by law, shall be null and void, as against public policy."

Our legislature has never adopted this section, and the difference between it and the quoted words added by our legislature at the close of section 2 of Chapter 3744, when it was adopted, which words also form a part of section 3 of chapter 4071, is readily apparent. It has been repeatedly recognized by the supreme court of Georgia, that, in the absence of a statute, an employe of a railroad company may enter into a contract with such company, by which he agrees "to take upon himself all risks connected with or incident to his position on the road, and that he would in no case hold the company liable for any damage he might sustain by accidents or collisions on the trains or road, or which may result from the negligence or carelessness, or misconduct of himself or other employee, or person connected with such road, or in the service of the company," and "that such a contract, so far as it does not waive any criminal neg-

lect of the company, or the principal officers, is a legal contract and binding upon the employee." Western & Atlantic R. R. Co. v. Bishop, 50 Ga. 465; Western R. R Co. v. Strong, 52 Ga. 461; Hendricks v. Western & Atlantic R. R. Co., 52 Ga. 467; Galloway v. Western & Atlantic R. R. Co., 57 Ga. 512; Cook v. Western & Atlantic R. R. Co., 72 Ga. 48; Fulton Bag & Cotton Mills v. Wilson, 89 Ga. 318, 15 S. E. Rep. 322.

In line with this principle, this court in Scotch Manufacturing Co. v. Carr, 53 Fla. 480, 43 South. Rep. 427, speaking generally of the right and power of parties to make contract, said, "the parties were free to make what contracts they pleased, so long as there was no infraction of law in so doing."

In Fulton Bag & Cotton Mills v. Wilson, 89 Ga. 318, 15 S. E. Rep. 322, decided in 1892, the Supreme Court of Georgia, reviewed the prior decisions, which we have just cited, and held that "the acquiescence of the legislature in the principle for so long a time is strong, if not decisive, evidence of the public policy of this state touching the question, more especially as legislative attention must have been called to the subject." In that case it was further said by the court, that "under these circumstances, this court, on a review of the above mentioned cases, declines to overrule them, but on the contrary affirms the same in so far as they are modified by the statute just cited touching railroad employees." The statute referred to is an act passed in 1876 and forming Section 4586b of the Georgia Code of 1882, which defines and provides punishment for the criminal negligence of the employes of railroad companies. It in no wise is applicable to the instant case and further reference thereto or discussion thereof would prove fruitless.

So the matter stood in Georgia until 1895, when the

legislature passed the act which forms section 2613 of the Georgia Code of 1895 and which we have copied in full above. So far as we have been able to ascertain, the first time this statute came before the Georgia supreme court for construction was in the case of Petty v. Brunswick & W. Railway Co., 109 Ga. 666, 35 S. E. Rep. 82, upon which defendant relies and to which we referred above. This decision was approved and followed in Carter v. Brunswick & W. Railway Co., 115 Ga. 853, 42 S. E. Rep. 239, also cited to us by defendant.

We have read these cases with care and interest. The contract discussed therein is quite similar to the one involved in the instant case. As was said in the case of Petty v. Brunswick & W. Railway Co., 109 Ga. 666, text 671, 35 S. E. Rep. 82, after quoting the section of the Georgia Code and reciting the contention of plaintiff that the contract was "contrary to public policy, in that it evidenced an attempt to exempt the company from liability for negligence:"

"As should be readily apparent, the weakness of this position lies in the fact that it is based upon an entire misconception of the meaning and effect of the contract thus assailed. It did not, as claimed, in any of its terms or conditions stipulate that the defendant company should be absolved from the legal consequences of its own negligence or that of its servants. On the contrary, it merely provided an additional remedy to that given by law to an employe who might suffer injury by reason of the negligence, actual or imputable, of his master. The latter remedy was left intact, undisturbed and unimpaired, and the injured employe might, or might not, at his option, take advantage thereof. True, he could not avail himself of both, but was put upon his voluntary election as to

which of the two he would pursue. This feature of the contract is not only technically permissible, but is in perfect harmony and accord with that fundamental rule of law, based upon sound and sensible considerations of public policy, which contemplates that indemnity rather than the mere chance of speculative gain, should be the primordial purpose of every contract designed to afford protection to a party thereto in the event he sustains loss or injury. Only in case the injured employe commits an error of judgment in determining whether he will accept benefits, which, though comparatively small, are yet sure and easily within his grasp, or will hazard the less certain result of a suit for damages, can he possibly fail to realize all the fruits of every right given him by law. That it is conceivable he may make such a mistake does not render the contract essentially and inherently vicious, and therefore opposed to public policy."

We are impressed with the clearness and cogency of this reasoning, and that impression is intensified when we find that the courts of Pennsylvania, Ohio, New Jersey, Iowa, Indiana, Nebraska, Maryland, Illinois and Alabama, as well as several Federal courts have reached a like conclusion. We refer to the following authorities: Johnson v. Philadelphia & R. R. Co., 163 Pa. St. 127, 29 Atl. Rep. 854; Ringle v. Penna. R. Co., 164 Pa. St. 529, 30 Atl. Rep. 492, S. C. 44 Am. St. Rep. 628; Graft v. Baltimore & O. R. Co., (Pa.) 8 Atl. Rep. 206; Pittsburg, C. C. & St. L. Ry. Co., v. Cox, 55 Ohio St. 497, 45 N. E. Rep. 641, S. C. 35 L. R. A. 507, 7 Am. & Eng. R. R. Cas. (N. S.) 152; State ex rel. Sheets v. Pittsburg, C. C. & St. L. Ry. Co., 68 Ohio St. 9, 67 N. E. Rep. 93, S. C. 64 L. R. A. 405; Fuller v. B. & O. Employes' Relief Association, 67 Md. 433, 10 Atl. Rep. 237; Spitze v.

Baltimore & O. R. Co., 75 Md. 162, 23 Atl. Rep. 307, S. C. 32 Am. St. Rep. 378; Lease v. Penna. Co., 10 Ind. App. 47, 37 N. E. Rep. 423; Pittsburgh, C. C. & St. L. Ry. Co. v. Elwood, 25 Ind. App. 671, 58 N. E. Rep. 866; Baltimore & Ohio R. Co. v. Ray, 36 Ind. App. 430, 73 N. E. Rep. 942; Pittsburgh, C. C. & St. Ry. Co. v. Moore, 152 Ind. 345, 53 N. E. Rep. 290, S. C. 44 L. R. A. 638; Pittsburgh, C. C. & St. L. Ry. Co. v. Hosea, 152 Ind. 412, 53 N. E. Rep. 419; Donald v. Chicago, B. & Q. Ry. Co., 93 Iowa 284, 61 N. W. Rep. 971, S. C. 33 L. R. A. 492; Maine v. Chicago, B. & Q. R. Co., 109 Iowa 260, 70 N. W. Rep. 630, S. C. 9 Am. & Eng. R. R. Cas. (N. S.) 299; Beck v. Penna. R. Co., 63 N. J. L. 232, 43 Atl. Rep. 908, S. C. 76 Am. St. Rep. 211; Chicago, B. & Q. R. Co., v. Bell, 44 Neb. 44, 62 N. W. Rep. 314; Chicago, B. & Q. R. Co. v. Curtis, 51 Neb. 442, 71 N. W. Rep. 42, S. C. 66 Am. St. Rep. 456; Clinton v. Chicago, B. & Q. R. Co., 60 Neb. 692, 84 N. W. Rep. 90; Oyster v. Burlington Relief Association, 65 Neb. 789, 91 N. W. Rep. 699, S. C. 59 L. R. A. 291; Eckman v. Chicago, B. &. Q. R. Co., 64 Ill. App. 444, which was affirmed in 169 Ill. 312, 48 N. E. Rep. 496, S. C. 38 L. R. A. 750, 9 Am. & Eng. R. R. Cas. (N. S.) 308; Harrison v. Alabama Midland Ry. Co., 144 Ala. 246, 40 South. Rep. 394; Owens v. Baltimore & O. R. Co., 35 Fed. Rep. 715, S. C. 1 L. R. A. 75; State, to Use of Black v. Baltimore & O. R. Co., 36 Fed. Rep. 655; Martin v. Baltimore & O. R. Co., 41 Fed. Rep. 125; Otis v. Penna. Co., 71 Fed. Rep. 136; Vickers v. Chicago, B. & Q. R. Co., 71 Fed. Rep. 139; Shaver v. Penna. Co., 71 Fed. Rep. 931; Hamilton v. St. L., K. & N. W. R. Co., 118 Fed. Rep. 92. To these authorities may also be added the two leading English cases, Griffiths v. Earl of Dudley, 9 Law Rep.

Q. B. Div. 357, and Clements v. London & N. W. Ry. Co., 2 Law Rep. 1894, Q. B. Div. 482.

Other authorities which have also dealt with the question, to a greater or less extent, and to which we shall have occasion to refer, are the following: Miller v. Chicago, B. & Q. R. Co., 65 Fed. Rep. 305; Chicago, B. & Q. R. Co. v. Miller, 76 Fed. Rep. 439, 22 C. C. A. 264; Chicago, B. & Q. R. Co., v. McGraw, 22 Colo. 363, 45 Pac. Rep. 383; Chicago, B. & Q. R. Co. v. Wymore, 40 Neb. 645, 58 N. W. Rep. 1120; Pittsburgh, C. C. & St. L. Ry. Co. v. Montgomery, 152 Ind. 1, 49 N. E. Rep. 582, S. C. 71 Am. St. Rep. 301; Johnson v. Charleston & Savannah Ry. Co., 55 S. C. 152, 32 S. E. Rep. 2, 33 S. E. Rep. 174, S. C. 44 L. R. A. 645; Cannady v. Atlantic Coast Line R. Co., N. C. 55 S. E. Rep. 836; Penna. Co. v. Chapman, 118 Ill. App. 201, affirmed in 220 Ill. 428, 77 N. E. Rep. 248; Mumford v. Chicago, Rock Island & Pac. R. Co., 128 Iowa 685, 104 N. W. Rep. 1135; Brown v. Baltimore & O. R. Co., 6 App. D. C. 237; Galveston, H. & S. A. Ry. Co. v. Hughes, Tex. Civ. App. 91 S. W. Rep. 643; Flower v. London & N. W. Ry. Co., 2 Law Rep., 1894, Q. B. Div. 65.

It will undoubtedly aid us in reaching a correct conclusion upon this important but controverted question if we take up and review these cases and ascertain therefrom the nature of the contracts upon which these different courts have passed, and the character of the pleading and the manner in which they were interposed as a defense. We shall also do well to notice closely the reasoning employed and see its applicability to the instant case. This will require time and care, but we shall do this as briefly as we can, using no more space than we find so important a question demands. We shall begin with the Pennsylvania cases.

*Pennsylvania.* In the case of Johnson v. Philadelphia & Reading R. Co., *supra,* which was decided in 1894 and is one of the leading cases upon the subject, we find that no question upon the pleadings seems to have been raised. It appears from the statement of facts therein that there was a relief association known as the Philadelphia & Reading Relief Association, which "was composed of employes of defendant railroad, and its funds were made up by the joint contributions of the railroad company and the company's employes," and that the railroad company had paid into the fund of the association a sum amounting to $100,000. The material portions of the application of plaintiff for membership in such association are set out, in which appears the following language: "In consideration of the contribution to be made by the Philadelphia & Reading Railroad Company to the funds of the association, I agree that the acceptance of benefits from said relief fund for injury or death shall operate as a release of all claims for damages against said company, my employer, arising from such injury or death, which could be made by or through me, and that I or my legal representatives will execute, or where necessary, procure to be executed by others, such further instrument as may be necessary formally to evidence such acquittance." It was further stipulated therein that such application, when approved by the superintendent of the relief association, should constitute a contract between plaintiff and the railroad company. The trial court instructed the jury to return a verdict for the defendant. We copy the following extract from the opinion: "It is further objected, and this is the only substantial question in the case, that the release was void as against public policy, and a number of cases are cited to show that a common carrier cannot make a valid contract

against his own negligence. It was quite unnecessary to go out of our own state for authorities on that proposition; it is not questioned here any more than elsewhere, but it is wide of the point in this case. There is no provision exempting the company from liability for future negligence.

The benefits, by the regulations of the relief association, become due to members whenever disabled by accident in the railroad company's service, or by sickness or injury other than in the company's service, without reference to the question of negligence at all. As these provisions include benefits in cases of accident pure and simple, of injury by the negligence of fellow workmen, and by the member's own contributory negligence, it is apparent that they cover a wide field, in which there is no liability of the railroad company at all. Such cases are probably a large majority of those occurring to railroad employes, and the association therefore is of the highest order of beneficial societies. But even in cases of injury through the company's negligence there is no waiver of any right of action that the person injured may thereafter be entitled to. It is not the signing of the contract but the acceptance of benefits after the accident that constitutes the release. The injured party therefore is not stipulating for the future, but settling for the past; he is not agreeing to exempt the company from liability for negligence, but accepting compensation for an injury already caused thereby. He may as well accept it in installments as in a single sum, and from an appointed fund to which the company has contributed as from the company's treasury as a result of litigation. The substantial feature of the contract which distinguishes it from those held void as against public policy is that the party retains whatever right of action he may have until after the knowledge

of all the facts, and an opportunity to make his choice between the sure benefits of the association or the chances of litigation. Having accepted the former he cannot justly ask the latter in addition. This feature of the case brings it on all fours with Graft v. R. R. Co., 8 Atl. Rep. 206, where a release under similar circumstances was held to be a conclusive bar. There is no public policy which the contract can be said to transgress."

This language, either in whole or in part, has been quoted with approval by the Illinois, Indiana and Iowa courts, as well as by some of the Federal courts, and has been approvingly referred to and followed in other courts.

In Ringle v. Penna. R. Co., *supra*, the Pennsylvania supreme court said: "This case is ruled by Johnson v. R. R. Co., 163 Pa. St., 127, 29 Atlantic Rep. 854. The essential principle therein established is that a contract between employer and employe which preserves to the latter all his rights of action, in case of negligence, until after the facts have occurred and are known to him, is not against public policy." After quoting from the Johnson case, the opinion proceeds as follows: "The facts of that case and this are not materially different. In both the agreement is that the acceptance of benefits, of course after the accident, shall operate as a release. In the present case there is an additional agreement that the plaintiff shall 'execute such further instrument as may be necessary formally to evidence such acquittance,' and it is argued that no such release has been executed by plaintiff. But it is not necessary that it should be. The acceptance of benefits is the substance of the release, and the agreement for a further instrument is by its express terms a mere formality for convenience of evidence.

It is further argued that as the contract is between the relief association and the plaintiff and no evidence that the railroad company defendant has in fact paid anything into the treasury of the association there is no consideration to support a release to the railroad company. It is not however worth while to discuss whether the defendant is in position to take advantage of a consideration moving from another party but for its benefit, as the consideration from the defendant itself is abundant. As a member of the association it has assumed obligations to take charge of the administration, and to pay all the operating expenses, to take care of the funds and to be responsible for their safe keeping, to guarantee the obligations of the association, and to make appropriations to supply any deficiencies. These would be ample even if the amount of the consideration could be inquired into. The release being a complete bar to plaintiff's right of action it is not necessary to consider the evidence of negligence."

No opinion was written in the case of Graft v. B. & O. R. Co., *supra,* and no point is presented on the pleadings, but from the statement of facts we learn that the contract which was made by plaintiff with the Baltimore & Ohio Employes' Relief Association was was very similar to the contracts we have just discussed in the other two Pennnsylvania cases. The object of such association is "to extend relief in case of sickness, old age, and death to the employes of the Baltimore & Ohio Railroad Company and their families; to receive deposits on interest from said employes and their wives; and to loan them money at lawful rates of interest, in order to provide them with or to improve their homesteads, and, generally, to promote their welfare." We are further informed that "the railroad company guarantees all benefits offered by the association, and the

performance of all its contracts and obligations. It contributed $100,000 to the fund of the association, and was authorized to give, from time to time, such aid, by money or otherwise, on such terms as the president and directors might prescribe. Membership in this association was voluntary on part of the railroad employes.". We further learn that the plaintiff had executed a release under seal. We have also seen that the court had said that this case and the Johnson case were on all fours, so far as the question of public policy was concerned.

*Ohio.* We now take up the case of Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Cox, *supra*, decided in 1896. The statement of facts is quite full and the second defense interposed by the defendant railroad company is set out. We learn from it that the defendant railroad company, together with other railroad companies, formed an association known as "The Voluntary Relief Department of the Pennsylvania Lines West of Pittsburg," with objects similar to those in the Pennsylvania cases set forth above, of which plaintiff had become a member, upon having signed a like application to those referred to in those cases; "that said relief fund from which benefits are paid is formed by voluntary contributions from employes, and appropriations, when necessary, to make up any deficiency, by the several companies respectively, for the benefit of the employes of each who may be members thereof, and income or profit derived from investments of the moneys of the funds, and such gifts or legacies as may be made for the use of the fund;" "that the said associated companies in addition to the guaranty as aforesaid, supply all necessary facilities for conducting the business of said relief department, at their own expense, pay all the operating expenses thereof, take charge of the funds thereof,

pay interest thereon, and are responsible for their safe keeping;" "that during the last five years immediately preceding the filing of this petition, this defendant has paid into said fund for the benefit of plaintiff and other employes of defendant, the sum of twenty-one thousand dollars in addition to its share of operating expenses of said department and interest upon the fund."

To this defense a demurrer was interposed, which was overruled by the common pleas, and, upon a trial on the pleadings, issue was found for defendant and a judgment for it rendered. The circuit court reversed this judgment for error in overruling the demurrer, and the company sought a reversal of the latter judgment.

In an exceptionally able opinion, the supreme court of Ohio, speaking through Judge SPEAR, reversed the judgment of the circuit court and affirmed that of the common pleas. We learn from the opinion "that the ruling of the common pleas on the demurrer is assailed on the ground that the contract set up is invalid because: 1. It is prohibited by the act of April 2, 1890, 87 Ohio Laws, 149, 'for the protection and relief of railroad employes,' etc.; 2. Because it is against public policy; 3. For want of mutuality; and 4. For want of consideration moving from the company to Cox for the agreement to release claims for damages." All of these grounds are discussed in detail and authorities cited and the part of the Ohio statute to which attention is directed is set out as follows: "And no railroad company, insurance society or association shall demand, accept, require or enter into any contract, agreement, stipulation with any person about to enter, or in the employ of any railroad company whereby such person stipulates or agrees to surrender or waive any right to damages against any railroad company, thereafter arising for personal injury or death, or whereby he agrees to sur-

render or waive in case he asserts the same, any other right whatsoever."

We quote from the opinion as follows:

"To what sort of a contract does this language apply? It is to be presumed that the legislature intended to confine its action in forbidding the making of contracts in themselves lawful, by persons *sui juris,* to such contracts as are inimical to the state, that is against public policy, for the right to contract is one not given by legislation, but inherent, necessarily involved in the ownership of property and as a primary prerogative of freedom (2 Wharton on Contracts, section 1061), and we should not construe the words of an act so as to restrain this right, where the conflict with public policy is not clear, unless the language will bear no other construction. As to the first clause perhaps it is sufficient to say that it clearly appears the contract does not come within the terms of the inhibition, for the reason that the employe does not therein agree to waive right to damages thereafter arising for personal injury or death. He agrees simply that he will elect after the injury is incurred which form of recompense he will demand."

The second clause of that portion of the statute quoted is then taken up and discussed, the meaning of the term "right," as used therein, dwelt upon and the argument summed up as follows:

"And if the right is not an absolute one in the one case how can it be in the other. Putting the conclusion in a sentence, the second inhibition is not essentially different from the first; it is but an extension of it. That applies only to waiver of a right to damages arising from personal injuries or death; this extends to all rights whatsoever. But, in any case, the law contemplates a legal right.

Taking the statute as a whole, the contract inhibited is a contract which, by its terms, waives the right of action on the part of the employe, while the contract in question does not seek to waive the right of action, but expressly reserves it, and only gives to his election of remedies made after the injury, the effect of a waiver of the other remedy. To deny such a right would be to deny the right to settle controversies. The law favors the exercise of this right; it does not disapprove it."

Concerning the objection that the contract is against public policy, the following language is used:

"Is the contract itself against public policy? To be so, it must, in some manner, contravene public right or the public welfare. It must be shown to have a mischievous tendency as regards the public. And this should clearly appear. The ground urged is that it tends to make the company less careful in the operation of its road; in other words, it encourages negligence. And if it be of that character, then it would contravene public policy and be void, in that it would have a tendency to induce the employment of men less prudent and careful, which would tend to endanger the property, and the lives of travelers, as well as of its employes. But this claim arises, we think, from a misconception of the contract; in assuming that, by the contract, the employe releases some future right of action against the company. On a previous page we have undertaken to show that such is not the case; that there is no waiver of any cause of action which the employe may become entitled to, and that it is not the signing of the contract, but the acceptance of benefits after the accident, that constitutes the release. When that occurs he is not stipulating for the future; he is but settling for the past. He accepts compensation for injury already received. * * * The liberty of contract, being one of those

rights secured by our constitution, is not to be restrained upon any insufficient or mere fanciful conceit of what may possibly happen. The citizen who is *sui juris* has a right to make a contract beneficial to himself when neither immoral, fraudulent nor illegal, and he should not be restrained in the exercise of such right unless the public welfare clearly compels it. Nor should the employment of corporate capital, where its use is for beneficial purposes, be interfered with unless the public welfare clearly demands such interference. If the laborer, having in mind the future, and desiring to provide against a condition of sickness or accident, joins a beneficial association having insurance features, and devotes a portion of his monthly earnings to that purpose; and if on the other hand, the corporation, actuated by a desire to advance its material prosperity by attaching its employes the more firmly to its interests, and by the humane purpose of contributing from its earnings, to their personal welfare, or acting from any other motive, good or bad, becomes a party to such contract, and renders, in effort and money, valuable assistance in effecting its beneficial purposes, why should the law assume, unreasonably and arbitrarily, to deny the exercise of those rights? We think it should not, and we fail to perceive how the contract in question contravenes any interest of the public."

"As to whether or not the contract is void for want of mutuality, or for lack of consideration, the following is said: "Nor is the contract void for want of mutuality, nor for lack of consideration. Moved thereto by the stipulations of the employe members, the company assumes the obligation to take charge in part of the administration of the association, to pay all its operating expenses, to take care of its funds, pay interest thereon, and be responsible for their safe keeping, and to make

appropriations to supply any deficiencies. The promises are concurrent and obligatory upon both; both promise and both pay in consideration of promises and payment by the other, and the fact that third persons are interested does not impair the force of the obligation. If these stipulations do not supply consideration it would be difficult to frame such as would; and there being express assent to the terms of the contract by both parties, the element of mutuality is not wanting. * * *

"Our conclusion is that the contract set up is not interdicted by the statute, and that it is neither against public policy, nor void for want of mutuality or consideration."

The entire opinion should be read by those interested. It was followed by the same court in State *ex rel.* Sheets v. P. C. C. & St. L. Ry. Co., *supra.*

*Maryland.* The case of Fuller v. Baltimore & Ohio Employes' Relief Association, *supra,* decided in April, 1887, does not materially aid us in our investigation, as the facts therein are so variant and the nature of the action different. Suffice it to say that it appears from the opinion that the defendant was a corporation, "no doubt formed both for the benefit of the road and its employes;" " the road (the B. & O. R. Co.) contributed in the beginning a large sum of money, and guarantees the obligations of the association, besides giving it other aid in the furnishing medical attendance to the injured, clerical force, office, &c;" "the company makes it compulsory on all its employes of certain classes and physical conditions to become members of the association, and to contribute so much a month out of their wages to create and keep up a fund for the benefit of the injured and sick."

The court of appeals of Maryland held that "A provision in the constitution of a railroad relief association,

23—Vol. 54

that in all cases where death is the result of an accident, the association will not pay the amount due to the beneficiary of the member killed, before the person legally entitled to recover damages on account of the accident, shall release the railroad company from all claim to damages, is not so unreasonable that a court can declare it void."

In Spitze v. Baltimore & Ohio R. Co., *supra*, decided by the same court, it appears that the defendant railroad company pleaded as defense two releases which had been executed by plaintiff under seal, in accordance with the requirements of the relief association, of which plaintiff was a member, and the court said, "we can discover no error in the court's ruling on the demurrer to that plea, and no point has been made with reference to that ruling in the brief of the appellant's counsel."

*Indiana.* In Lease v. Pennsylvania Co., *supra*, the same contract was set up as a defense by the defendant which was interposed in the Ohio cases, parts of which we have copied, the defendant being one of the different companies referred to therein as "forming the Pennsylvania lines West of Pittsburgh." A demurrer was interposed to that portion of defendant's answer which set up said contract, which was overruled, and that ruling presented the only question for determination by the appellate court of Indiana. The same grounds were urged against the validity of the contract that were insisted upon in the case of Pittsburg, C. C. & St. L. Ry. Co. v. Cox, *supra*, with the exception of the ground that such contract contravened a statute of Indiana, which point was not raised. The opinion in this case was rendered by the appellate court of Indiana in 1893, while the opinion in Pittsburg C. C. & St. L. Ry. Co. v. Cox, *supra*, was not rendered by the supreme court of Ohio, until 1896, but the conclusion reached in the

two cases is identical, though the reasoning therein is
a little different. This case is one of the cases cited
by the Ohio court to support its conclusion, and is one
of the leading early cases upon the question.

In the case of Pittsburgh, C. C. & St. L. Ry. Co.
v. Montgomery, *supra,* which was decided in February,
1898, and a rehearing denied in December of that year,
the question was presented for the first time to the su-
preme court of Indiana for determination, and the ad-
ditional point was made that such a contract as was
pleaded by the railroad company therein contravened the
Indiana statute. Other questions were also raised, which,
however, are not material to our present purpose. The
contract pleaded as a defense was the same contract dis-
cussed in the Ohio cases and in the case of Lease v.
Penna. Co., *supra.* In an elaborate opinion, reviewing
the authorities, the court declined to either approve or
disapprove the principles enunciated by the Pennsyl-
vania supreme court and its own appellate court, but
held that such contract was in contravention of the
Indiana statute and therefore null and void, and affirmed
the judgment of the circuit court. After referring to
the authorities holding a contrary view, it said that
"the United States Circuit Court for the District of
Colorado decided the question the other way in a strong
and able opinion in Miller v. Chicago R. Co., 65 Fed
305."

However, the same court, its personnel having
changed, in the case of Pittsburgh, C. C. & St. L.
Ry. Co. v. Moore, *supra,* decided in March, 1899, held
that such a contract was not within the inhibition of the
Indiana statute and might be pleaded as a defense,
using the following language: "We are mindful that
this court in the case of Pittsburgh, C. C. & St. L.
Ry. Co. v. Montgomery, *ante,* held a view of this

question at variance with the opinion herein expressed, and which, after a more thorough examination of the decided cases, we find to be in conflict with the very decided weight of authority. Indeed, the cases seem now to be in substantial accord.

The case of Miller v. Chicago, etc., R. Co., 65 Fed. 305, the only case relied upon as authority upon this question was subsequently appealed to the United States circuit court of appeals, eighth district, and the doctrine of the lower court inferentially disapproved by the court announcing, in substance, that the authorities were all the other way, though the question here was not decided, as not being necessary to a disposition of the case. Chicago, etc., R. Co., v. Miller, 22 C. C. A. 264. So far as the case of Pittsburgh, etc., R. Co. v. Montgomery, *supra,* is in conflict with the opinion herein announced, the same is disapproved." Of the contract it says: "It is nothing more or less than a contract for a choice between sources of compensation where but a single one existed and it is the final choice —the acceptance of one against the other—that gives validity to the transaction."

This principle was followed by the same court in Pittsburgh, C. C. & St. L. Ry. Co. v. Hosea, *supra,* and by the appellate court of Indiana in Pittsburgh, C. C. & St. L. Ry. Co. v. Elwood, *supra.,* and Baltimore & Ohio R. Co. v. Ray, *supra.* While the Montgomery case has been overruled, the reasoning therein has not been met.

*Iowa.* In the case of Donald v. C., B. & Q. Ry. Co., *supra,* decided in January, 1895, the same question came before the supreme court of Iowa. From the opinion rendered therein we find as follows: The son of plaintiff, who was killed while engaged as a brakeman on a freight train of defendant, was a member

of what is known as the Burlington Voluntary Relief Department, which was not a separate corporation or organization but was organized in connection with the workings of the defendant company, in the way of benefitting its employes, and which maintained a fund for the relief of members and their relatives or beneficiaries in cases of sickness, accident or death; "the fund is obtained by monthly assessments of its members, and the amount is deducted from the monthly payments. Such amounts as are not raised from these assessments are made up by the company from its earnings, in the way of interest on the monthly balances of the relief department. The incidental expenses of the department—incident to the conduct of its business—are paid by the railway company. In case the fund of the relief department is not sufficient, the company pays all benefits due, in full. * * * The assessments have never been sufficient to pay the benefits accruing to the members." The following are provisions of the regulations by which Maiken (plaintiff's son) was to be bound in his contract of membership: "Should a member or his legal representative bring suit against the company * * * for damages on account of injury or death of such member, payment of benefits from the relief fund on account of the same shall not be made until such suit is discontinued; and if suit shall proceed to judgment, or shall be compromised, all claims upon the relief fund for the benefits on account of such injury or death shall be thereby precluded. I *also agree* that, in consideration of the amounts paid and to be paid by said company for the maintenance of the relief department, the acceptance of benefits from the said relief fund for injury or death shall operate as release and satisfaction of all claims for damages against said company, arising directly or indirectly from such injury or death,

which could be made by him or his legal representatives." No question appears to have arisen on the pleadings, but the trial court directed a verdict for the defendant on the fourth count of the petition, from which action plaintiff appealed. The Iowa court reviewed the authorities and held that such a contract was not against public policy and did not contravene the Iowa statute. It was said in the opinion, that "by mutual contributions of both the members and the company, a fund is provided, and is available to a member injured by the company, whether in a way to render it liable for damages or not. The member, in his contract, agrees with the company that in consideration of its contribution to the fund, if he is injured, he will not take the benefit thus provided, and, besides, ask for damages because of the injury, but he has his election which he will take."

In Maine v. C., B. & Q. R. Co., *supra,* in which the same question was presented, the same court followed its prior decision in Donald v. C. B. & Q. R. Co., *supra.* Some questions were raised on the pleadings, but it is unnecessary to notice them. Justice DEEMER agreed to the conclusion, but not to the reasoning in the fourth division of the opinion, which, however, is of no moment now. This opinion was rendered in April, 1897, but a rehearing was granted, on which a supplemental opinion was filed in October, 1897. From the latter opinion we learn that the rehearing was granted to enable the court to re-examine its holdings, to the effect that the contract was valid, and to consider in that connection the case of Pittsburgh, C. C. & St. L. Ry. Co. v. Montgomery, *supra.* It found, as we have already done, that that case was subsequently overruled by the Indiana supreme court in Pittsburgh, C. C. & St. L. Ry. Co. v. Moore, *supra,* which ruling was fol-

lowed in Pittsburgh, C. C. & St. L. Ry. Co. v. Hosea, *supra,* and announced itself as being satisfied with the conclusion reached in Donald v. C. B. & Q. R. Co., *supra.* We think that it will prove serviceable if we copy the Iowa statute referred to and construed in those decisions. It formed section 1307 of the Iowa Code of 1873, which was brought forward, with only slight verbal changes as section 2071 of the Iowa Code of 1897, and reads as follows:

"Sec. 1307. Every corporation operating a railway shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employes of the corporation, and in consequence of the wilful wrongs, whether of commission or omission of such agents, engineers, or other employes, when such wrongs are in any manner connected wth the use and operation of any railway, on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding."

We call attention to the fact that the closing words of the Iowa statute, "and no contract which restricts such liability shall be legal or binding," are identical with the closing words of our statute, Section 3 of Chapter 4071, Laws of 1891, which words are now before us for construction. So far as we can ascertain, the Iowa supreme court never had occasion to construe these words of the Iowa statute until 1895, in the case of Donald v. C., B. & Q. R. Co., *supra,* in which it expressly held that such a contract as is therein considered does not contravene their statute and "that such contracts are in no way a restriction on such liability" as is referred to in such statute. We also call attention to the fact that the Iowa statute is copied in full in Pittsburgh, C. C. & St. L. Ry. Co. v. Montgomery, *supra,*

in which it was said that "the Iowa statute is expressed in fewer words and better language than our own." As we have already seen, the Iowa statute is couched in *ipsissimis verbis* of our statute, which we are now considering.

However, the question came again before the Iowa court, in a little different way, in 1905, in Mumford v. Chicago, Rock Island & Pacific Ry. Co., *supra,* in which the opinion was delivered by Justice DEEMER, who, it will be remembered, had not concurred in the reasoning in the fourth division of the opinion in Maine v. C. B. & Q. R. Co., *supra,* though he had agreed to the conclusion in that case.

We cannot do better than to quote from the opinion: "We come now to the principal point relied upon by the defendant for a reversal of the judgment. In plaintiff's application for employment which he made to the company we find this printed provision:

In further consideration of such employment, I agree that if, while in the service of said company, I sustain any personal injury for which I shall or may make claim against the company for damages, I will, within 30 days after receiving such injury, give notice in writing of such claim to the general claim agent of said company, at Chicago, for injuries occurring in Illinois or Iowa, and to the general attorney at Topeka for injuries occurring elsewhere upon the system, which notice shall state the time, place, manner, and cause of my being injured, and the nature and extent of my injuries, and the claim made therefor, to the end that such claim may be fully, fairly and promptly investigated; and my failure to give written notice of such claim, in the manner and within the time aforesaid, shall be a bar to the institution of any suit on account of such injuries.

For various reasons plaintiff did not comply with these provisions, and defendant pleaded his failure to do so as a complete bar to the action. Plaintiff contended, and now argues, that this agreement is in plain contravention of section 2071 of the Code, which we shall presently quote, and is therefore void; while defendant says that this section has no application, and that, if it does that, it is unconstitutional, in that it interferes with the liberty of contract guaranteed by the fundamental law."

Here section 2071 of the Code of 1897 is set out. As we have already said, this is a copy, with only slight verbal changes, of section 1307 of the Code of 1873, which we have copied in full above.

The opinion continues: "The trial court held the provisions of the application quoted invalid, and did not submit any issue by the pleadings with reference to this feature of the case. While there may have been other grounds for not presenting this matter, we are precluded by the record from passing upon it, and must on this appeal determine the correctness of the trial court's rulings. The statute clearly makes any contract restricting liability invalid; that is to say, any contract which restricts the liability imposed by the statute is invalid. What is that liability? It is to pay without condition all damages sustained, etc., in consequence of the neglect of agents or the mismanagement of engineers or other employes. This liability exists until barred by the statute of limitations, and is not dependent upon any conditions precedent or subsequent. Does the provision in plaintiff's application restrict this liability? To restrict is to restrain within bounds; to limit; to confine. Webster's Unabridged Dictionary title 'Restrict.'

As we understand counsel's argument, they admit

that this provision does limit plaintiff's recovery. Indeed, this proposition is hardly debatable. But they say that, as the restriction relates to the remedy and does not affect the right, it does not come within the purview of the statute. In other words, they say it relates to the adjective—the remedial—rather than to substantive rights, and that the section does not apply, in that the liability still remains if the remedy provided for in the application is followed. This argument is specious, but we do not regard it sound. The provision quoted does limit the liability created by statute. It creates a contract bar, which would not exist but for the contract. It imposes new duties upon an injured party which he was not obligated by law to perform. It attaches a penalty for not doing these acts, which did not theretofore exist. It restrains defendant's liability within bounds fixed by the contract itself. Moreover, we have expressly held that these contract limitations not only bar the remedies but extinguish the right; that is to say limit the right."

Here follows a list of authorities and then a discussion of the question as to the constitutionality of section 2071 all of which we omit.

"There is no such thing as absolute liberty of contract. Indeed, all personal and property rights are subject to proper legislative regulation and control. Every man surrenders part of his liberty for the benefit and enjoyment of organized society. No one may do absolutely as he pleases. A very great proportion of our legislation is a restriction on some one's liberty. Indeed, the liberty of which we boast and are so justly proud is liberty under law, and not absolute license. It is freedom frequently restrained by law for the common good. Surely a corporation, created by the state and engaged in an extra hazardous business, may be

compelled to respond in damages for the negligence of its employes, notwithstanding any contract it may make or attempt to make relieving itself from such responsibility or restricting its liability therefor. These reflections are common place enough, but they are sometimes forgotten. It is well to recur to them again when such attacks as this are made upon legislative power. Further argument, in view of the authorities cited, is unnecessary. We have no doubt of the power of the legislature to enact such a law, and are convinced that the provision of the application in question is an attempt to 'restrict liability.' "

The foregong discussion is both interesting and instructive, but it may be well to call attention to the fact that neither of the preceding cases, Donald v. C. B. & Q. R. Co., and Maine v. C. B. & Q. R. Co., is referred to in the opinion.

*Texas.* One phase of the question came before the Court of Civil Appeals of Texas in the case of Galveston, H. & S. A. Ry. Co., *supra,* which was decided in November, 1905. The holding of the court therein is as follows:

"Under the statute providing that no contract made between an employer and employe, based upon the contingency of death or injury of the employe and limiting the liability of the employer in such case, shall be valid. a contract between a railroad and an employe requiring the latter, if he shall sustain any personal injury in the service of the former, to allow its surgeon to examine his person in respect to the alleged injury, and providing that a refusal to allow such examination to be made shall be a bar to the institution of any action on account of such injury, is void."

*New Jersey.* In the case of Beck v. Penna. R. Co., *supra,* decided in 1899, we find that the circuit court

had held that the contract pleaded as a defense by the defendant and which was similar to the contract set up in the Pennsylvania and Ohio cases was opposed to public policy.   Chief Justice Magie, of the New Jersey Court of Errors and Appeals, in a strongly reasoned opinion, reversed the judgment of the circuit court, holding that the contract was not void because opposed to public policy, because it lacked consideration, was wanting in mutuality, ·was *ultra vires,* or forbidden by law.

*Nebraska.*   The question arose incidentally in C., B. & Q. Ry. Co. v. Wyman, *supra,* which was decided in 1894, but the supreme court of Nebraska found it unnecessary to pass thereon.   However, in the opinion rendered therein some of the cases were cited, and the court. said, in reference to the case of Fuller v. Baltimore & Ohio Employers' Relief Association, *supra*: "It appears from that case that the railroad company compelled all its employes to become members of the association, and we are certainly not prepared to commit ourselves to the doctrine that a master may enforce a compulsory agreement to release him from the consequences of his own negligence."

In the cases of C. B. & Q. R. Co. v. Bell, *supra;* C., B. & Q. R. Co., v. Curtis, *supra;* Clinton v. C. B. & Q. R. Co., *supra,* and Oyster v. Burlington Relief Department of C., B. & Q. R. Co., *supra,* in all of which a similar contract was pleaded as ,a defense, which was the sace as that set up in the Iowa cases, which we have already discussed, the Nebraska court held "(a) that such contract of an employe did not lack consideration to support it; (2) that the promise made by the employe to the relief department for the benefit of the railroad company lief department for the benefit of the railroad company was available to the latter as a cause of action or defense; (3) that such contract was not contrary to public policy; (4) that the effect of such contract was not to enable

the railroad company to exonerate itself by contract from liability for the negligence of itself or servants; (5) that the employe did not waive his right of action against the railroad company, in case he should be injured by its negligence, by the execution of the contract; (6) that it is not the execution of the contract that estops the injured employe, but his acceptance of moneys from the relief department on account of his injury after his cause of action against the railroad on account thereof arises." We do not find that any question was raised on the pleadings in any of these cases. It may be well, however, to notice that in the Curtis case, in his reply to defendant's answer, "plaintiff further alleges the fact to be that before he could engage in the services of said company he was required and compelled to join said Burlington Voluntary Relief Department and become a regular member thereof." Upon this point the court said: "In this it will be noticed there is no direct statement that whatever was done in coercing the defendant in error to join the relief department was by or for the company, though it is true that it is the inference which must naturally be drawn from the statement, that the requirement was by or for the company; but without regard as to whether this was sufficient, there was no evidence of any undue influence or pressure brought to bear by this company to induce the defendant in error to become a member of the relief department, and with such existent conditions and facts at the time the influence was exerted as must be in order to render the contract invalid or voidable."

It may be serviceable also to quote the following expression from the opinion in C., B. & Q. R. Co. v. Bell, *supra*: "The expression 'contrary to public policy' we suppose means good public policy. This phrase has no

fixed legal significance. It varies and must vary with the changing conditions and laws of civilizations and peoples."

*Illinois.* The question was presented for determination to the appellate court of Illinois in the case of Eckman v. C., B. & Q. R. Co., which was decided at the March term, 1896. The opinion contains a full statement of the organization and purposes of the relief department, and which is similar if not identical with such department referred to and discussed in the Nebraska and Iowa cases. We learn from the opinion in this case that "no employe of the railroad company is required to become a member of the relief department," and also the following facts which may prove of interest:

"The relief department was organized on June 1, 1889. August 31, 1891, two days after the accident to plaintiff, the defendant had paid for operating expenses alone of the relief department, $82,958.98. It had also advanced toward the payment of benefits during such time on account of the insufficiency of contributions of members, the sum of $10,128.19. From June 1, 1889, to April 30, 1892, (this suit having been brought on May 4, 1892), the defendant paid for operating expenses of the relief department from its funds $110,538.63. On the 31st day of December, 1891, in accordance with its regulations, it crossed off charges against the relief fund for deficiencies which accrued up to that time, amounting to $20,275.55. It had advanced on account of further deficiencies accruing from January, 1892, to April 30, 1892, the sum of $19,441.27, making a total paid and advanced by the company from June 1, 1889, to April 30, 1892, of $150,255.45.

The amount paid by the defendant on account of sickness, and death from sickness, from June 1, 1889, to April 30, 1892, was $225,978.00, and the amount paid

on account of accident, and death from accident, was $245,281.49. This latter amount included benefits, whether the injury received was while the employe was on or off duty.

The plaintiff made application for membership on July 18, 1890, and was duly accepted. He received in benefits the sum of $245, being the amount specified in the regulations to which he was entitled. He was also paid on account of the injury for nurses, medicine and surgical attendance a further sum of $121.90. It was not disputed at the trial that these payments were made to the plaintiff and received by him in accordance with the rules and regulations of the relief department, of which he was a member, and were paid to him on account of the injury for which he brings this suit. The defendant relied upon the facts above set forth as a bar to the action, and the trial court directed a verdict in its favor."

After setting forth the errors assigned, the court said:

"This case presents a question of great and permanent interest, which has never, so far as we are advised, been discussed in this state. The validity of such a defense as the appellee makes has been affirmed by many cases elsewhere, and we adopt the result, without committing ourselves to the whole argument, of C., B. & Q. R. R. v. Bell, 44 Neb. 44, 62 N. W. Rep. 314, which is a case not distinguishable from this."

An appeal was taken to the supreme court of Illinois and that court affirmed the judgment of the appellate court in an opinion filed in November, 1897, every contention of plaintiff being decided adversely to him, though Justice Magruder dissented on one point with which we are not now concerned. This is one of the leading cases on the subject, and we shall have occasion to refer to it again.

This question came up before the appellate court again in the case of Penna. Co. v. Chapman, *supra*, which was decided in February, 1905. The plaintiff had recovered a judgment in the circuit court against the defendant for $12,183.50 for personal injuries sustained by him. The defendant formed one of the companies conducting the "Voluntary Relief Department of the Pennsylvania lines west of Pittsburg," and the application for membership of the plaintiff for membership therein, which constituted a contract and which is set out, is the same as in the Ohio and Indiana cases. We find that "under the by-laws of that department plaintiff was required to contribute to that department $2.25 per month and was entitled to receive from it in case of disability $1.50 per day for the first fifty-two weeks and 75 cents per day thereafter during the continuance of the disability. He was paid by the relief department benefits at the rate of $1.50 per day from January 17 to August 15, 1898. 211 days, $316.50. The medical examiner of the relief department then gave him a return to duty card, which stated that he had recovered and would be able to return to duty August 16, 1898. He reported for duty and was on that day put to work. He worked a few days but his wound broke open again and he was unable to work. He then applied for further benefits to the medical director who gave him the card to return to duty, and to the persons from whom he had received checks for the benefits which had been paid to him, and was told by them that there was nothing in the relief department for him, that he had received all that he was entitled to and he has in fact been paid no benefits since August 15, 1898. He has been during, at least, a part of the time since August, 1898, disabled and unable to work by reason of the injury complained of."

It is stated in the opinion that "the last objection

urged by appellant is, that plaintiff waived his right of action against the defendant, if any he had. That defendant, if liable in the first instance to plaintiff for his injury, is entitled to the benefit of the contract between the plaintiff and the Panhandle Company made by his application for membership in the relief department of that company, and its acceptance by the superintendent of the relief department is clear and is not disputed. The only instructions asked by the defendant which it is claimed relate in any way to the effect of this contract and of the acceptance of benefits by plaintiff from the relief department, upon the right of plaintiff to maintain this action, are the following, given for the defendant: 'The jury are instructed that the plaintiff is bound by such papers as the plaintiff signed, and thus signed have been put in evidence in this case,' and the peremptory instruction to find for the defendant, which was refused. If the question whether the contract relied upon was fully performed, whether the plaintiff was paid all the benefits he was entitled to receive from the relief department for his disability by reason of the injury complained of, had been submitted to the jury, the evidence would, in our opinion, warrant and support a finding that the contract was not fully performed, that the plaintiff was not paid all the benefits he was entitled to receive from the relief department.

We are not prepared to hold that a partial performance only of the contract is a bar to this action; that an acceptance by the plaintiff of a part only of the benefits he was entitled to waived his right to recover for the injury, nor to hold that in case the persons in charge of the relief department refused to pay to plaintiff benefits to which he was entitled, that his remedy must be sought before the tribunal of the relief department, but hold that in such case he may recover upon his original cause

of action, if one he had, and that in case of such recovery the defendant is only entitled to credit for the benefits paid.

The judgment of the circuit court is affirmed."

On appeal to the supreme court of Illinois that court in an opinion rendered in the same case, *supra*, in December, 1905, said: "Upon a consideration of the whole case we find no reversible error, and the judgments of the circuit court and appellate court will be affirmed." A rehearing was applied for and denied in April, 1906.

*Alabama.* This vexed question came before the supreme court of Alabama in the case of Harrison v. Alabama Midland Ry. Co., *supra*, and an opinion was rendered therein in January, 1906. This case is instructive because the point presented is the overruling of plaintiff's demurrer to two pleas of defendant, which are referred to in the opinion as follows:

"The fifth plea sets up the existence of an association composed of the defendant company and other railroad companies, under the designation of the 'Relief and Hospital Department of the Plant System.' The plea sets up the purpose of this organization, and the manner in which the contributions made by the companies themselves and their employes are to be conserved and dispensed. Each employe contributes a stated sum per month. To this, the associated companies add $1,000.00 per month, which amounts to $12,000.00 per year, and in addition guarantees the payment of all the benefits that may accrue to employes under the terms of the contract In case of injury not causing death, employes are entitled to medical and surgical treatment at the hospital, provided for and maintained, furnished medicines, etc., while under such treatment and are besides, to be entitled to a certain weekly indemnity. In case of death, the benefit consists of a sum certain, to be paid to the

family of deceased. The articles and purposes of the organization are fully set out in the plea. By the terms of the contract (of one becoming a member) the employe had the right, upon being insured, to determine whether he would accept the benefits arising from their joint contributions by the companies and the employes, or whether he would bring his suit to recover damages for any negligence, which he might claim, occasioned his injuries. In case of his death his representatives had the same right of choice.

The plea alleges that the plaintiff, Gladden Harrison, after he was injured, and before bringing suit, accepted the benefits to which he was entitled by the terms of this contract, and sets up the fact of such acceptance as a final and conclusive bar to his right afterwards to maintain a suit for damages for his alleged injuries.

The sixth plea, in somewhat similar language, sets up the same contract, but adds that it was one of its terms, that its construction and effect should be determined by the laws of Georgia. It then proceeds to show that there was no statute law of Georgia applying to such contracts, but that a contract substantially the same in its provisions, and made with the same department, was construed, and its effect determined, by the supreme court of the state of Georgia, which was the highest court of the state, in the case of Petty v. Brunswick, etc. R. R. Co., reported in 109 Ga. 666, 35 S. E. 82. The decision in that case is attached as an exhibit to the plea and made a part of it.

The plea was demurred to on numerous grounds, the main contention raised by the demurrer being that the contract between the plaintiff and the Relief and Hospital Department of the Plant System, and with the Alabama Midland Railway Company, as a constituent member of that association, is invalid, on the grounds, that the es-

tablishment of such a department is *ultra vires;* that there was no consideration for entering into the contract, and that the acceptance of the benefits of the same by the plaintiff did not constitute a binding election which prevented him from afterwards bringing and maintaining a suit to recover damages for his alleged injuries.

The contract of the plaintiff provides, that the associated companies shall contribute annually the sum of $12,000.00 as a benefit fund of the association, supplemented by monthly contributions from the employes. This wears the appearance of stability on which an employe may rely for the guaranteed relief, in case he should choose to become a member of the association. By the scheme of relief the employe, or his representative in case of accident or death, is offered the choice to be voluntarily exercised by him, of accepting indemnity provided for him by the company and other employes, or refusing such indemnity, bring suit to recover damages for his injuries."

This court copies a long extract from the opinion in Petty v. Brunswick & Western R. Co., *supra,* including the list of authorities therein, and says of it that it "is a full, clear and able decision of all the main questions involved in this case, and which construes the validity of the same contract we have before us."

It may be well to give still one other extract from the opinion: "It is insisted, however, that the existence of the employer's liability act in this state, which does not exist in Georgia, makes this case a different one from that presented in the other states. We are unable to understand how the contract in question contravenes the employer's liability act, but on reasoning and principle it seems that that act can have no effect on the general principle."

*Georgia.* We turn again to the case of Petty v.

Brunswick & Western Ry. Co., *supra*, decided in January, 1900, to which we have already referred and from which we made a long quotation. We find that, in substance, the contract involved therein was, as was said in Harrison v. Alabama Midland Ry. Co., *supra*, "the same contract" which was before that court, the Brunswick and Western Ry. Co. being one of the railway corporations constituting the "Plant System of Railways," under whose auspices and with whose assistance the relief department was organized and conducted. As we have also said, the principle enunciated in this case was followed by the same court in Carter v. Brunswick & Western Ry. Co., *supra*, in which however, no opinion was written.

*South Carolina.* The validity of such a contract was involved in the case of Johnson v. Charleston & Savannah Ry. Co., supra, which was decided by the supreme court of South Carolina in January, 1899. The judgment of the circuit court was affirmed by an equally divided court, Justice Pope, writing an opinion concurred in by Justice Gray, for reversal, and Chief Justice McIver, writing an opinion concurred in by Justice Jones, for affirmance. We find that the action was brought by plaintiff, an employe, for the purpose of recovering damages for injuries sustained by the alleged negligence of defendant. By way of special defense the defendant set up a contract similar to the one interposed in the Alabama and Georgia cases, referred to above, though the terms and conditions thereof and facts generally are not so fully set forth in defendant's answer as in the former cases, though it appears that the Charleston & Savannah Ry. Co. was also one of the companies constituting the Plant System. To this defense the plaintiff demurred orally, assigning as grounds of demurrer that the contract set out therein" was contrary to law

and against public policy, and a release thereunder cannot be pleaded as a defense to an action for damages caused by the defendant's negligence." This demurrer was overruled by the circuit judge, who said: "There is no question in my mind that a contract of this kind, whereby a railroad' company attempts to release itself of any liability on account of negligence, is contrary to public policy, and where the party enters into the contract beforehand, he would not be estopped from bringing his action for damages against the railroad company. It seems in this case that the plaintiff had entered into that agreement, relieving the railroad company, before he was injured. After he was injured, he was put to his election as to whether he would sue the railroad company, or go ahead and carry out the contract and receive the benefits of that contract. It seems to me that the decision in the case of Price v. Railroad Co., (33 S. C. 556, 12 S. E. 413, S. C. 26 Amer. St. Rep. 700), would control in this case, and I think the plaintiff, having elected to receive the benefits under that contract is now estopped from bringing his action against the railroad company, from suing the railroad company here for damages, and I overrule the demurrer."

From this judgment plaintiff appealed, and this judgment was affirmed by an equally divided court, as we have seen. A petition for a rehearing was filed, which was denied in an opinion filed May, 1899.

In the subsequent case of City of Florence v. Berry, 62 S. C. 469, 40 S. E. Rep. 871, in which the sole question presented by the appeal therein was as to the effect of a judgment rendered by that court, when the members thereof were equally divided, it was held by a unanimous court that, when "a judgment is affirmed by a divided court, such a judgment must be regarded as a judgment of the supreme court, and as such is binding

authority in all subsequent cases, until it is overruled by competent authority."

It seems hardly fair to class the South Carolina court under such circumstances, as being upon either side of this question. The question seems never to have been presented to that court again. In 1903 the legislature enacted a law upon the subject, No. 48, page 79 Laws of South Carolina of 1903, of which it was said in Cannady v. Atlantic Coast Line R. Co., N. C. 55 S. E. Rep. 836, text 840, "We are informed that the question has been removed from the sphere of litigation by legislation in South Carolina." In view of the experience which other states have had with statutes along similar lines, it remains to be seen whether or not this statement proves too optimistic.

One other matter concerning the case of Johnson v. Charleston & Savannah R. Co., *supra*, should be mentioned. We find that it was also alleged in the second affirmative defense interposed by defendant "that the plaintiff, after sustaining the injury complained of, for valuable consideration, under his hand and seal, released the defendant company from all liability for such injury." See opinion of Chief Justice McIver, 55 S. C. text 173, 32 S. E. But for this fact it seems to us that the reasoning of the circuit judge upon the demurrer would have been a veritable *petitio principii*. It may also be well to call attention to the fact that "the question upon which the court was equally divided was *not* the constitutional question but the question as to public policy."

*North Carolina.* This legal problem was presented for solution to the North Carolina supreme court in the case of Cannady v. Atlantic Coast Line R. Co., *supra*, an opinion in which was rendered in December, 1906. That court declined the question because it found that

the contract in question had been entered into in the
state of South Carolina and therefore the law of that
state governed.    After reciting that the contract set up
as a defense in the South Carolina court was "in all re-
spects as the one before us," that is before that court, the
opinions in the case of Johnson v. Charleston & Savan-
nah Ry. Co., *supra,* are reviewed, as well as the opinion
in City of Florence v. Berry, *supra,* the following lan-
guage is used in the opinion:

"The plaintiff had no cause of action in South Car-
olina, and therefore has none here.    Merely crossing
the state line cannot enlarge or give a cause of action
which he did not have in the state whence he came.
Every fact and circumstance affecting the cause of ac-
tion occurred in South Carolina.

This is conclusive of the appeal, unless, as contended
by the plaintiff's counsel, the form of the pleading pre-
sents the question whether the defendant is seeking to
use, not as a shield, but as a weapon, a contract which
violates the settled policy of this state, or is prohibited
by our employe's liability act.    Revisal 1905, Section
2694.    The plaintiff's view is that he has established by
the verdict of the jury a cause of action for an injury
sustained by reason of the defendant's negligence, upon
which he would recover, but for the affirmative defense
relied upon by the defendant, which, being executory,
this court is asked to specifically enforce; that in respect
to the contract the defendant is the actor, demanding
affirmative relief.    We do not concur in this view.
Whatever may have been the character of the contract
prior to the execution of the release by the plaintiff, by
that act the cause of action was released for all legal and
practical purposes and extinguished.    *    *    *    This
view relieves us from considering the other branch of
the controversy.    It is conceded that the courts which

have passed upon this form of contract have almost uniformly sustained it upon the ground stated by Judge McIver. In deciding this appeal we do not express any opinion upon the question, except to say that we fully concur in the opinion that a contract to exempt a railroad company from liability for negligence is void.

We have uniformly and frequently so held. The question as to the interpretation of this contract, when, if ever, presented to this court in a manner making it our duty to pass upon it, will be approached as an open question. * * * By the Act of Congress the contract, or acceptance of benefits under it, is declared not to be a bar to an action for damages. It may not be improper to say that the contract does not commend itself to our judgment. In this case it appears that the plaintiff paid into the relief department $72 and received by way of benefits $68. We must, in obedience to the well settled law of comity, declare that the plaitniff, having no cause of action in South Carolina, has none in this forum. The judgment must be reversed, and judgment upon the verdict be entered for the defendant."

Chief Justice Clark filed a dissenting opinion, in which he said: "Such a defense is not good in *foro conscientiae,* and in that matter the courts here are to be governed by their own rules of equity. There has been no consideration for the release, and, such being the case, the judge properly entered judgment in favor of the plaintiff upon the verdict.

It is strenuously argued by the able and ingenious counsel for the plaintiff that the 'Atlantic Coast Line Relief Department' is an ingeniously devised plan to cause the employes of that company, at their own expense and by means of deductions from their wages, to insure the railroad company from liability for injuries sustained in its service, notwithstanding the provisions of

the fellow servant act, now Revisal 1905, section 2646. It is not necessary to go into that matter, as it is apparent that there was no consideration for the release here set up. But the act in question affects a most meritorious class of our citizens, engaged in hazardous quasi public service. They are deeply and vitally interested that judicial construction shall in no wise impair the just protection afforded them by that section, and especially by the last paragraph thereof: 'Any contract or agreement, expressly or impliedly made by any employe of such company to waive the benefit of this section shall be null and void.' "

*District of Columbia.* This same question arose in the case of Brown v. B. & O. R. Co., *supra,* but in the opinion rendered therein in May, 1895, it was left undetermined, the following language being used, after citing authorities to the effect that releases executed by an employe, subsequent to the occurrence of an injury to him and the receipt of benefits by him, though in pursuance of a precontract, in the absence of fraud or imposition, had been considered in several cases and in all of them held valid and to constitute a bar to the action:

"Whether an employe for adequate consideration may, by precontract, independently of a subsequent release actually executed upon consideration received, stipulate for the release and exoneration of his employer for all liability for and on account of personal injuries that he may receive, whether caused by the negligence of the employer or otherwise, is a question in regard to which there is some contrariety of opinion. The affirmative of this proposition, however, is maintained by respectable authority. It is supposed that there is an obvious distinction between the relation which a railroad company, for instance, holds to its servants and employes,

and that which it holds to passengers and freighters; and that the contractual relation with the former may be subject to conditions and limitations that could not be imposed upon the contracts with the latter.   Patterson's Railway Accident Law, 510, 511, and cases cited. But without discussing this question, which we do not decide, we affirm the judgment of the court below."

*Colorado.*   In the case of C., B. & Q. R. Co. v. McGraw, *supra,* decided in 1896, the Colorado supreme court disposed of this question as follows:

"In view of a new trial, we will briefly allude to the fourth defense set up in the answer.   In this pleading defendant alleges that it had organized a relief department among its employes for the purpose of giving pecuniary aid to those injured in its service; that the plaintiff, being a member thereof, had promised and agreed to and with the company, in consideration of certain amounts (not stated) to be paid by the said company for the maintenance of its relief department, that in case of the acceptance of benefits by him from such department for injury this should operate as a release and satisfaction of all claims for damages against the company arising from such injury.   It is then averred that the plaintiff had received and accepted benefits (amounts not stated) due to him, by reason of his membership in this department, and on account of the injuries relied upon for a recovery in this action, thereby releasing the defendant from any and all claims for damages arising in any way out of such injury.   To this defense the plaintiff filed a demurrer setting forth various grounds. The court sustained the demurrer, and this ruling is assigned for error.   A contract of this nature has beer held void as against public policy by the circuit court of this circuit.   Miller v. The Chicago, B. & Q. Ry. Co., 65 Fed. Rep. 305.   But such defenses, if well

pleaded, have generally been held good. (Authorities cited).

But the defense is not sufficiently presented in these pleadings to warrant a consideration of any general question as to the legality of what is known as 'relief defenses.' In case the defendant desires to interpose as a defense a contract with the plaintiff, showing that in consideration of his receiving certain benefits from a relief association, composed of the defendant and its employes, the nature, character and objects of such association should be set forth, as well as the amount and character of the benefits accruing to the plaintiff therefor, showing that the same have either been paid, or that there is an obligation resting upon some organization, individual or association. · Such a defense is not presented in this case, and the demurrer to the fourth defense was properly sustained."

*West Virginia.* The West Virginia supreme court of appeals has been classed with those courts upholding the validity of such contracts, but, on turning to Kinney v. Balt. & Ohio Emp. Rel. Ass'n. 35 W. Va. 385, 14 S. E. 8, decided in November, 1891, which ·is cited as so holding, we find that the question was not determined therein, but that such contract was only incidentally referred to, as was true of this court in the case of Fla. So. R. Co. v. Steen, 45 Fla. 313, 34 South. Rep. 571, to which we have already referred.

*Federal.* We have now considered all the cases in the state courts bearing upon the question which, after diligent search, we have been able to find, and now turn to the Federal courts. In Owens v. Baltimore & O. R. Co., 35 Fed. Rep. 715, decided in the circuit court for the southern district of Ohio, in August, 1888, the facts, circumstances and pleadings are so unlike those in the instant case, that we shall not be able to derive much

light therefrom. Suffice it to say that it appears that plaintiff had applied for relief to the Baltimore & Ohio Relief Association, a corporation organized "for the purpose of affording relief in case of accident, and in case of disability by illness, to the employes of defendant." The charter of the relief association provides that the Baltimore and Ohio Railroad Company shall guaranty the performance of the contracts made by the relief association, and, under authority given to the railroad company to extend its aid to the relief association upon such terms as the railroad company should deem proper, the company provided, by way of permanent loan to the relief association, a guaranty fund of $100,000. One of the conditions of this guaranty, as expressed in a by-law of the association, was substantially as follows: That, inasmuch as it was no part of the scheme of the relief association that any of its members should obtain double benefits in case of an injury, whenever any such claim was made against the relief association, the claimant should first file a release of the railroad company from any claim for damages. When the application was made by the plaintiff to the association for benefits, it was placed, not upon the ground that he was disabled by reason of injuries resulting from the collision, but upon the ground that he was disabled by illness," which was described. "The application was honored, and the benefits under the clause or provision of the by-laws of the association relating to such cases were paid to and received by the plaintiff, to the amount of about $330." The action brought by plaintiff against defendant was for the recovery of damages for personal injuries received by plaintiff, which resulted from defendant's negligence. At the trial it developed that the statements made by plaintiff to the relief association were untrue, under directions from the court the jury was instructed

to make special findings, and, among other findings, was a general verdict for plaintiff in the sum of $3,520. The court instructed the jury to the effect, as expressed by the first head-note, though the instruction is set out in full in the opinion, that "The by-law of a railroad relief association requiring its members to release the railroad company from any claim for damages before applying to the association for relief, is not against public policy, as it simply puts a claimant to his election whether he will look to the railroad company or the relief association for compensation." This instruction was re-affirmed and approved in the opinion, and it was further held that the plaintiff was not estopped from bringing and maintaining his action by reason of his untruthful representations, through which he had received compensation. Judgment was entered for $3,520.

The next time the question was considered was in the circuit court for the district of Maryland, in the case of state, to use of Black v. Baltimore & O. R. Co., 36 Fed. Rep. 655, decided in November, 1888. In this case we find that "the release pleaded as a discharge was execu.ed by the plaintiff after the cause of action upon which she sues had arisen." The court held that such a release was not invalid as against public policy.

The case next in order of time is Martin v. Baltimore & O. R. Co., 41 Fed. Rep. 125, in the circuit court for the district of West Virginia, decided in October, 1889.

We find that the court charged the jury as follows:

"And if the jury find from the evidence that, prior to his employment by the defendant, the plaintiff signed the contract and the receipts offered in evidence by the defendant, and received the benefits arising therefrom both before the bringing of this suit and afterwards, by which he released the defendant from all default of the defend-

ant's employes, and injuries arising to him therefrom, then the defendant is not liable in this action, and the verdict must be for the defendant."

Verdict for defendant.

We now come to the much discussed case of Miller v. Chicago, B. & Q. Ry. Co., 65 Fed. Rep. 305. This case was in the circuit court for the district of Colorado and the opinion therein was rendered by Judge HALLETT in December, 1894. As we have already seen, the question arose upon a demurrer to the answer of defendant in which a contract of a similar nature to those treated in the former opinions cited was pleaded as a defense, and this demurrer was sustained. The views expressed in the opinion have not been received with favor by the courts generally, but, as we shall have to examine the defense as pleaded in that case in connection with what is said in that opinion later on in this opinion, we shall pass it for the present.

In Otis v. Pennsylvania Co., 71 Fed. Rep. 136, decided by the circuit court for the district of Indiana, in January, 1896, the question also arose upon a demurrer to the answer pleading such a contract as a defense, which demurrer was sustained, and the court held "that such a contract is not invalid for repugnancy to sound public policy, or for want of consideration, or for want of mutuality."

In the case of Vickers v. Chicago, B. & Q. R. Co., 71 Fed. Rep. 139, decided by the circuit court for the northen district of Illinois, in December, 1895, no opinion was written but the court in charging the jury, wherein a similar contract had been pleaded as a defense, expressed strong disapproval of the opinion in the case of Miller v. Chicago, B. & Q. Co., *supra,* and directed the jury to return a verdict for the defendant.

In the case of Shaver v. Pennsylvania Co., 71 Fed.

Rep. 931, decided by the circuit court for the northern district of Ohio, in January, 1896, the court held, upon a demurrer interposed to the answer pleading such a contract as a defense that such contract is valid and further "that the act of the legislature of Ohio which declares it to be void and invalid is unconstitutional." But upon this last point see Peirce v. Van Dusen, 78 Fed. Rep. 693, 24 C. C. A. 280, S. C. 69 L. R. A. 705.

An appeal was taken by the defendant in the case of Miller v. Chicago, B. &. Q. R. Co., *supra*, to the circuit court of appeals for the eighth circuit and an opinion was rendered by that court in October, 1896, affirming the judgment of the circuit court. 76 Fed. 439. We shall have to discuss this opinion somewhat in detail, therefore we pass it for the present.

The same question arose on a demurrer to the answer in the case of Hamilton v. St. Louis, K. & N. W. R. Co., 118 Fed. Rep. 92, decided by the circuit court for the eastern district of Missouri, in October, 1902. That court also held that such a contract was not opposed to public policy and was not violative of the Missouri statute.

*England.* We shall not undertake to analyze the three English cases to which we have referred, *supra,* Griffiths v. Earl of Dudley; Clements v. London & N. W. Ry. Co., and Flower v. London & N. W. Ry. Co., though we have given them a careful examination, from which we have derived benefit and instruction.

These are all the cases which we have been able to find bearing upon the subject or dealing with the question directly at issue. We have no apology to make for our examination of all these cases or for our many extracts therefrom. A question upon which the ablest *nisi prius* judges of this country have differed, which has been productive of divergent views and dissent in

the various appellate and supreme courts, which has caused an equal division in the supreme court of South Carolina, and the supreme court of Indiana to overrule itself within a few months, which has caused the supreme courts of Iowa and Nebraska to pause and hesitate, upon which other courts have evaded a direct decision or adjudication, leaving it an open question, is deserving of our most careful consideration and deliberation. We have also realized the importance of the question and that the decision thereof is fraught with far-reaching consequences to a large class of employes. We have been desirous of having all the light thrown upon it possible, and to that end have studied and compared the utterances of the different judges who have dealt with it. We have found it necessary, certainly the writer hereof, to subject all of these different opinions to a close analysis, in our attempt to reach a correct conclusion, and we have thought that it might prove of service to the circuit judges and members of the bar in this state who may have occasion to grapple with the question in the future to give them the full benefit of our researches. We realize that it is extending this opinion to a considerable length, but we feel that it is well worth while. These "Relief and Hospital Department Contracts" have proved a fruitful source of litigation during a period of nearly twenty years and have given the courts much trouble. They have also been productive of much legislation. Different state legislatures have tried their hand with varying degrees of success. It is not only one of the vexed questions of the day but it is an ever recurring question that will not stay settled, notwithstanding repeated adjudications by the courts. There seems to be an increasing public demand for legislation along these lines. As we have seen, Congress has also felt called upon to act and has passed an act popularly known as the "Em-

ployer's Liability Act," approved June 11, 1906 (34 Stat. 232, C. 3073), the third section of which expressly provides "that no contract of employment, insurance, relief benefit, or indemnity for injury or death entered into by or on behalf of any employe, nor the acceptance of any such insurance, relief benefit, or indemnity by the person entitled thereto, shall constitute any bar or defense to an action brought to recover damages for personal injuries to or death of such employe, etc." Although of such recent enactment, its validity and constitutionality have already been attacked in several of the Federal circuit courts, and conflicting decisions have been rendered therein. Judges TRIEBER and SPEER having held it constitutional, while Judges EVANS and McCALL have declared it unconstitutional. Perhaps other judges have passed thereon. At the present writing its fate still hangs trembling in the balance, awaiting final adjudication by the Supreme Court of the United States, to which august tribunal it has been submitted. There is a spirit of unrest in the air, which can only be exorcised by proper and sufficient legislation upon the subject. We only mention these facts in order to emphasize the importance of the question with which we are called upon to deal. It behooves us to proceed with extreme caution, and this we shall try to do. We have done well to avail ourselves of all the light which has been thrown upon the question by the various judges in the opinions which we have cited. As was well said by Chief Justice Mc-Iver in his opinion in Johnson v. Charleston & Savannah R. Co., *supra*: "While it is quite true that these cases are not binding authority on this court, and are only useful as showing the trend of the judicial mind, and mainly valuable for the reasoning employed therein, yet when such unusual and striking unanimity is found in the various courts and various jurisdictions in which

this question has been considered, it is well calculated to incite this court, when called for the first time to determine this question, to the most careful consideration of the reasoning by which such a practically unanimous result has been reached." We fear that this unanimity, upon close investigation, will prove more apparent than real. Be that as it may, we have taken care, even at the risk of being tedious and prolix, to set forth the most cogent arguments that have been adduced in favor of the validity of such contracts. While it is always pleasant to "walk in the light" of authority and to keep company with our judicial brothers in the different courts, whenever it is possible to do so, it is still more desirable to feel that in our conclusions we are supported by the reason of the law, even if in so doing we should have to stand alone.

However, we must now proceed to get our bearings. In so doing we are of the opinion that orientation in the wilderness of judicial precedents is oftentimes as difficult as it is said to be in the philosophical world.

We take up the first contention of plaintiff in support of his demurrer to the plea, "that the contract and agreement set up is contrary to public policy." Before undertaking to pass upon this contention it may be well for us, if possible, to get a clear idea of what is meant by the term, "public policy." We have already seen how it was characterized by the supreme court of Nebraska in C., B. & Q. R. Co. v. Bell, *supra*. In Griswold v. Ill. Cent. Ry. Co., 90 Iowa 265, text 268, 57 N. W. Rep. 843, S. C. 24 L. R. A. 647, we find the following language:

Public policy is variable,—the very reverse of that which is the policy of the public at one time may become public policy at another; hence no fixed rules can be given by which to determine what is public policy. The au-

thorities all agree that a contract is not void, as against public policy, unless it is injurious to the interests of the public, or contravenes some established interest of society. Public policy has been aptly described as 'an unruly horse, and, when once you get astride, you never know where it will carry you.' It was said by WILMOT, C. J. 'It is the duty of all courts to keep their eyes steadily upon the interests of the public, even in the determination of commutative justice, and when they find an action is founded upon a claim injurious to the public, and which has a bad tendency, to give no countenance or assistance in *foro civili.*' Other courts have said: 'We may take it as well settled that in the law of contracts the first purpose of courts is to look to the welfare of the public, and, if the enforcement of the agreement would be inimical to the interest, no relief could be granted to the party injured, and even though it might result beneficially to the party who violated the agreement. The common law will not permit individuals to oblige themselves by a contract either to do, or not to do, anything, when the thing to be done or omitted is in any degree clearly injurious to the public.' Again, it is said: 'It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because, if there is one thing more than another which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into fairly and voluntarily, shall be held sacred and shall be enforced by courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract,'" this last quotation being from Sir George Jessel, M. R., in Printing Numerical R. Co. v. Sampson, L. R. 19 Eq.

462, 465. A portion of this language was quoted with approval by Justice GRAY in Hartford Ins. Co. v. Chicago M. & St. P. Ry. Co., 175 U. S. 91, text 106, 20 Sup. Ct. Rep. 33.

As was said by Justice STORY in section 675 of Vol. 1 of his work on Contracts in language which has been often quoted with approval by the courts: "Public policy is in its nature so uncertain and fluctuating, varying with the habits and fashions of the day, with the growth of commerce and the wages of trade, that it is difficult to determine its limits with any degree of exactness. It has never been defined by the courts, but has been left loose and free of definition, in the same manner as fraud. This rule may, however, be safely laid down, that whenever any contract conflicts with the morals of the time, and contravenes any established interests of society, it is void, as being against public policy."

As was also said by Sir George Jessel, M. R., in Besant v. Wood, L. R. 12 Ch. Div. 605, 620: "Now you cannot lay down any definition of the term 'public policy,' or say it comprises such and such a proposition, and does not comprise such and such another: that must be, to a great extent, a matter of individual opinion, because what one man, or one judge, and perhaps I ought to say one woman also in this case, might think against public policy, another might think altogether excellent public policy. Consequently it is impossible to say what the opinion of a man or a judge might be as to what public policy is."

In the leading case of Egerton v. Earl Brownlow, 4 H. L. Cas. 1, text 123, Parke, B., used the following language in speaking of the term, public policy:

"This is a vague and unsatisfactory term, and calculated to lead to uncertainty and error, when applied to the decision of legal rights; it is capable of being un-

derstood in different senses; it may, and does, in its or-
dinary sense, mean 'political expedience,' or that which
is best for the common good of the community; and in
that sense there may be every variety of opinion, accord-
ing to education, habits, talents, and disposition of each
person, who is to decide whether an act is against public
policy or not.   To allow this to be a ground of judicial
decision, would lead to the greatest uncertainty and con-
fusion.   It is the province of the statesman, and not the
lawyer, to discuss, and of the legislature to determine,
what is the best for public good, and to provide for it
by proper enactments.   It is the province of the judge
to expound the law only; the written from the statutes;
the unwritten or common law from the decisions of our
predecessors and of our existing courts, from text-wri-
ters of acknowledged authority, and upon the principles
to be clearly deduced from them, by sound reason and
just inference; not to speculate upon what is the best,
in his opinion, for the advantage of the community."

In line with this is the language of Justice McGowan
in Magee v. O'Neill, 19 S. C. 170, text 185.   Also
see discussion in Davies v. Davies, Law Rep. 36 chanc.
Div. 359; 6 Words and Phrases 5813 and 23 Amer. &
Eng. Ency. of Law (2nd ed.) 455, and authorities cited
in notes.

As was said by Judge SANBORN in Hartford Fire
Ins. Co. v. Chicago, M. & St. P. Ry. Co., 70 Fed. Rep.
202:   "The public policy of a state or nation must be
determined by its constitution, laws and judicial decis-
ions; not by the varying opinions of laymen, lawyers,
or judges as to the demands of the interests of the
public."

Also see an instructive discussion of the question in
Smith v DuBose, 78 Ga. 413, text 435, 3 S. E. Rep.
309, et seq., from which we quote the following: "What
is public policy?   And where must we look to find it?

And in ascertaining and applying it to the transactions of life, by what rules and precautions are the courts to be guided? On this latter topic, it is manifest from many decisions that judicial tribunals hold themselves bound to the observance of rules of extreme caution when invoked to declare a transaction void on grounds of public policy; and prejudice to the public interest must clearly appear before a court would be warranted in pronouncing the transaction void on this account."

As was well said by Justice COBB in his able opinion in Kelly v. Strouse, 116 Ga. 872, text 899, 43 S. E. Rep. 280: "Courts of last resort are composed of human beings, and are liable to make mistakes both in rulings and reasoning, and unguarded and ill-considered expressions are as apt to emanate from them as from others."

No doubt, guided by such principles as those embodied in the foregoing quotations, the various judges who have been called upon to pass upon such contracts as we are now considering have nearly all refused to pronounce them void on the ground of public policy, and upon this point we are glad to be able to find ourselves in full accord with them. The reasoning used by them in some of the cases which we have cited seems to be conclusive upon this point and simply unanswerable.

The fact that we should be impressed that "the case of the plaintiff is a particularly hard one," as was said in Fuller v. Baltimore & Ohio Employes' Relief Association, *supra,* or the fact "that the contract does not commend itself to our judgment," as was said of a similar contract in Cannady v. Atlantic Coast Line R. Co., *supra,* or even if we should be impressed with the fact, as was said by Chief-Justice CLARK in his dissenting opinion therein, that "such a defense is not good

in *foro conscientiae*" and that "a most meritorious class of our citizens, engaged in hazardous quasi public service" will be vitally affected by our decision, would not wrrant us in declaring the contract void.

All parties litigant who are *sui juris,* whether railroad corporations or their employes, in the eyes of the law, before the courts, stand upon an equal footing, entitled to equal rights and protection, and none to special privileges. In no sense of the word, can railroad employes be said to be wards of the court, nor would they wish to be so regarded. See Western & Atlantic R. Co. v. Bishop, 50 Ga. 465. It may well be that plaintiff made a rather hard bargain with defendant, but with that we have nothing to do, so long as no fraud or deception was practiced and the contract was legal in all respects. Scotch Manufacturing Co. v. Carr 53 Fla. 480, 43 South. Rep. 427. That is the question with which we have to deal.

We now come to the next contention of plaintiff, that such a contract as is set up in the plea is void because in contravention of our statute. If this contention be tenable, such a contract would also be opposed to public policy, and therefore void for that additional reason. There is no better way for a state to declare its public policy than through its law-making power. We do not think that the power of the legislature to enact Section 3 of Chapter 4071, Laws of 1891, can be questioned. As was said by the United States Supreme Court in Friesbie v. U. S., 157 U. S. 160, text 165, 15 Sup. Ct. Rep. 586: "While it may be conceded that, generally speaking, among the inalienable rights of the citizen is that of the liberty of contract, yet such liberty is not absolute and universal. It is within the undoubted power of government to restrain some individuals from all contracts,

as well as all individuals from some contracts." Also see the discussion of this question in Mumford v. C., R. I. & P. Ry. Co., P., C. C. & St. L. Ry. Co. and Western & Atlantic R. Co., all of which we have cited *supra* and from which we have quoted. Also see the opinion of the justices in 163 Mass. 589, text 592. It is undoubtedly true, as plaintiff contends, that "a contract to do what the law forbids cannot be enforced, whether it be *malum in se* or only *malum prohibitum*. An act in contravention of a statute, the common law or a treaty, although not immoral, is equally invalid with one that is *malum in se*." Wood's Law of Master and Servant (2nd ed.) section 198. While this is an unquestioned legal principle, it will not avail plaintiff in support of his contention, unless the contract as set out in the plea is given the effect of restricting the liability of a railroad company as to damages recoverable by one of its employes for personal injuries sustained as contemplated by our statute. This question we must now answer.

Suppose there had been no contract and the employe, after the occurrence of the injury, had executed a valid release by way of compromise and full settlement of all claims for damages he then had against the railroad company for damages, in the absence of any fraud, imposition or deception, could its validity be called in question? Have not parties the right to compromise and settle any claims, whether arising *ex contractu* or *ex delicto,* without recourse to litigation, and does not the policy of the law favor such settlements? If this be true, then how could the fact that the employe, prior to the injury, had entered into a contract, by which he agreed, in the event of the happening of an injury to him, he would, after its occurrence, make his election either to proceed in an action

at law against his employer for damages or to accept the benefits provided by the relief department, vitiate or impair a valid release so executed by such employe, after he had made his election to accept such benefits? In other words, would not a valid release, duly executed under such circumstances, be just as valid and binding as though there had been no pre-contract? We see no reason why it would not. This being so, the contract can be ignored and disregarded. In either case it seems to us that such a release founded upon a valid consideration could be successfully pleaded in bar as a defense to any action which such employe might institute, without reference to the contract, for it would be the release, in both cases which would constitute the defense. This being true, all of the cited cases in which releases were executed subsequent to the injury would stand in a class by themselves. This distinction is recognized by the court of appeals for the District of Columbia in Brown v. B. & O. R. Co., *supra,* though it seems to have been lost sight of by some of the other courts. Of course, where such release was executed under seal, the seal would import a consideration. If it be further true that "it is not the signing of the contract but the acceptance of benefits after the accident that constitutes the release," if, as a matter of fact the employe had made his election and had accepted such benefits, why could not this be successfully pleaded as a defense, whether a formal release had been executed subsequent to the injury or not? We think the supreme court of Pennsylvania is right in its utterance in Ringle v. Penna. R. Co., *supra:* "In the present case there is an additional agreement that the plaintiff shall 'execute such further instrument as may be necessary formally to evidence such acquittance,'

and it is argued that no such release has been executed by plaintiff. But it is not necessary that it should be. The acceptance of benefits is the substance of the release, and the agreement for a further instrument is by its express terms a mere formality for convenience of evidence." And where, as in the instant case, so far as is disclosed by the plea, there was no agreement in the contract to execute any further instrument, whether release, receipt or acquittance, it makes no difference, for it would be but a mere matter of evidence after all. If the plaintiff had accepted such benefits and the same be well and sufficiently pleaded as a defense, it would constitute a bar to the action. We fail to see wherein the contract in question construed as not effecting a valid release, in any way contravenes our statute. As we have already seen, it is not the making or signing of a contract which estops the plaintiff from bringing and maintaining his action, for, if that were true, it would undoubtedly be in contravention of our statute, for the reason that it would restrict the liability of the defendant. It is the release, whether formally executed or not, or whether executed in pursuance of a prior contract or not, that prevents the maintenance of the action. But in order to constitute a valid release, there must be a valid consideration therefor. In order to hold the plaintiff barred from his action by the acceptance of benefits, which constitute a release, such benefits must have flowed from the defendant either directly or indirectly. In other words, when a release is pleaded as a defense, it must plainly be shown by the plea that the defendant parted with something of value in consideration of the plaintiff releasing it from liability. To hold that the guaranty of the defendant or other provisions of the contract as set up in the plea in the instant case constitute a sufficient consideration for the

release would be in effect to give a construction and an effect to the contract that restricts the liability of the defendant, and therefore would make it violative of our statute. To prevent the statute against contracts restricting liability from avoiding the plea, the plea must be read as setting up an independent release, without reference to the original contract; if the antecedent contract is necessary to the validity of the release, the joinder of the release with that "body of death" will prove fatal.

Instances of such contracts as would be void by reason of their being in conflict with such a statute are pointed out by the supreme court of Iowa in Mumford v. Chicago, R. I. & Pac. Ry. Co., *supra,* and authorities there cited, and by the court of civil appeals of Texas in Galveston, H. & S. A. Ry. Co. v. Hughes, *supra.*

Again it is a source of gratification to find ourselves in alignment with a large majority of the other courts that have spoken upon this subject.

It is further contended by plaintiff, in support of his demurrer, "that the plea fails to set forth what authority the defendant company had under its charter to guarantee the payment of the sums set forth in the alleged contract by the relief association to injured or disabled members." It is contended that such a contract was and is *ultra vires,* because its object is entirely foreign to the purposes for which railroad companies are usually chartered. In other words, it is claimed, that the defendant, being a railroad corporation, has no power or authority to engage in the life or accident insurance business.

This is a very important question, but it will not detain us long, for the reason that it is not properly presented to us for consideration and determination, as no such question is raised by the pleadings. The

charter of the defendant, a foreign corporation, is not set out and we are not informed as to what powers were conferred upon it thereby. In the absence of such information, we cannot assume or undertake to say whether the formation by defendant of a "relief and hospital department" and guaranteeing the payment of its obligations was, or was not *ultra vires*. Whatever we might say upon the subject now, strictly speaking, would be *obiter*. See Petty v. Brunswick & Western Ry. Co., *supra;* C. B. & Q. R. Co. v. Bell, *supra;* Eckman v. C. B. & Q. R. Co., *supra*.

Again we find ourselves traveling in excellent company. However, several courts have had occasion to pass directly upon this question, and, in the event it should ever be presented to us, the following authorities, previously cited, will prove instructive: Harrison v. Alabama Midland Ry. Co.; Beck v. Penna. R. Co.; Donald v. C. B. & Q. Ry. Co.; Maine v. C. B. & Q. Ry. Co.; Johnson v. Philadelphia & R. R. Co.; State ex rel. Sheets v. P. C. C. & St. L. Ry. Co.

It is further contended by plaintiff that, even if we should hold that the contract in question is not void on the ground of public policy, or because it contravenes our statute, or because it is *ultra vires,* and conceding all the matters of fact set up in the plea which are sufficiently pleaded to be true, as we must do upon demurrer, still they do not constitute a valid and sufficient defense to the action, therefore the demurrer to the plea was rightfully sustained. It is argued that the plea shows a lack of mutuality and a want of consideration moving from the defendant to the plaintiff for the contract or release of claims for damages against the defendant. It is claimed that the plea in the instant case "contained all the vices and was open to the same objections on demurrer that are contained in the plea"

which was interposed in the case of Miller v. C., B. & Q. Ry. Co., *supra,* to which plea a demurrer was sustained and which ruling was affirmed on appeal. In fact, it is contended, that the plea is infected with still other vices.

Here, in our judgment, we encounter the very crux of this assignment, and it behooves us to proceed with even extra caution. Here, too, if anywhere, must be found the reconciliation ground for the conflicting views and contrariety of opinions which have been expressed. It may well be doubted, however, if any opinion could be written which would prove an irenicon to this controverted question. Our ambition is not so lofty nor our task so difficult. All that is incumbent upon us is to settle the question, so far as this court is concerned, but in so doing we are desirous of reaching a correct conclusion. We must, then, subject the plea to a searching analysis, in order to ascertain if the claims of the plaintiff are well founded. It must be tested by the rules and requirements of good pleading, and to that point we now address ourselves.

It is settled law in this court that a pleading, whether in an action at law or a suit in equity, is to be most strictly construed against the pleader thereof. See concurring opinion in Atlantic Coast Line R. Co. v. Benedict Pineapple Co., 52 Fla. 165, 42 South. Rep. 529, text 532, and authorities there cited, especially Cotten v. Williams, 1 Fla. 37, text 49; Bennett v. Herring, 1 Fla. 387, text 390; Sealey v. Thomas, 6 Fla. 25, text 36. If it be true that this principle applies to pleadings generally, including all pleas in bar, as the cases cited hold, it must apply with especial force to a plea which is in the nature of a confession and avoidance, to which class the plea now under consideration belongs. As was said in Cotten v. Williams, *supra,*

"When a plea has on the face of it two intendments, it ought to be construed most strongly against the party who pleads it." And, as was said in Bennett v. Herring, *supra*, "The matter of a plea in bar must consist of such facts and circumstances as amount to a complete defense to the action or to such parts of the declaration as it purports to answer, and whether the matter of defense be founded on a public or private statute, the plea must state all the facts and circumstances necessary to bring it within the statute."

All of the facts and circumstances connected with the making of the contract in question, as well as all of its terms and conditions, were peculiarly within the knowledge of the defendant, and we must assume that it has stated them in its plea, by which it seeks to discharge itself, as favorably and as strongly as possible. It was certainly to its interest to do so, and, if it has omitted essential facts therefrom or has stated such facts therein as show that the contract attempted to be pleaded as a defense is not valid, legal or binding, it must suffer the consequences of so doing. The same duty rests upon a defendant interposing a plea of this nature as upon a complainant in a bill in equity, and, as to such duty in the latter case, see Durham v. Edwards, 5c Fla. 495, 38 South. Rep. 926.

The supreme court of Georgia in Southern Ry. Co. v. Holbrook, 124 Ga. 679, 53 S. E. Rep. 203, text 204, used language in speaking of another line of contracts made by railroad companies with its employes, which might well be applied, as to the construction thereof, at least, to the contract we are now considering: "The contract is very sweeping and drastic in its terms, and seems to have been designed primarily to defeat a recovery by its employe for an injury growing out of any conceivable combination of circumstances; but such in-

struments will always be construed most strongly against the company by which they were prepared." Western & Atlantic R. Co. v. Bussey, 95 Ga. 584, 23 S. E. Rep. 207; Richmond & Danville R. Co. v. Mitchell, 92 Ga. 77, 18 S. E. Rep. 290; Georgia R. & Banking Co. v. Clarke, 97 Ga. 706, 25 S. E. Rep. 368, all cited in the opinion from which we have just quoted, will prove helpful. As was said in Georgia R. & Banking Co. v. Clarke, *supra*, such a rule of construction, as applied to such contracts, "is in accord with common sense. The principle upon which it is based was well recognized at common law, and is abundantly supported by precedent." Also, as was said in Western & Atlantic R. Co. v. Bussey, *supra,* in speaking of railroad employes, "It should be borne in mind that the persons ordinarily employed in the conduct of this business * * * are not learned or skilled in the technical cal rules of statutory construction."

We shall do well not to lose sight of these principles in our investigations.

Now we turn to the much discussed Miller case in 65 Fed. Rep. 305. So far as we can discover, the criticism passed upon this case has been directed, not to the conclusion reached by the court in sustaining the demurrer to the answer therein, which ruling was sustained by the court of appeals, but rather to the reasoning and the expressions used. It may well be that some of the expressions found therein are too broad, speaking generally, and it may also be true, as the court of appeals seemed to think, the ruling should have been based on other grounds. However, restricting its application to the defense as made in that case, that court may not be far out of aligment after all. If the cases cited in that opinion had sustained such a defense as was set out in the answer therein and held it to be a bar to the action,

then Judge HALLETT might have been justified in saying, as he did: "I am amazed to find that in several courts of unquestioned dignity and authority the defense here made has been fully sustained." Here, we think and shall try to show, the learned judge fell into error. The defense interposed in the cases which he cites, as well as in most of the cases which we have cited, dif-fered in essentially important particulars from the defense there interposed. The defense in question formed the basis of defendant's third answer, to which the demurrer was sustained. It will be found set out both in the opinion in 65 Fed. Rep. and in the opinion in 76 Fed. Rep. to which we have referred. We copy it from the opinion in 76 Fed. Rep. 439, text 440: "For a third and separate defense the defendant alleges: That, prior to the time of the accident complained of, the defendant and its employes organized an association for the relief of employes of said company injured while in the service of said defendant, and for other purposes, known as 'The Burlington Volunteer Relief Department,' which was a department of the defendant company; that said association thus formed was a department for the protection and relief of the employes injured in the service of said company, and provided for the payment of certain sums of money for injuries received, and in case of sickness, disability, or death from any cause while in the service of said company, and for care and maintenance, under certain specifications, terms, and conditions provided for in the organization and rules of the said relief department, and that membership in said department was voluntary; that at and prior to the time of said injury, to-wit, in the month of May, 1890, the plaintiff had made application for membership of said association, and became a member thereof, and continued to be a member

thereof at the time of the injury sustained by him on the 22nd day of August, 1890, and that the plaintiff, as a condition of his membership, in his said application promised and agreed to and with the said company, in consideration of certain amounts which had been and were to be paid by the said company 'for the maintenance of the relief department, that the acceptance of benefits from the said department for injury should operate as a release and satisfaction of all claims for damages against the defendant company arising from or out of such injuries; that the said plaintiff has subsequently received and accepted the benefits due to him by reason of his membership in said relief department on account of the injury complained of by him in his complaint herein, and the defendant company has paid to hte plaintiff the amount of the benefits due to him by reason of his membership in the said relief department on account of said injury, and the same have been received by the plaintiff as benefits accruing to him by reason of said injury on account of his membership in said association. And, more particularly, the defendant alleges that there was paid by the said relief department to the said plaintiff, on account of said injury, benefits to the amount of $24.50, being the amount due for 49 days next after the 22nd of August, 1890, at the rate of fifty cents a day, which was the rate to which the plaintiff was entitled as a member of said relief department; and there was also paid by said department the sum of $43 to certain physicians for care and surgical attendance upon the said plaintiff, and that the said relief department did all on its part to be done for and in behalf of the said plaintiff by virtue of his membership in the said department; whereby the defendant was released from any and all claims for damages against the defendant company arising in any way

out of the injury of which he complains in his said complaint."

We learn from the opinion in 65 Fed. Rep. that, "The nature and purposes of the organization are not very fully stated in the answer, but counsel has furnished a copy of the articles of association, and its rules and regulations, which may be regarded as supplying all details necessary to be considered." Then follows an account of what appears therefrom, some of the regulations being copied at length. Then follows a discussion of the defense; and the defects found therein, which, in the opinion of the court, vitiate it are pointed out. We prefer, however, to quote from the opinion rendered by Judge Thayer. He says that:

"The various courts which have had this question under consideration appear to agree that the stipulation in question is not opposed to sound public policy, but, on the whole, is conducive to the well-being of those whom it immediately affects, inasmuch as many railroad employes, owing to the dangerous character of their employment, are hurt without any culpable negligence on the part of their employer, and inasmuch as the employe retains, until after he sustains an injury, the right to elect whether he will sue his employer for negligence or accept benefits from the association. It also appears to be agreed that the obligation assumed by the employer to maintain and support such association by contributing the funds necessary for that purpose creates a privity of contract between the employer and all the members of the association, and at the same time furnishes a sufficient consideration to support such contract."

Here follows citations of authorities, which we omit.

"Conceding the foregoing propositions to be supported by adequate authority, we nevertheless think that

the plea filed by the defendant below, to which the demurrer was addressed, failed to show with the requisite certainty that the defendant had become legally obligated to the members of such relief association to maintain that organization, and to supply such funds as might at any time be needed by it to meet its obligations. There is no direct allegation found in the plea that the defendant had assumed such an obligation, the nearest approach to such an averment being, in substance, a recital that the plaintiff had agreed, in consideration of certain amounts which had been and were to be paid by said company for the maintenance of the relief department that the acceptance of benefits from the relief department, should operate as a release of all claims for damages against the defendant company. The plea failed to show, we think, that if the relief association was at any time short of funds to meet its obligations to a member of the association, such member could maintain an action against the defendant company for the amount that was due to him. The plea further failed to show what sums of money, if any, the defendant company had theretofore contributed out of its own funds to the support of the relief association. It also failed to show what other beneficial acts, if any, the defendant company had done and performed towards the maintenance of the association. In short, it would seem to be fairly consistent with the averments of the plea, that the moneys theretofore expended by the relief association in the care of its injured and disabled members had not been paid out of the funds of the defendant company, but had been paid from sums deducted from the wages of those who were members of the association.

In a case of this character, where the contract invoked as a defense lies close to the line dividing agreements that are lawful from those which are unlawful,

it is proper to require the defendant to set out the arrangement which existed between itself and its employes, in the form of a relief department with such fullness and certainty that the court may be able to say from an examination of the same that the arrangement is fair and reasonable, and that it is neither objectionable on grounds of public policy nor voidable for want of a valuable consideration. We are constrained to say that this has not been done in the present case, and we are confirmed in that view by a recent decision of the supreme court of Colorado involving the sufficiency of the plea of the same character. Railroad Co. v. McGraw, 45 Pac. Rep. 383. The demurrer to the third defense was properly sustained."

It may be well to note that Judge CALDWELL filed the following short concurring opinion in the case:

"Assuming that contracts of this character are valid, this case is rightly decided on the grounds stated in the opinion. But such contracts, in so far as they attempt to release a railroad company from liability for injuries inflicted on its employes through its negligence, are without sufficient consideration, against public policy, and void, and must ultimately be so declared by all courts," but in these views the other two members of the court, Judges THAYER and SANBORN, did not concur. Subsequent decisions rendered by the different courts have not confirmed Judge CALDWELL's prediction, as we have already seen from the cases cited. The opinion of Judge THAYER has elicited but little adverse criticism and generally, whenever referred to, has been spoken of with favorable comment, and that court has been classed as being in line with those courts upholding the validity of such contracts. It should be noted that is the only one of the United States circuit courts of

appeals that seems ever to have been called upon to deal with this question.

Now the evil day can be put off no longer, even if we so desired, and we must proceed to analyze the plea in the instant case and see if it measures up to the requirements laid down.

It seems to us that the plea is defective in many respects. First, it fails to show what amount of benefit per week, "for a period not longer than fifty-two weeks," plaintiff was entitled to receive; second, it fails "to show what sums of money, if any, the defendant company had theretofore contributed out of its own funds to the support of the relief association; third, it fails to "show what other beneficial acts, if any, the defendant company had done and performed toward the maintenance of the association," further than that the defendant company "assumed general charge of the department and guaranteed the fulfillment of its obligations, and has taken charge thereof continuously and has the custody of the moneys belonging to the relief fund, and has become responsible for the safe keeping of said fund, and guaranteed to pay into the fund interest at the rate of 4 per cent. per annum on monthly balances in its hands, and to advance from its own funds money to pay benefits when the amount contributed by the members, with interest and other income, is not sufficient to pay benefits as they become due, and to supply the necessary facilities for conducting the business of the department, and to pay all the operating expenses thereof; and has, in pursuance thereof, complied with, performed and discharged all of said obligations before mentioned upon the part of said defendant company to be complied with, performed and discharged, and has also furnished the necessary hospital buildings and furniture, beddings, instruments, utensils, appliances, surgeons and nurses for

the care of employes who become disabled by injuries, sickness or otherwise," whatever all this may mean.

In fine, there is a striking similarity in several respects in the defects in this plea and those pointed out by the United States Circuit Court of Appeals and the Colorado supreme court in the pleas filed in those cases. It is difficult to tell just what the railroad company had ever promised or obligated itself to do for or on behalf of the relief association; as to what acts it ever really did it is simply impossible to ascertain from the plea, can we say with any degree of positiveness, from the averments, in the plea that the defendant company had, as a matter of fact, ever contributed one dollar out of its own funds to the association? Can we say that the defendant company, out of its own funds, furnished and paid for the hospital buildings, furniture and appliances, the surgeons and nurses? Is it not "fairly consistent with the averments of the plea, that the moneys theretofore expended by the reilef association in the care of its sick and disabled members had not been paid out of the funds of the defendant company, but had been paid from sums deducted from the wages of those who are members of the association?" The plea, which we have copied in full in the opinion, speaks for itself, and it seems to us that there can be but one answer to these questions. We are strengthened in this assumption when we find from the further averments in the plea that the only amount of benefits paid direct to plaintiff on account of the injuries sustained by him by reason of the alleged negligence of the defendant, and which injuries were alleged in the declaration, to which this plea was interposed as a defense, to be *permanent* in their nature, was the munificent sum of $8.50. It is true that the plea also avers that "there was also paid by said department the sum

of $50.00 to certain physicians for care and surgical attendance upon said plaintiff, and also the sum of $42.00 for board for plaintiff; and also the sum of $8.00 for dressings of plaintiff's injuries, making a total of $100.00 expended by said relief department for medical attention, care and board for said plaintiff," but who furnished this money to the relief department we are not advised. For aught that appears to the contrary, all of these sums may have been paid out of the monthly amounts contributed by the plaintiff himself, or by the plaintiff together with the other members of the association. One thing, however, does plainly appear, all of these amounts, by whomsoever the money may have been furnished, were deducted from the benefits coming to plaintiff "under the rules and regulations of said relief department," though we are not advised as to the provisions of such rules and regulations.

We have already seen that, under the settled policy of this court, any pleading is to be construed most strictly against the pleader thereof, and that this principle applies with full force to a plea in the nature of a confession and avoidance. We have also seen how contracts of this nature are to be construed. We have further held that, "where there are contradictory or inconsistent allegations in a bill, its equity will be tested by the weaker rather than by the stronger allegations." Barco v. Doyle, 50 Fla. 488, 39 South. Rep. 103; Durham v. Edwards, 50 Fla. 495, 38 South. Rep. 926; Godwin v. Phifer, 51 Fla. 441, 41 South. Rep. 597. In the concurring opinion in Atlantic Coast Line R. Co. v. Benedict Pineapple Co., 52 Fla. 165, 42 South. Rep. 529, text 535, the writer hereof said that we know of no reason why this rule of construction should not be applied to a declaration. We now say that we know of no reason why it should not be applied to a plea, especially

to one of this character.    See Cotten v. Williams, *supra,* and Bennett v. Herring, *supra.*   Could the court possibly say from the examination of the contract as set forth in the plea that the arrangement is fair and reasonable and that it is not voidable for want of a valuable consideration?   It must be borne in mind all the while that we are under the assumption that the contract has been set forth in as favorable a light to the defendant as could be done consistently with the facts.   We are also strengthened in this assumption when we ascertain something of the practical workings of such contracts from the opinion rendered by the supreme court of North Carolina in the case of Cannady v. Atlantic Coast Line R. Co., *supra,* the same defendant as in the instant case, and the opinion therein being rendered no further back than December, 1906.   Perhaps we are in a better position to appreciate now why that court said "that the contract does not commend itself to our judgment," and why Chief Justice CLARK said in his dissenting opinion therein, "such a defense is not good *in foro conscientiae,*" and "it is apparent that there was no consideration for the release here set up."   Might we not well apply to this contract some of the strictures of Judge HALLETT in the Miller case to the contract there set up?   Might we not say, as was contended by the plaintiff in Cannady v. Atlantic Coast Line R. Co., *supra,* so far as is disclosed by the plea:

"That the 'Atlantic Coast Line Relief Department' is an ingeniously devised plan to cause the employes of that company, at their own expense and by means of deductions from their wages, to secure the railroad company from liability for injuries sustained in its service?" Contrast this contract as set up in the plea with those interposed as a defense in practically all the cases which we have cited and note the differences.   It is not even

necessary for us to go so far away from home as Pennsylvania, New Jersey, Ohio, Indiana, Illinois, Iowa or Nebraska. A comparison with the contracts interposed as a defense in the cases cited from our sister states of Georgia and Alabama will be sufficient. Whatever might be said of the beneficent and commendable objects and purposes of relief associations, whether we approve of them or not, and of the beneficial and liberal terms of their contracts with their employes, can such language be applied to the contract of the defendant in this case? There is no direct averment in the entire plea that the defendant provided from its own means any of the benefits received by the plaintiff as the consideration for the release. The obligations of the defendant under the contract set up in the plea cannot be regarded as a consideration for the release, for, as we have already seen, that would give to the contract an effect which would make it void-under the statute. As has been well said, "To carry out effectually the object of a statute, it must be so construed as to defeat all attempts to do or avoid in an indirect or circuitous manner that which it has prohibited or enjoined." The plea does not aver that the benefits received by the plaintiff were contributed by the defendant, but it avers, "And more particularly, the defendant alleges, there were paid by the said relief department to the said plaintiff, on account of said injuries, benefits to the amount of $8.50," etc. As we have already seen, the contract cannot be considered as a release, because to give it such effect would violate the statute. In fact, as we read the plea, the contract does not purport to be a release. We do not see how it well could be so considered. A valid plea setting up a release should aver the acceptance by one competent to do, under conditions making such acceptance lawful, of something of value as a settlement and discharge

of the defendant's liability. Separating it from the contract, as must be done, the release pleaded as a defense in this case is as follows: the plaintiff "subsequent to the injuries complained of in the declaration, applied for and then and there subsequently received medical and surgical treatment by reason of his membership in said relief department, on account of the injury complained of in the first, second, third and fourth counts of the declaration, and the defendant company, after the plaintiff received the injuries complained of, paid to the plaintiff benefits by reason of his membership in said relief department, on account of said injuries, and the same were received by the plaintiff as benefits accruing to him by reason of said injuries on account of his membership in said relief department, and more particularly, the defendant alleges, there were paid by the said relief department to the said plaintiff, on account of said injuries, benefits to the amount of $8.50, on or about, to-wit: the 20th day of February 1905, which was the benefit rate to which the plaintiff was entitled as a member, under the rules and regulations of said relief department, and there was also paid by said department the sum of $50.00 to certain physicians for care and surgical attendance upon said plaintiff, and also, the sum of $42.00 for board for plaintiff, and also the sum of $8.00 for dressings of plaintiff's injuries, making a total of $100.00 expended by said relief department for medical attention, care and board for said plaintiff, independent of said sum of $8.50 benefits paid directly to said plaintiff. And the said relief department did all on its part to be done for and in behalf of said plaintiff by virtue of his membership in said department, whereby the defendant was released from any and all claims for damages against the defendant arising in any way out of the injuries of which plain-

tiff complains in his declaration." Where is the mutuality? Wherein does the plea aver or show the consideration moving from the defendant to the plaintiff for the release? The goose seems to have been pretty well sauced, but what about the gander? But the subject is of too grave and serious an import for jesting. To borrow the thought from the greatest genius the English-speaking race has ever produced, does it not appear that the defendant company, in making such contracts with its employes, palters with them in a double sense? Even though the word of promise therein contained be kept to the ear, is it not broken to the hope? With how much more force does the language of Judge THAYER in Chicago, B. & Q. R. Co. v. Miller, *supra,* already quoted by us, apply, when not only the questions of public policy and a valuable consideration are to be considered, but the statutory bar, in addition? Does not this fact make the defense attempted to be set up in the plea border still more closely upon the "line dividing agreements that are lawful from those which are unlawful," and call for still greater certainty and clearness?

Much more might well be said, but further discussion and comment seem unnecessary. The plea is fatally defective, not only for the reasons pointed out but for others as well. The circuit judge refused to permit it to stand as a defense in his court, and we thoroughly approve of his action. The demurrer was rightfully sustained. The second and third assignments must fail.

Our long quest is ended and our goal is reached, so far as these assignments are concerned, and we are still in fine company, albeit the number has considerably diminished, for reasons which are not far to seek.

### III.

So far as we are advised by the record, the defendant

did not ask leave of the court, after the sustaining of this demurrer, to file any further or additional pleas. The plaintiff joined issue upon the two remaining pleas of not guilty and of discharge and satisfaction by payment before the commencement of the action, and the case proceeded to trial upon the issues so joined. It is important to bear this in mind, as will be seen later on in this opinion.

The next assignment is the fourth, which is as follows:

"The court erred in giving so much of the charge to the jury of its own motion in regard to it being the duty of the jury to reconcile the testimony when it is conflicting as is in the following words, viz: 'but if you cannot do so, then you are privileged to discard so much or such parts of it as you may deem unworthy of credit.' "

The entire paragraph of the charge, to a portion of which the foregoing assignment is directed, is as follows: "The jury are the sole judges of the weight of the evidence and the credibility of the witnesses and where the testimony is conflicting it is your duty to reconcile it if you can upon the theory that such witnesses have sworn to the truth, but if you cannot do so, then you are privileged to discard so much or such parts of it as you deem unworthy of credit."

It is settled law in this court that, "in determining the correctness of charges and instructions, they should be considered as a whole; and, if as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail." Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43, South. Rep. 318, and authorities there cited.

This assignment is without merit. In fact, this contention of the defendant has already been decided ad-

versely to it by this court.    See Glover v. State, 22 Fla.
493.    Also see Simms v. Hodges, 34 Fla. 498, 16 South.
Rep. 317, and authorities there cited; Lang v. State, 42
Fla. 595, text 601, 28 South. Rep. 856, text 858; Hughes
on Instructions to Juries, §365, and authorities cited in
notes.

## IV.

The fifth assignment is as follows:    "The court erred
in giving so much of the charge given to the jury of its
own motion in regard to the elements to be taken into
consideration in fixing the amount of damages to be re-
covered by the plaintiff, in case they did find for the
plaintiff, as is in the following words, viz:    'You should
also consider the plaintiff's necessary and reasonable ex-
penses incurred, if any, for medical and surgical aid and
treatment.' "

The entire paragraph of the charge, to a portion of
which exception was noted and upon which portion so
excepted to this assignment is predicated, is as follows:
"If you find from the evidence that the plaintiff is en-
titled to recover then you will be required to determine
the amount of damages he has sustained, if any.    And,
in estimating the damages you will take into considera-
tion the plaintiff's bodily pain and suffering, if any, oc-
casioned by the injury complained of, sickness resulting
from the injury, if any, his age, his health and condition
before the injury complained of, and the effect on his
health, and in case you find that the plaintiff has to any
extent been permanently disabled then you should take
these matters into consideration in estimating his dam-
ages.    You should also consider the plaintiff's necessary
and reasonable expenses incurred, if any, for medical
and surgical aid or treatment, his loss of time, if any,

the money he is or was making by his business or labor, the effect if any of the injury in the future upon the plaintiff in attending to his affairs generally in pursuing his business or calling and allow him such damages as in your opinion from all the facts and circumstances in evidence, will be a fair and just compensation for the injury he has sustained."

In addition to what we have said in the 3rd division of this opinion in disposing of the fourth assignment, we would say, in reply to the contentions of the defendant, that, if there was no testimony as to any such expenses as are mentioned in that portion of the charge so excepted to for the jury to consider, we fail to see how such portion of the charge "tended to confuse and enlarge in the minds of the jurors their power," and the same is not pointed out to us.

This assignment must fail.

The sixth, seventh, eighth and ninth assignments are argued together by the defendant and are as follows:

"6. The court erred in giving the following charge upon the part of the plaintiff:

'I. If the jury believe from a preponderance of the evidence that on the 14th day of January, 1905, the plaintiff while in the employ of the Atlantic Coast Line Railroad Company, was ordered by the conductor of a certain train to station himself on the car or cab at the rear end of the train, and to give signals for the engineer to back said train as soon as he (the conductor) had turned the switch at a siding and had notified him to give such signals, and, if the jury further believe from a preponderance of the evidence that the conductor proceeded to said switch and gave the plaintiff a signal to signal the engineer to back said train, and the plaintiff thereupon gave said signals; and, if the the jury further believes from a

preponderance of the evidence that the conductor had negligently and carelessly turned the switch, so as to leave it open or partly open, and that by reason of such negligence, the car of the train on which the plaintiff was stationed was thrown from the track and the plaintiff hurled from said car or cab to the ground and injured, and if the jury further believes from the preponderance of the evidence that the plaintiff was without fault on his part and that he sustained great and serious injury, then the plaintiff is entitled to recover damages from the defendant company.'

7. The court erred in giving the following charge upon the part of the plaintiff:

'2. An employe of a railroad company who is injured by the carelessness and negligence of another employe, and who is without fault himself, is entitled to recover damages from the railroad company for such injury as he may have received as the proximate cause of such negligence.'

8. The court erred in giving the following charge upon the part of the plaintiff:

'3. If the jury believe from the preponderance of the evidence that the conductor of the train on which the plaintiff was employed instructed the plaintiff to get on the car or cab and further instructed the plaintiff to signal the engineer to back the train for the purpose of entering on a switch or side track as soon as he (the conductor) should signal for the plaintiff to do so, and if the jury further believes from the preponderance of the evidence that the conductor was in charge of defendant's train, and that the plaintiff was required to obey the order of the conductor; and, if the jury further believe from the preponderance of the evidence that the conductor himself assumed the duty of turning the switch at the siding so as to enable the train when backed to go

into and on said side track, or switch, then I charge you that it was the duty of the conductor to properly and fully turn the switch so that the backing train could pass safely over the switch onto the side track, and if he failed to do so, but left the switch open or partly open and injury resulted to the plaintiff therefrom, then it was negligence upon the part of the conductor for which the defendant was liable in the absence of any act of commission or omission by the plaintiff contributing to the injury.'

9. The court erred in giving the following charge upon the part of the plaintiff:

'4. If you believe from the preponderance of the evidence that the conductor of the train undertook to turn the switch on the day of the injury so as to enable the train to back into the siding, then I charge you that it was his duty before signaling the plaintiff to signal the engineer to back the train to have seen that the switch was properly turned so that the backing train could pass safely over the switch onto the siding, and, if you further believe from the preponderance of the evidence that the conductor failed to do this, then he was negligent and for such negligence the defendant would be liable in the absence of any act or omission by the plaintiff contributing to any injury he might have received.' "

The only authority cited by the defendant in support of these assignments is the case of Payne v. Chicago & A. R. Co., 6 Amer. & Eng. R. Cas. (N. S.) 291, which we find reported in 136 Mo. 562, 38 S. W. Rep. 308, which, it contends, is to the effect that "whenever the physical facts contradict the sworn testimony, the former prevails." We shall not take the time to analyze this case, but, assuming that the defendant's contention is strictly correct and fully supported by the cited authority, how does it avail it in behalf of these assignments?

27—Vol. 54

As we have already seen in considering the fourth assignment, the jurors are the sole judges of the weight of the evidence and the credibility of the witnesses, and the judge is absolutely prohibited by our statute from charging thereon, as to do would clearly be an invasion of the province of the jury. See Williams v. LaPenotiere, 32 Fla. 491, 14 South. Rep. 157, and cases there cited; Sims v. Hodges, 34 Fla. 498, 16 South. Rep. 317; Southern Pine Co. of Ga. v. Powell, 48 Fla. 154, 37 South. Rep. 570.

We would also refer to our discussion of the first assignment in the first division of this opinion and the authorities there cited.

We have already called attention to the issues in this case as made by the pleadings. Assumption of risk by an employe must be specially pleaded, being an affirmative defense, in order to be available. See 13 Ency. of Pl. & Pr. 914, and authorities cited in note; Montgomery v. Seaboard Air Line Ry., 73 S. C. 503, 53 S. E. Rep. 987, and authorities therein cited; Betchman v. Seaboard Air Line Ry., 75 S. C. 68, 55 S. E. Rep. 140. Our Circuit Court Rules 71 and 72, found on page 22 of the Rules prefixed to 14th Fla., so require. See Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516 and Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318. But, as we have seen, no such plea was filed, neither was there one of contributory negligence.

The following authorities will also prove instructive in dealing with the subject matter generally of these assignments: Ala. Great So. R. Co. v. Baldwin, 113 Tenn. 409, 82 S. W. Rep. 487, S. C. 67 L. R. A. 340, 3 Amer. & Eng. Ann. Cas. 916; Collins v. Southern Ry. Co., 124 Ga. 853, 53 S. E. Rep. 388; Moore v. Dublin Cotton Mills, 127 Ga. 609, 56 S. E. Rep. 839. The argu-

ment in behalf of these assignments is slight. We have considered all the defects in the above instructions which have been pointed out to us and have found them untenable. We have also examined the instructions sufficiently to determine that no error is apparent therein. This is all that we are required to do, where the errors complained of have not been specifically pointed out to us. Atlantic Coast Line R. Co. v. Crosby, *supra,* and authorities there cited. In some respects the instructions appear to be too favorable to the defendant, but it can make no complaint on that score. Supreme Lodge Knights of Pythias v. Lipscomb, 50 Fla. 406, 39 South. Rep. 637.

These assignments have not been sustained.

## VI.

The tenth assignment is as follows:

"The court erred in giving the following charge upon the part of the plaintiff:

'8. This case is to be decided by a preponderance of the evidence and not on any question of reasonable doubt. By preponderance of evidence is not meant the number of witnesses which testify on either side, but on the testimony which impresses your mind and reason as possessing most weight and as presents the most reasonable account of the matters at issue.' "

No extended discussion of this assignment is required. That the given instruction is supported by the authorities see 6 Words & Phrases, 5516, *et seq.,* where will also be found State v. School Dist. 75 N. W. 855, 857, 55 Neb. 317, and McCarthy v. Birmingham, 89 N. W. 1003, 2 Neb. (Unof.) 724, the only authorities cited by the defendant in support of this assignment, and which may be compared with many others there found.

Also see Hughes on Instructions to Juries, section 385, and authorities cited in notes.

This assignment fails.

## VII.

The eleventh assignment is as follows:

"The court erred in refusing to give the following charge upon the part of the defendant:

'6. Where a plaintiff depends upon circumstances to establish a theory as to how an accident occurred in which he received the injury complained of, the circumstances must not only establish the theory, but must establish it to the exclusion of any other reasonable thory as to how the accident occurred, and if any reasonable theory arises naturally from the evidence, or by the preponderance of the evidence other and different from the theory contended for by the plaintiff, then the plaintiff canot recover and your verdict should be for the defendant.' "

The fault to be found with this requested instruction is that it is too abstract. We fail to see its applicability to the evidence. No error was committed in refusing it. See Proctor v. Hart, 5 Fla. 465; Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land Transp. & Manuf'g Co., 27 Fla. 1, 9 South. Rep. 661, S. C. 17 L. R. A. 33; Williams v. Finlayson, 49 Fla. 264, 38 South. Rep. 50. We do not feel called upon to determine whether the requested instruction contains a correct proposition of law or not.

## VIII.

The twelfth assignment is as follows:

"The court erred in refusing to give the following charge upon the part of the defendant:

'7. Where the plaintiff depends upon a theory·as to how an accident occurred the burden is upon him to establish said theory by a preponderance of the evidence and until said theory is established by a preponderance of the evidence no presumption as against the defendant arises under the statute of this state.' "

What we have just said in the preceding division of this opinion in disposing of the eleventh assignment is equally applicable to this assignment.

## IX.

The thirteenth assignment is as follows.:

"The court erred in refusing to give the following charge upon the part of the defendant:

'8. In arriving at the sum to be fixed to yield the annual sum claimed to have·been the earnings of the· plaintiff prior to the accident, such a sum should be fixed as will yield annually the sum so earned annually by the consumption of the interest and a part of the principal each year, for the period of the life expectancy so that at the end of the life expectancy the principal would be exhausted. This is the rule in the event you find from the evidence that the plaintiff is entitled to recover.' "

The defect in this requested instruction is that it ignores any compensation for the mental and physical pain and suffering plaintiff alleged in his declaration that he had already endured and would continue to endure during the rest of his life, for which he sought compensation, as well as for the total destruction of his ability to labor and earn a livelihood. The law had already been fully and correctly given by the court as to what the jury should consider as proper elements of damages in making up their verdict, in the charge given of its own motion and in the 5th instruction given at the request

of the plaintiff. See Atlantic Coast Line R. Co. v. Crosby, *supra*.

## X.

The fourteenth and fifteenth assignments are based upon the denial of the defendant's motion for a new trial and in entering judgment in favor of the plaintiff and against the defendant.

Following our established practice, we shall consider only such grounds of the motion for a new trial as are argued. Seaboard Air Line v. Scarborough, 52 Fla. 425, 42 South. Rep. 706, and authorities there cited.

In addition to the grounds which we have already discussed in disposing of the other assignments, the only two grounds remaining for our consideration are that the verdict is not supported by the evidence and that the amount thereof is excessive. As to the first of these grounds, it is sufficient to say that, although there is great conflict in the evidence upon material points, still there is ample evidence to sustain the verdict. There is nothing whatever before us to show that the jurors were improperly influenced by considerations outside the evidence. The trial judge refused to disturb the verdict, and we must follow his example. Simms v. Hodges, 34 Fla. 498, 15 South. Rep. 317, is again in point. See the numerous authorities there cited. Also Schultz v. Pacific Ins. Co., 14 Fla. 73, text 94; McNish v. State, 47 Fla. 69, 36 South. Rep. 176, and authorities cited therein; Seaboard Air Line Ry. v. Scarborough, 52 Fla. 425, 42 South. Rep. 716. We would also refer again with approval to the discussion found in Thayer's Preliminary Treatise on Evidence at the Common Law 208 *et seq.* We shall not undertake to set out the evidence in this already long opinion, as that would be profitless.

As to the ground that the amount of the verdict is excessive, right at the outset we wish to state that we are well aware of the fact that there is great conflict of authority as to the proper measure of damages to be awarded in cases of this character. Different juries, with the same or similar facts before them, differ widely in estimating the amount of damages, and different judges, both on the trial and appellate courts, likewise differ upon the same point. This might naturally be anticipated, owing to the differences in the respective mentality, training, experience and environment of the different jurors and judges who have to pass upon such questions. It ought to be no more surprising that judges should differ than jurors, for as was well said by Mr. Justice Cobb in his very able opinion, to which we have already referred, in Kelly v. Strouse, 116 Ga. 872, text 888, 43 S. E. Rep. 280: "Juries make mistakes, but their mistakes are probably no more numerous or no more disastrous to parties and the public than the mistakes of judges who assume to decide issues of fact." His entire discussion of the question is instructive. Another reason which largely contributes to this difference of opinion among both juries and judges in fixing the amount of damages to be awarded in personal injury cases is that there is not, and in the nature of things there cannot be, any fixed standard for the measurement of such damages in dollars and cents, and yet the law requires such measurement to be made. See Mayor etc. of Birmingham v. Lewis, 92 Ala. 352, 9 South. Rep. 243; Watson on Damages in Personal Injuries, Sections 310 et seq., and authorities cited in notes; Richmond Ry. & Elec. Co. v. Garthright, 92 Va. 627, 24 S. E. Rep. 267; Merrill v. City of St. Louis, 12 Mo. App. 466; 13 Cyc. 121 to 124 inclusive, 130 et seq., and numerous au-

thorities cited in notes. No useful purpose is to be sub-served in multiplying authorities.

The verdict is not for such an amount as to shock our judicial conscience or to indicate to us that the jury was unduly influenced in any way or was swayed by bias, passion or prejudice.

We now close this long opinion with a sigh of relief, in which we feel sure that the few whose duty compels them to read it will join us, by stating that, finding no reversible error, the judgment must be affirmed, and it so ordered.

COCKRELL and WHITFIELD, JJ., concur;

HOCKER, J., concurs specially.

TAYLOR and PARKHILL, JJ., dissent.

WHITFIELD, J., (concurring).—The statute of this state relating to the liability of railroad companies for injuries to its employes caused by negligence of other employes provides that "No contract which restricts such liability shall be legal or binding." Section 3, Chap. 4071 acts of 1891, section 2150, General Statutes of 1906.

Any contract that directly or indirectly limits, circumscribes, restrains, extinguishes or represses any of the rights or remedies of the injured employe growing out of negligence of a railroad company or its employes operates to restrict the liability of the company and consequently violates the statute.

When anything is prohibited by statute everything

by which the forbidden thing is accomplished is prohibited. Contracts forbidden by statute cannot be given effect to by indirection, as that would be but a subterfuge to contravene the statute. See Broom's Legal Maxims, 488; Philpott v. St. George's Hospital, 6 H. L. Cases, 338, text 349; Endlich on Interpretation of Statutes §138; Webb v. John Hancock Mutual Life Ins. Co., 162 Ind. 616, 69 N. E. Rep. 1006; Floyer v. Edwards, 1 Cowper 112.

Any contract that is utilized to aid in restricting, or to give effect to a restriction of, the liability of the company violates the statute and is not legal or binding. See I. Page on Contracts §527 *et seq.;* Hughes on Contracts, § 88.

When a statute declares that no contract that accomplishes a stated purpose shall be legal or binding, any contract that indirectly accomplishes such purpose is included within the declaration of the statute and is not legal or binding.

A contract that indirectly restricts the liability of a railroad company in the cases forbidden by the statute is not legal or binding, and any election or release based on such contract is likewise not legal or binding.

If the contract set up in the plea is necessary to the effectiveness of the election and release pleaded in bar of the action, the election and release are thereby rendered not legal or binding, for the reason that the contract so indirectly used would accomplish the purpose forbidden by the statute.

The election and release as pleaded refer to the contract set up in the plea as the basis and consideration for the election and release. The giving of this effect to the contract would accomplish indirectly the purpose

forbidden by the statute, therefore the contract and the election and release based thereon are not legal and binding, and consequently the plea was not a bar to the action.

The duties existing between parties and the right to contract may be regulated by statute in the interest of the public.    It is the policy of the law to secure to contracting parties equal opportunities to protect their interests.    The relations, duties and contracts of parties having unequal opportunities to protect their interests on account of stress of circumstances, difference in capacity or conditions, undue advantage or for other causes may be regulated or forbidden by statute.    The object is to prevent imposition and oppression, and to relieve the public of burdens that would result from such imposition or oppression.    Reasonable classifications of subjects of legislation based upon practical, apparent, natural and appreciable differences in conditions, affecting all alike under similar circumstances, do not violate constitutional provisions requiring uniformity and equal protection of the laws.    The test is the good faith and reasonableness, not the wisdom or perfection of the classification.    See Herrick v. Minneapolis & St. L. Ry. Co., 31 Minn. 11, 16 N. W. Rep. 413, 127 U. S. 210, 8 Sup. Ct. Rep. 1176; Hancock v. Norfolk & W. Ry. Co., 124 N. C. 222, 32 S. E. Rep. 679; Tullis v. Lake Erie & W. R. Co., 175 U. S. 348, 20 Sup. Ct. Rep. 136, S. C. 25 Am. St. Rep. 881; Pittsburgh, C. C. & St. L. R. Co. v. Montgomery, 152 Ind. 1, 49 N. E. Rep. 582; Hancock v. Yaden, 121 Ind. 366, 23 N. E. Rep. 253, S C. 16 Am. St. Rep. 396; McGuire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 108 N. W. Rep. 902; Mumford v. Chicago, R. I. & P. R. Co., 128 Iowa 685, 104 N. W. Rep. 1135; Atkins v. Kansas, 191 U. S. 207; O'Brien v. Chicago

& N. W. Ry. Co., 116 Fed. Rep. 502; Orient Ins. Co. of Hartford, Conn. v. Daggs, 172 U. S. 557, 19 Sup. Ct. Rep. 281; Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747.

HOCKER, J. (concurring).—I concur in the conclusion of Chief Justice SHACKLEFORD that there is no reversible error in this record. In regard to the special plea filed June 4th, 1906, my opinion is that it is not responsive to the declaration, and is, therefore, bad. The fourth ground of the demurrer thereto is "that the contract and agreement set up do not relate to injuries inflicted by or through the negligence of the defendant, or any of its employes." If uncertainty occurs in a pleading it will be construed against the pleader. Hooker v. Johnson, 10 Fla. 198; Herrin v. Brown, 44 Fla. 782, 33 South. Rep. 522, or if the language of a pleading be ambiguous, that is, if the meaning of the words be equivocal, and two meanings present themselves, the pleading should be construed most unfavorably to the party pleading. 4 Ency. Pl. & Pr. 759. The plea in setting out the contract states "that the acceptance of benefits for injuries should operate as a release and discharge and satisfaction of all claims against the defendant company * * * for damages arising from or growing out of any injuries that might be received by the said plaintiff; * * * that said contract of membership (in the relief department) in no way limited the time in which benefits should be paid thereunder, but specifically provided that payment for each day of disability *classed as due to accident* for a period not longer than fifty-two weeks as follows," &c. It then proceeds to state that after his injury the plaintiff elected to receive the benefits of medical and surgical treatment by reason of his membership in said relief

department and that he was paid $8.50 on account of his injuries on or about the 20th of February, 1905, "which was the benefit rate to which the plaintiff was entitled as a member under the rules and regulations of said relief department," and that the relief department paid for surgical attendance, board and dressing plaintiff's injuries $100.00. The plain inference from the allegations are that these benefits which the plaintiff received were those which are provided for disability due to *accident*. This much at least is certain, that there was a classification of benefits, and that one of those benefits is classed as *"due to accident,"* and that the benefits which it is alleged the plaintiff received could have naturally been received by him, if he had been injured accidentally. I think it is also perfectly clear that an accidental injury is usually in law a very different thing from a negligent injury. 1 Am. & Eng. Ency. Law (2nd ed.) 272 *et seq.;* 1 Cyc. 227. In section 1122, 2 Page on Contracts, it is said: "If terms of a contract appear on their face to be inserted for the benefit of one of the parties, he will be considered as having inserted such terms and as having chosen the language thereof. Any ambiguity in such language is therefore to be construed more strongly against the party making use of such language." It is plain that every term used in the contract set up in the plea which is intended to relieve the defendant company from liability is for its benefit. An *accidental injury* should not therefore be construed to embrace a *negligent injury* and particularly so when there is an entire absence of direct averment, as is the case with this plea, that the plaintiff ever at any time agreed or contracted that if he was injured by the negligence of the defendant company his acceptance of the benefits which came under the class *"due to accident,"* should release the defendant company from liability for its negligence. I have given

the very voluminous plea careful reading, and I can discover no such averment, nor is 'there any direct averment that the plaintiff contracted that all sorts of injuries, accidental, negligent, malicious, self inflicted and what not, should each receive the benefits due to *disability by accident*. In other words the phrase "due to accident" has no more comprehensive meaning in this plea than it ordinarily has. It seems to me that to arrive at any other conclusion, one must rely upon dubious inference and argumentation, instead of averment, and must also ignore the rules of construction before referred to.

TAYLOR, J. (dissenting).—I agree with the conclusion reached in the opinion in this cause by the chief justice to the effect that the contract set up in the defendant's additional plea made by the plaintiff with the relief department of the defendant company's service, is not against public policy and is not in contravention of our own statute inhibiting the making of any contract restrictive of the liability of railroad companies to their employes for injuries resulting from their negligence, and that when such contracts, and a voluntary *election* by an injured employe to accept benefits from such relief department, *in accordance with, and under the terms and provisions of such relief department contract,* are properly set up in a plea by a railroad company, it furnishes a valid defense in bar of such employe's right of action against such railroad company for damages for injuries sustained by him and for which the benefits have been voluntarily accepted and receivd by him from such relief department. The overwhelming weight of the authorities so copiously quoted from and cited by the chief justice in his opinion, so hold, and I think correctly upon principle. The voluntary acceptance by an injured em-

ploye, after his injury, of benefits from such a relief·
association *under the terms and provisions of such a*
*contract,* no matter how disproportionate to the extent
of his injuries such voluntarily accepted benefits may
be, when urged as a defense by a railroad company,
who is a party to such relief association, to a suit
aganist it by such injured employe for damages for his
negligent injury, presents a question purely of volun-
tary *election* by such employe between two separate and
distinct remedies, both· of which, by the terms of his
contract with such relief department, cannot exist in
his behalf at the same time, and which remedies are,
therefore, inconsistent with each other.   By the provis-
ions of such contract he is left entirely free, if subse-
quently injured by his railroad employer, to make his
choice between the two remedies, (1) a suit against
the railroad for damages for his injuries, or (2) the
acceptance of the *benefits* from such relief department or
association *as provided for in and by his contract*
*with such relief department,* but he cannot have both
at the same time.   The gist of the decisions sustaining
such contracts as a defense in damage suits, are really
founded upon this doctrine of *election of remedies,* and
the consequent *estoppel* that such an election between
inconsistent remedies brings down upon the party making
the election.   In the case of Campbell v. Kauffman
Milling ·Co., 42 Fla. 328, 29 South. Rep. 435, we have
here reiterated the rule prevailing universally: "A
party cannot, either in the course of litigation or in
dealings *in pais* occupy inconsistent positions.   Upon
that rule election is founded.   A man shall not be al-
lowed to approbate and reprobate .  And where a man
has an election between several inconsistent courses of
action, he will be confined to that which he first adopts.
The election, if made with knowledge of the facts, is

in itself binding. It cannot be withdrawn without due consent. It cannot be withdrawn though it has not been acted upon by another by any change of position." It is in recognition of this well-established rule that the courts with such unanimity hold that the *voluntary acceptance* by an injured employe of the benefits *provided for in any by such relief-department contarcts,* itself operates as a release of any right by such injured employe to maintain an action for his injuries against the railroad company, without the execution of any formal instrument of release. I cannot, however, agree with the conclusions of the chief justice in reference to the plea interposed by the defendant in this case, or with his utterances as to what such a plea should allege or contain in order to set up a valid defense in such cases. As I understand from the opinion of the chief justice, he entertains the view in effect that in order for such a plea urging the provisions of such a contract with such a relief department as a defense to an action for personal injuries, to be available to a defendant railroad company, such a plea must allege a separate release of such railroad from its liability, entirely independent of and dissociated from such contract with the relief department, and that such separate and independent release was for a valuable consideration moving, not from the relief association under the provisions of *its contract* with the plaintiff employe, but from the pocket of the railroad company itself, entirely independent of such contract and of any connection that such railroad occupies as a party to or associate with such relief association. If it is the law that a railroad company must in such cases show a brand new contract of release procured from the employe subsequent to his injury, for a new consideration moving then from the railroad alone and entirely dissociated from the employe's con-

tract with such relief department, the question naturally suggests itself, why expend so much labor, with such a mountain of authorities to prove that such contracts made by railroad employes with *relief department associations,* when acted upon by the employe, furnish a valid defense in suits by such employe against the railroad for personal injuries resulting from its negligence. If there must be an entirely new and independent contract of release based upon a new and separate consideration moving from the railroad alone, then the contract of the employe with a relief department is entirely out of the case, becomes wholly irrelevant, and is purely an abstract proposition. Unless I misinterpret the effect of the opinion of the chief justice, this holding is in direct conflict with, and is wholly inconsistent with, those portions of his opinion that sustain the validity of such contracts with such relief departments by employes of railroad companies, and is a new departure from, and wholly in conflict with, all of the cases cited by him from other courts in sustenance of such contracts. All of these cases hold in substance that it is the *election* by the injured employe, subsequent to his injury, to accept benefits, not from the railroad company independently, but *from the relief association* under the terms and provisions of the employe's *contract with such association,* that results in a release and waiver of his right of action against the railroad company who is also one of the constituent members of such relief association, and not any new and independent consideration for such release moving from the railroad company aolne to such injured employe. I am of the opinion that the additional plea filed by the defendant by leave of the court fully and sufficiently sets up the contract of the plaintiff with the relief department, and the acceptance of benefits thereunder by the plaintiff,

and that if such plea should be sustained by the proofs it would defeat the plaintiff's recovery. I think that this plea was not subject to demurrer, and that the court erred in overruling said plea. For this error I think that the judgment in said cause should be reversed.

PARKHILL, J., (dissenting.)—I am of the opinion that the court erred in sustaining the demurrer to the amended plea, setting up the defense based upon the relief department contract. I do not think said contract is void, either on the ground of public policy, or because in contravention of our statute, or for want of mutuality or a valid consideration therefor. It will be seen, therefore, that in some things I am in accord with the majority or leading opinion prepared by the Chief Justice and concurred in by Justices COCKRELL and WHITFIELD, while I do not agree to other conclusions reached by them in said opinion. I shall state wherein I think the opinion referred to is erroneous.

I desire now to direct attention to that part of the majority opinion which commences as follows: "We come now to the next contention of plaintiff, that such a contract is void because in contravention of our statute." From this subdivision I will quote at length that part of the opinion which I will discuss now, so that, having it before us, we may more easily and conveniently refer to it. I will put in parentheses those passages or sentences of the opinion disapproved of by me, as being incorrect statements of the law. Leaving out the sentences put in parentheses I have no special objection to the opinion as quoted below. In my opinion the sentences in parentheses not only state the law incorrectly, but contradict the other portion of the quotation not in parentheses. The majority opinion says:

28—Vol. 54

"Suppose there had been no contract and the employe, after the occurrence of the injury, had executed a valid release by way of compromise and full settlement of all claims for damages he then had against the railroad company for damages, in the absence of any fraud, imposition or deception, could its validity be called in question? Have not parties the right to compromise and settle any claims, whether arising *ex contractu* or *ex delicto,* without recourse to litigation, and does not the policy of the law favor such settlements? If this be true, then how could the fact that the employe, prior to the injury, had entered into a contract, by which he agreed, in the event of the happening of an injury to him, he would, after its occurrence, make his election either to proceed in an action at law against his employer for damages or to accept the benefits provided by the relief department, vitiate or impair a valid release so executed by such employe, after he had made his election to accept such benefits? In other words, would not a release, executed under such circumstances, be just as valid and binding as though there had been no pre-contract? We see no reason why it would not. (This being so, the contract can be ignored and disregarded.) In either case it seems to us that such a release founded upon a valid consideration could be successfully pleaded in bar as a defense to any action which such employe might institute, (without reference to the contract,) for it would be the release in both cases which would constitute the defense. This being true, all of the cited cases in which releases were executed subsequent to the injury would stand in a class by themselves. This distinction is recognized by the court of appeals for the District of Columbia in Brown v. B. & O. R. Co., *supra,* though it seems to have been lost sight of by some of the other courts. Of course,

where such release was executed under seal, the seal would import a consideration. If it be further true that 'it is not the signing of the contract but the acceptance of benefits after the accident that constitutes the release,' if, as a matter of fact, the employe had made his election and had accepted such benefits, why could not this be successfully pleaded as a defense, whether a formal release had been executed subsequent to the injury or not? We think the supreme court of Pennsylvania is right in its utterance in Ringle v. Penna. R. Co., *supra:* 'In the present case there is an additional agreement that the plaintiff shall execute such further instrument as may be necessary formally to evidence such acquittance,' and it is argued that no such release has been executed by plaintiff. But it is not necessary that it should be. The acceptance of benefits is the substance of the release, and the agreement for a further instrument is by its express terms a mere formality for convenience of evidence.' And where, as in the instant case, so far as is disclosed by the plea, there was no agreement in the contract to execute any further instrument, whether release, receipt or acquittance, it makes no difference, for it would be but a mere matter of evidence after all. If the plaintiff had accepted such benefits and the same be well and sufficiently pleaded as a defense, it would constitute a bar to the action. We fail to see wherein the contract in question construed as not effecting a valid release, in any way contravenes our statute. As we have already seen, it is not the making or signing of a contract which estops the plaintiff from bringing and maintaining his action, for, if that were true, it would undoubtedly be in contravention of our statute, for the reason that it would restrict the liability of the defendant. It is the release, whether formally executed

or not, or whether executed in pursuance of a prior contract or not, that prevents the maintenance of the action.   But in order to constitute a valid release, there must be a valid consideration therefor.   In order to hold the plaintiff barred from his action by the acceptance of benefits, which constitute a release, such benefits must have flowed from the defendant either directly or indirectly.   In other words, when a release is pleaded as a defense, it must plainly be shown by the plea that the defendant parted with something of value in consideration of the plaintiff releasing it from liability.   (To hold that the guaranty of the defendant or other provisions of the contract as set up in the plea in the instant case constitute a sufficient consideration for the release would be in effect to give a construction and an effect to the contract that restricts the liability of the defendant, and therefore would make it violative of our statute.   To prevent the statute against contracts restricting liability from avoiding the plea, the plea must be read as setting up an independent release, without reference to the original contract; if the antecedent contract is necessary to the validity of the release, the joinder of the release with that 'body of death' will prove fatal.)"

The majority opinion, in the quotation given above, holds that the contract set up in the plea in the instant case does not restrict the liability of the defendant and is not in contravention of our statute.   The language of the opinion is:   "We fail to see wherein the contract in question, considered as not effecting a valid release, in any way contravenes our statute."   I agree to this conclusion fully.   The contract, the signing or making thereof, does not effect the release of the liability of the defendant company for damages.   The acceptance of benefits by the plaintiff, upon his own election, after the accident or injury, is *the substance* of the release, or

*operates* as a release of the defendant. The majority
opinion enunciates this doctrine and I concur therein.
Thus far we are together, and, if none of us depart
therefrom, we will remain together to the end. But,
I respectfully submit, the majority opinion departs from
this doctrine in the following statement: "To hold that
the guaranty of the defendant or other provisions of
the contract as set up in the plea in the instant case con-
stitute a sufficient consideration for the release would
be in effect to give a construction and an effect to the con-
tract that restricts the liability of the defendant." This
statement is confusing and erroneous. The guaranty
of the defendant and other provisions of the contract
whereby the defendant pays all the operating expenses
of the relief department etc. etc., constitute a sufficient
consideration to support such contract. Chicago, B. &
Q. R. Co. v. Miller, 76 Fed. Rep. 439, and authorities
cited. The aforesaid consideration is an element of the
contract. If the contract, which includes the considera-
tion, is not in contravention of the statute, how can this
consideration be construed as a consideration for the
release so as to give a construction to the contract that
restricts the liability of the defendant? It is passing
strange.

In Ringle v. Penna. R. R., 164 Pa. St. 529, 30 Atl.
Rep. 492, quoted with approval in that part of the ma-
jority opinion copied above, the court said: "It is
further argued that as the contract is between the relief
association and the plaintiff and no evidence that the
railroad company defendant has in fact paid anything
into the treasury of the association there is no considera-
tion to support a release to the railroad company. It
is not however worth while to discuss whether the de-
fendant is in a position to take advantage of a considera-
tion moving from another party but for its benefit, as a

consideration from the defendant itself is abundant.    As
a member of the association it has assumed obligations
to take charge of the administration, and to pay all the
operating expenses, to take care of the funds, and to be
responsible for their safe keeping, to guarantee the obli-
gations of the association, and to make appropriations to
supply any deficiencies.    These would be ample even if
the amount of the consideration could be enquired into."
And in the Miller case, 76 Fed. Rep. 439, so much re-
lied upon in the majority opinion, Judge THAYER said:
"It also appears to be agreed that the obligation assumed
by the employer to maintain and support such associa-
tion by contributing the funds necessary for that purpose
creates a privity of contract between the employer and
the members of the association, and at the same time fur-
nishes a sufficient consideration to support such con-
tract."

In my opinion the majority opinion again departs
from its former proper holding by saying:    "To prevent
the statute against contracts restricting liability from
avoiding the plea, the plea must be read as setting up
an independent release without reference to the original
contract."    I thought it was agreed that the execution
of an independent release was unnecessary—that the
original or antecedent contract did not effect the release,
but that the acceptance of the benefits under the contract
effected or operated a release, and that the execution of
a new or independent release being unnecessary, the orig-
inal or antecedent contract with the election by the plain-
tiff after the accident to accept the benefits under the
contract was a contract that does not restrict the liability
of the defendant, and not in contravention of our statute.
That being true, I think that, to prevent the statute
against contracts restricting liability from avoiding the
plea, the plea must not be read as setting up an inde-

pendent release, without reference to the original contract.

Again the majority opinion departs from the doctrine that I thought had been settled in that opinion by saying: "If the antecedent contract is( necessary to the validity of the release, the joinder of the release with that body of death will prove fatal." We should rather say, in accordance with what has already been said, that if the antecedent contract, *without the election by plaintiff, after his injury*, releases the defendant company, then the contract does restrict the liability of the defendant, and is in contravention of our statute; but, if the election by plaintiff to so accept the benefits is necessary to the validity of the contract, then the contract does not restrict the liability of the defendant, because it is not the contract but the election that operates or works the release, and a plea setting up the antecedent contract and the election by the plaintiff to accept the benefits is good. A contract which would release the defendant company independently of an election by the plaintiff, after the injury, to accept the benefits in lieu of damages would indeed be a "body of death;" but the election by the plaintiff after the accident or injury, to accept the benefits, puts life into the contract. The election by the plaintiff, after his injury, to accept the benefits, and his agreement in the antecedent contract that his election to so receive the benefits in lieu of all other claims against the defendant company, become a living, breathing, valid, binding contract, not restricting the liability of the defendant in contravention of our statute, "not a stipulation for the future, but settling for the past," a contract that cannot be ignored or disregarded by a court whose only mission is to declare the law as it is, and to guard and enforce the rights of parties as fixed by themselves in contracts not in contravention of the law.

I will refer again to what some of the courts men-
tioned in the majority opinion have to say.   In this way,
we will keep our bearings.   The majority opinion says:
"We call attention to the fact that the closing words of
the Iowa statute, 'and no contract which restricts such
liability shall be legal or binding,' are identical with the
closing words of our statute, section 3 of Chapter 4071,
Laws of 1891, which words are now before us for con-
struction."   Again, the majority opinion says:   "As we
have already seen, the Iowa statute is couched in *ipsissi-
mis verbis* of our statute, which we are now considering."
It will be interesting and profitable, then, to know what
the Iowa court has to say about the validity of a relief
department contract similar to the one in the instant
case and the effect thereon of the Iowa statute, which the
majority opinion has twice told us is just like our stat-
ute.   In Donald v. Chicago, B. & Q. Ry. Co., 93 Iowa
284, 61 N. W. Rep. 971, the court says:   "It is not a
contract by which the company can escape a legal liabil-
ity for its torts.   The way is entirely open for the pros-
ecution of any claim for negligence against the com-
pany, and damages are obtainable to the full amount of
the injuries sustained.   There is no phase of public policy
that prohibits any person agreeing that such full compen-
sation, or whatever he may accept as a compensation,
shall be in lieu of any claim he might otherwise have
against the relief fund.   It seems to be the thought, in-
ducing the contract, that the company shall not be com-
pelled to pay damages for the injury sustained, and also
to contribute to a fund for additional relief.   Such an
agreement seems not only not against public policy, but
seems not inequitable.   *   *   *   It is said that the con-
tract is contrary to the express terms of code, section
1307, which provides that any contract restricting the
liabilities of railway companies for the negligence or mis-

management of their employes in connection with the operation of railways shall not be legal or binding.    But we have said, and the authorities cited hold, that such contracts are in no way a restriction on such liability. The employe, when such liability arises, has his choice to take the damages, as he may be able to establish them, or the benefit from the association.    The company is liable for either, at the election of the employe, but not for both.    Such facts do not amount to a restriction on liability."    To show how much the contract before us in the instant case is like the contract involved in the Donald case, I will quote again from the opinion in that case. "The fund is obtained by monthly assessments of its members, and the amount is deducted from the monthly payments.    Such amounts as are not raised from these assessments are made up by the company from its earnings, *in the way of interest on the monthly balances of the relief department.*    The incidental expenses of the department—incident to the conduct of its business—are paid by the railway company.    In case the fund of the relief department is not sufficient, the company pays all benefits due, in full."

The majority opinion, in speaking of certain Georgia cases mentioned therein, has this to say:    "We have read these cases with care and interest.    The contract discussed therein is quite similar to the one in the instant case.    As was said in the case of Petty v. Brunswick & W. Railway Co., 109 Ga. 666, text 671, 35 S. E. Rep. 82, after quoting the section of the Georgia Code and reciting the contention of plaintiff that the contract was 'contrary to public policy, *in that it evidenced an attempt to exempt the company from liability for negligence;*' 'As should be readily apparent, the weakness of this position lies in the fact that it is based upon an entire misconception of the meaning and effect of the contract

thus assailed. It did not, as claimed, in any of its terms or conditions stipulate that the defendant company should be absolved from the legal consequences of its own negligence or that of its servants. On the contrary, it merely provided an additional remedy to that given by law to an employee who might suffer injury by reason of the negligence, actual or imputable, of his master. The latter remedy was left intact, undisturbed and unimpaired, and the injured employee might, or might not, at his option, take advantage thereof. True he could not avail himself of both, but was put upon his voluntary election as to which of the two he would pursue. This feature of the contract is not only technically permissible, but is in perfect harmony and accord with that fundamental rule of law, based upon sound and sensible considerations of public policy, which contemplates that indemnity, rather than the mere chance of speculative gain should be the primordial purpose of every contract designed to afford protection to a party thereto in the event he sustains loss or injury. Only in case the injured employee commits an error of judgment in determining whether he will accept benefits, which, though comparatively small, are yet sure and easily within his grasp, or will hazard the less certain result of a suit for damages, can he possibly fail to realize all the fruits of every right given him by law. That it is conceivable he may make such mistake does not render the contract essentially and inherently vicious, and therefore opposed to public policy.' " In commenting upon the above quotation from the Petty case, the majority opinion says: "We are impressed with the clearness and cogency of this reasoning and that impression is intensified when we find that the courts of Pennsylvania, Ohio, New Jersey, Iowa, Indiana, Nebraska, Maryland, Illinois and Alabama, as

well as several of the Federal courts have reached a like conclusion."

In the case of Pittsburg, C., C. & St. L. R. Co., v. Moore, 152 Ind. 345, 53 N. E. Rep. 290, in considering the effect upon a relief department contract of the Indiana statute inhibiting the making of any contract exonerating a railroad company from a future liability to an employe, the court said: "In Johnson v. Philadelphia etc. R. Co., 163 Pa. St. 127, 29 Atl. Rep. 854, the court, having under review a contract in all material respects, like the one here, says: 'But even in cases of injury through the company's negligence there is no waiver of any right of action that the person injured may thereafter be entitled to. It is not the signing of the contract but the acceptance of benefits after the accident that constitutes the release. The injured party, therefore, is not stipulating for the future, but settling for the past; he is not agreeing to exempt the company from liability for negligence, but accepting compensation for an injury already caused thereby.'

"In the case of Otis v. Pennsylvania Co., 71 Fed. 136, the contract considered was identical with the one pleaded in this answer, and concerning it BAKER, J., says: 'As a general proposition, it is unquestionably true that a railroad company cannot relieve itself from responsibility to an employe for an injury resulting from its own negligence by any contract entered into for that purpose before the happening of the injury, and, if the contract under consideration is of that character, it must be held to be invalid. But upon a careful examination it will be seen that it contains no stipulation that the plaintiff should not be at liberty to bring an action for damages in case he sustained an injury through negligence of the defendant. He still had as perfect a right to sue for his injury as though the contract had never

been entered into.    Before the contract was entered into, his right of action for an injury resulting from the defendant's negligence was limited to a suit for the recovery of damages therefor.    By the contract he was given an election either to receive the benefits stipulated for, or to waive his right to the benefits, and pursue his remedy at law.    He voluntarily agreed that, when an injury happened to him, he would then determine whether he would then accept the benefits secured by the contract, or waive them and retain his right of action for damages.'    In Shaver v. Pennsylvania Co., 71 Fed. 93, RICKS, J., reached the same conclusion from the consideration of a similar contract.

"Again in Pittsburg, etc. R. Co. v. Cox, 55 Ohio St. 497, 45 N. E. 641, 35 L. R. A. 507, the supreme court of Ohio expressed its view of a similar contract in the following words:    'This claim arises, we think, from a misconception of the contract; in assuming that, by the contract, the employe releases some future right against the company.    On a previous page we have undertaken to show that such is not the case; that there is no waiver of any cause of action which the employe may be entitled to, and that it is not the signing of the contract but the acceptance of benefits after accident, that constitutes the release.    When that occurs he is not stipulating for the future; he is but settling for the past.    He accepts compensation for injury already received.'    The same view is held by the supreme court of Iowa, announced in Donald v. Chicago, etc. R. Co., 93 Iowa 284, 61 N. W. 971, 33 L. R. A. 492, and by the supreme court of Maryland in Fuller v. Baltimore etc. Assn., 67 Md. 433, 10 Atl. 237, and by the supreme court of Nebraska in Chicago etc. R. Co. v. Curtis, 51 Neb. 442, 71 N. W. 42; and to the same effect is the case of Maine v. Chicago

etc. R. Co. (Iowa), 70 N. W. 630, and that of Lease
v. Pennsylvania Co., 10 Ind. App. 47.

"The contract forbidden by the statute is one relieving
the company from liability for the future negligence of
itself and employes. The contract pleaded does not pro-
vide that the company shall be relieved from liability.
It expressly recognizes that enforceable liability may
arise, and only stipulates that, if the employe shall pros-
ecute a suit against the company to final judgment, he
shall forfeit his right to the relief fund and, if he ac-
cepts compensation from the relief fund, he shall thereby
forfeit his right of action against the company. It is
nothing more nor less than a contract for a choice be-
tween sources of compensation, where but a single one
existed, and it is the final choice—the acceptance of one
against the other—that gives validity to the transaction.

"But appellee contends that some of the cases cited
above arose in states having no similar statute, and that
the question of the railroads contractual relief from liabil-
ity was propounded as being against public policy, and not
as in violation of a statute, and hence should not be ac-
cepted as authority. The answer to this is that the
statute also rests upon public impolicy, or it has nothing
whatever to stand upon. * * *

"We are mindful that this court in the case of Pitts-
burg etc. R. Co. v. Montgomery, ante, held a view of this
question at variance with the opinion herein expressed,
and which, after a more thorough examination of the
decided cases, we find to be in conflict with the very
decided weight of authority. Indeed the cases seem now
to be in substantial accord.

"The case of Miller v. Chicago etc. R. Co., 65 Fed.
305, the only case relied on as authority upon this ques-
tion was subsequently appealed to the United States cir-
cuit court of appeals, eighth district, and the doctrine of

the lower court inferentially disapproved, by the court announcing, in substance, that the authorities were all the other way, though the question here was not decided, as not being necessary to a disposition of the case.     Chicago etc. R. Co. v. Miller, 22 C. C. A. 264.    So far as the case of Pittsburgh etc. R. Co. v. Montgomery, *supra,* is in conflict with the opinion herein announced, the same is disapproved."

But let us continue our examination of the opinion prepared by the chief justice.    That opinion says:    "It seems to us that the plea is defective in many respects. First, it fails to show what amount of benefit per week 'for a period not longer than fifty-two weeks,' plaintiff was entitled to receive."    I do not think the plea defective in this respect.    As I understand the plea, it shows that the plaintiff was entitled to receive for each day of his disability fifty cents for a period not longer than fifty-two weeks, and twenty-five cents thereafter during the continuance of his disability, but the plea expressly says that the sum of $8.50 "was the benefit rate to which the plaintiff was entitled as a member, under the rules and regulations of said relief department."

It will be sufficient, as to this allegation of the plea, that the plea allege the amount due the plaintiff as benefits under the rules and regulations of the relief department, and to allege further that this sum was in fact paid to the plaintiff, and this the plea does.    There was no motion by plaintiff in the court below for a compulsory amendment of the plea in this respect under section 1043 of the Revised Statutes of 1892.    This objection to the plea was not made a ground of demurrer. But even if this objection had been made a ground of demurrer in the court below, it is not noticed or argued here by counsel, and will be regarded as abandoned. Jordan v. Sayre, 24 Fla. 1, 3 South. Rep. 329.    In ad-

dition to this, even counsel for defendant in error seem to have no difficulty in understanding from the plea that the plaintiff was entitled to receive fifty cents per day for a period not longer than fifty-two weeks, and twenty-five cents a day thereafter during his disability. On page 40 of brief for defendant in error the contract is spoken of as binding defendant in error to accept the "sum of $15.00 per month for 52 weeks and $7.50 per month afterwards for the balance of his life," and similar references are made on pages 40 1-2, 41, 42 and 66 of same brief. If the plea must be read as setting up an independent release, without reference to the original contract, the objections made here, being to a part of what is said to be "that body of death," ought not to trouble us.

Second, it is said that the plea "fails to show what sums of money, if any, the defendant company had theretofore contributed out of its own funds to the support of the relief association." Let me first ask, if this alleged defect in the plea is pointed out in order to show that there is no consideration for the contract? The words used in pointing out this alleged defect in the plea before us are quoted from the opinion by Judge THAYER in the Miller case, 76 Fed. Rep. 439, at the top of page 442. Why did Judge THAYER use these words, and point out thereby this defect in the plea then being considered by him in the Miller case? Judge THAYER was using those words because he was showing that the contract before him was not supported by a valid consideration. But because the plea in the Miller case was defective in this respect, I cannot say the plea in the instant case is likewise defective; for I cannot find wherein the plea in the instant case is defective in this respect. The plea in the instant case does not "fail to show what sums of money, if any, the defendant company had thereto-

fore contributed out of its own funds to the support of the relief association." The plea shows that the defendant company was "to supply the necessary facilities for conducting the business of the relief department, and to pay all the operating expenses thereof, and has, in pursuance thereof complied with, performed and discharged all of said obligations before mentioned upon the part of said defendant company to be complied with, performed and discharged, and has also furnished the necessary hospital buildings and furniture, bedding, instruments, utensils, appliances, surgeons and nurses for the care of employes who become disabled by injuries, sickness or otherwise." The demurrer to this plea admits all this to be true. According to the contract, that was the way, and these were the things for which, the defendant company was to contribute money to the support of the relief department out of its own funds, this was the obligation assumed by the defendant company, and Judge THAYER said, in the Miller case, that "the obligation assumed by the employer to maintain and support such association by contributing the funds necessary for that purpose creates a privity of contract between the employer and all the members of the association, and at the same time furnishes a sufficient consideration to support such contract."

Third, the majority opinion holds that the plea is defective for the further reason, that "it fails 'to show what other beneficial acts, if any, the defendant company has done and performed toward the maintenance of the association,' further than that the defendant company assumed general charge of the department and guaranteed the fulfillment of its obligations, and has taken charge thereof continuously and has the custody of the moneys belonging to the relief fund, and has become responsible for the safe keeping of said fund, and guar-

anteed to pay into the fund interest at the rate of 4 per cent. per annum on monthly balances in its hands, and to advance from its own funds money to pay benefits when the amount contributed by the members, with interest and other income is not sufficient to pay benefits as they become due, and to supply the necessary facilities for conducting the business of the department, and to pay all the operating expenses thereof, and has in pursuance thereof complied with, performed and discharged all of said obligations before mentioned upon the part of said defendant company to be complied with, performed and discharged, and has also furnished the necessary hospital buildings and furniture, bedding, instruments, appliances, surgeons and nurses for the care of employes who become disabled by injuries, sickness or otherwise,' whatever all this may mean." "All this" means that the defendant company has done and performed beneficial acts that have been held by many courts to be a sufficient consideration to support the contract before us, as I understand the authorities.

I do not think these allegations, these beneficial acts done and performed by the defendant company as stated in the plea can be dismissed with the dash of the pen. In this connection let me quote what Judge THAYER said in the Miller case: "with reference to the alleged error, it is to be observed that it has been held in several considered cases that if a railroad company organizes a relief association for the special benefit of its injured, sick and disabled employes, pays the incidental expenses of such association, acts as its treasurer or custodian of its funds, and enters into a binding obligation to support and maintain the association by paying out of its own funds such sums to discharge the obligations of the association as the assessments levied upon the members of the association are inadequate to pay, such an associa-

tion on admitting an employe of the railroad company to membership, may lawfully stipulate that, in event of an injury being sustained by him, the acceptance of benefits from the association shall operate as a relinquishment of any right of action which the employe may have against the railroad company in consequence of the injury, and that the stipulation so made inures to the benefit of the railroad company and constitutes a legal defense to a suit brought against it by the injured employe, if the latter accepts benefits from the association." And upon the proposition that such obligations furnish a sufficient consideration to support such a contract, he cites Leas v. Pennsylvania Co. (Ind. App.) 37 N. E. 423, Johnson v. Railroad Co. (Pa. Sup.) 29 Atl. 854; Donald v. Railroad Co. (Iowa) 61 N. W. 971; Railroad Co. v. Bell, 44 Neb. 44, 62 N. W. 314; Fuller v. Relief Ass'n, 67 Md. 433, 10 Atl. Rep. 237, State v. Baltimore & O. R. Co., 36 Fed. 655, Owens v. Railroad Co. 35 Fed. 715. The words used in the majority opinion in pointing out this third defect, and found in quotation marks in the sentence: it fails "to show what other beneficial acts, if any, the defendant company had done and performed toward the maintenance of the association" is another quotation from Judge THAYER, another stricture upon the plea before him, which does not apply to the plea before us. For the plea being considered by Judge THAYER did fail to show what other beneficial acts, if any, the defendant company had done and performed toward the maintenance of the association, while the plea before us, in my opinion, does allege "all this." Because the plea before Judge THAYER was defective in this respect, I cannot say the plea in the instant case is likewise so defective, when it is not so defective, as I think.

The majority opinion says: "In fine there is a striking similarity in several respects in the defects in this

plea and those pointed out by the United States circuit court of appeals and the Colorado supreme court in the pleas filed in those cases." With great respect I must say that there is a striking similarity in several respects in the majority opinion in pointing out alleged defects in the plea before us and the opinions in the two cases just mentioned; but I cannot see any similarity whatever between the defects in this plea and those pointed out in the Miller case, 76 Fed. Rep. 439, and the Colorado case, Chicago, B. & Q. R. Co. v. McGraw, 22 Colo. 363, text 371, 45 Pac. Rep. 383. The entire failure of the plea in the Miller case to allege the doing of the beneficial acts already mentioned by the railroad company, such as the payment of the operating or incidental expenses of the association, etc., which Judge THAYER said furnish a sufficient consideration to support such contract which contract constitutes a legal defense to the suit brought by the injured employe, was the very reason causing Judge THAYER to say: "The plea further failed to show what sums of money, if any, the defendant company had theretofore contributed out of its own funds to the support of the relief association. It also failed to show what other beneficial acts, if any, the defendant company had done and performed towards the maintenance of the association." But these matters have been pleaded in the instant case. I can very well see the truth of the following statement made in the reply brief by counsel for plaintiff in error: "The court will see, upon reading the plea in the Miller case above quoted and the plea filed in this case, that counsel for plaintiff in error had the decision in the Miller case before him when he prepared the plea for the plaintiff in error in this case, and covered and met every objection that was offered to the plea in the Miller case."

So far as the Colorado case, Chicago, B. & Q. R. R.

Co. v. McGraw, is concerned, the plea only set up that
the plaintiff, being a member of the relief department,
"had promised and agreed to and with the company,
in consideration of certain amounts to be paid by the
said company for the maintenance of the relief depart-
ment," but the plea in that case failed to state any
amounts and failed to allege any beneficial acts done by
the defendant company such as are alleged in the plea
in the instant case. The plea in the McGraw case also
failed to state the amount of benefits plaintiff had re-
ceived, while the plea in the instant case alleges that the
plaintiff elected to receive benefits and that he received
the sum of $8.50, which was the benefit rate to which
the plaintiff was entitled, under the rules and regulations
of the relief department, and the plea also shows the na-
ture of the hospital treatment received by plaintiff and
the amounts of money expended therefor. The plea in
the instant case has fully supplied both of the omissions
made in the McGraw case from Colorado. I think the
defenses afforded by the relief department contract have
been well pleaded in the instant case, and the court de-
clared in the McGraw Colorado case that such defenses
if well pleaded are good. And the majority opinion in
the quotation heretofore given, said: "If the plaintiff
had accepted such benefits and the same be well and suf-
ficiently pleaded as a defense, it would constitute a bar
to the action." And the same McGraw Colorado case
shows how the "relief defenses" should be pleaded. In
speaking of the defense defectively pleaded in the Mc-
graw Colorado case, the court said: "In case the de-
fendant desires to interpose as a defense a contract with
the plaintiffs, showing that in consideration of his re-
ceiving certain benefits from a relief association, com-
posed of the defendant and its employes, the nature,
character and objects of such association should be set

forth, as well as the amount and character of the bene-
fits accruing to the plaintiff therefor, showing that the
same have either been paid, or that there is an obligation
for their discharge resting upon some organization, in-
dividual or association." I think that the plea here com-
plies fully with these requirements.

Again, the majority opinion says: "One thing, how-
ever, does plainly appear, all of these amounts, by whom-
soever the money may have been furnished were deducted
from the benefits coming to the plaintiff 'under the rules
and regulations of said relief department.' " This thing
may "plainly appear" from the plea in the Miller case,
but it does not plainly appear to me from the plea in the
instant case. I have read the plea carefully, and I find
that the only place where the words "under the rules
and regulations of said relief department" occur, just
as they are arranged and given here, is in that part of the
plea where it is alleged that there were paid by the plain-
tiff the amount of $8.50, "which was the benefit rate to
which the plaintiff was entitled as a member under the
rules and regulations of said relief department." It does
not seem to me that this statement in the plea can be
made to convey the idea that "these amounts, by whom-
soever the money may have been furnished was deducted
from the benefits coming to plaintiff 'under the rules and
regulations of said relief department.' "

Again, the majority opinion says: "There is no di-
rect averment in the entire plea that the defendant pro-
vided from its own means any of the benefits received by
the plaintiff as the consideration for the release. The
obligations of the defendant under the contract set up in
the plea cannot be regarded as a consideration for the
release, for, as we have already seen, that would give
to the contract an effect which is void under the statute."
This statement seems to be in direct conflict with the

Iowa cases, and the majority opinion twice called "attention to the fact that the closing words of the Iowa statute, 'and no contract which restricts such liability shall be legal or binding,' are identical with the closing words of our statute, section 3 of chapter 4071, Laws of 1891, which words are now before us for construction." In Maine v. Chicago, B. & Q. R. Co., 109 Iowa 260, text 269, 70 N. W. 630; 80 N. W. 315, the court said: "After the opinion prepared on the original submission of this cause was filed, a rehearing was granted on the petition of the plaintiff, to entitle this court to re-examine its holdings, to the effect that the contract between the plaintiff and the relief department of the defendant was valid, and to consider in that connection the case of Railway Co. v. Montgomery, 152 Ind. Sup. 1 (49 N. E. Rep. 582). That case so far as it was in conflict with our conclusion in this case, was overruled by the court which decided it, in Railway Co. v. Moore, 152 Ind. Sup. 345 (53 N. E. Rep. 290). See also to the same effect, Railway Co. v. Hosea, 152 Ind. Sup. 345 (53 N. E. Rep. 419) We have again considered the validity of the contract, aided by the exhaustive arguments of counsel and remain satisfied with the conclusion in regard to it announced in Donald v. Railway Co., 93 Iowa, 284, and in the original opinion in this case. That conclusion now appears to be in harmony with the holdings of all courts of last resort which have considered the principle involved, and to be well founded in reason. In the contract considered by the Iowa court in the Donald case *supra*, the statement of the facts shows that, "The fund is obtained by monthly assessments of its members, and the amount is deducted from the monthly payments. Such amounts as are not raised from these assessments are made up by the company from its earnings, *in the way of interest on the monthly balances of the relief department*. The inci-

dental expenses of the department—incident to the conduct of its business—are paid by the railway company. In case the fund of the relief department is not sufficient, the company pays all benefits due, in full." In that case, where "the Iowa statute is couched in *ipsissimis verbis* of our statute" the court did not say, as does the majority opinion in the instant case say, "The obligations of the defendant under the contract set up in the plea cannot be regarded as a consideration for the release, for, as we have already seen, that would give an effect which would make it void under the statute," but the Iowa court, where the statute is so much like ours held the contract to be valid, and quoted with approval from the case of Leas v. Pennsylvania Co. 10 Ind. App. 47, 37 N. E. Rep. 423, as follows: "where a railroad relief association, composed of associated companies and their employes, is in charge of the companies, who guarantee the obligations, supply the facilities for the business, pay all the operating expenses, take charge of and are responsible for the funds, make up all deficits in the benefit fund, and supply surgical attendance for injuries received in their service, an employe's agreement, in his voluntary application for membership, that acceptance of benefits for an injury shall release any claim of damages therefor against the railroad is based on a valid consideration."

In order to consistently say that the "obligations of the defendant under the contract set up in the plea cannot be regarded as a consideration for the release for, as we have already seen, that would give to the contract an effect which would make it void under the statute," the majority opinion would have to hold that the contract itself is in contravention of our statute, that it is the contract, the making and signing of the contract, which releases the railroad company or restricts its validity. But

the majority opinion has repudiated that doctrine.   The
majority opinion has quoted case after case exposing the
fallacy of that doctrine.    The majority opinion, in ex-
press language, has said that "it is not the making or
signing of a contract which estops the plaintiff from
bringing and maintaining his action, for, if that was
true, it would undoubtedly be in contravention of our
statute, for the reason that it would restrict the liability
of the defendant."   With all proper respect I must say
that there seems to be some confusion as to what is
meant by "the release," and this misconception of the
contract, is seen in the following statement in that opin-
ion :   "Separating it from the contract, as must be done,
the release pleaded as a defense in this case is as fol-
lows :   the plaintiff subsequent to the injuries complained
of in the declaration, applied for and then and there sub-
sequently received medical and surgical treatment by
reason of his membership in said relief department, on
account of the injury complained of in the first, second,
third and fourth counts of the declaration, and the de-
fendant company, after the plaintiff received the injuries
complained of, paid to the plaintiff benefits by reason
of his membership in said relief department, on account
of said injuries, and the same were received by the plain-
tiff as benefits accruing to him by reason of said injuries
on account of his membership in said relief department
and more particularly the defendant alleges these were
paid by the said relief department to the said plaintiff,
on account of said injuries, benefits to the amount of
$8.50, on or about to-wit: the 20th day of February,
1905, which was the benefit rate to which the plaintiff
was entitled as a member, under the rules and regula-
tions of said relief department, and there was also paid
by said department the sum of $50.00 to certain physi-
cians for care and surgical attendance upon said plain-

tiff and also, the sum of $42 for board for plaintiff, and also the sum of $8.00 for dressings of plaintiff's injuries, making a total of $100.00 expended by said relief department for medical attention, care and board for said plaintiff, independent of said sum of $8.50 benefits paid directly to said plaintiff, and said relief department did all on its part to be done for and in behalf of said plaintiff by virtue of his membership in said department, whereby the defendant was released from any and all claims for damages against the defendant arising in any way out of the injuries of which plaintiff complains in his declaration." I do not see how we can separate defendant's plea at this point. Why begin the quotation or statement, of what is erroneously said to be the release pleaded as a defense, with the words that the plaintiff "subsequent to the injuries complained of in the declaration, applied for and then and there subsequently received medical and surgical treatment" etc. etc? Why not quote the five words of the plea, "and after his said election," which come just ahead of, and which form a part of the very sentence in which occurs, the words, "subsequent to the injuries complained of," etc? Why not go back with the quotation of the so called release to the semi-colon above the quotation given, so as to make the release pleaded read as follows: "that the plaintiff elected to proceed under the terms of his said contract and the rules and regulations of said relief department, and accept the same in lieu of any claim for damages he might have by reason of the injuries received by him and the subject matter of this lawsuit, and after his said election, and subsequent to the injuries complained of in the declaration, applied for and then and there subsequently received medical and surgical treatment, etc. * * * and there were paid by the said relief department the sum of $8.50, which was the benefit rate to

which the plaintiff was entitled, etc.   *   *   *   whereby the defendant was released?" That begins to look something like a release. The words quoted in the majority opinion are no release at all. They are nothing like a release. The words quoted in the majority opinion only show that the defendant received certain medical and surgical treatment from the relief department. The receipt of treatment and benefits by the plaintiff from the Knights of Pythias, or any hospital put up by some philanthropic man would not release the defendant company. The receipt of this medical and surgical treatment and these benefits from the relief department would not release the defendant company if the plaintiff were not a member of the relief department, and unless it be shown, as the plea does show, that the plaintiff after his injuries "elected to proceed under the terms of his contract and the rules and regulations of said relief department and accept the same in lieu of any claims he might have by reason of the injuries received by him and the subject-matter of this lawsuit, and after his said election, and subsequent to the injuries complained of" the plaintiff applied for and received the medical and surgical treatment and benefits; and not even then would the defendant be released unless it be shown, as the plea here does show, that the defendant performed some beneficial act, such as paying the operating expenses of the department, furnishing the hospitals and surgeons and nurses, etc., taking care of and being responsible for the safe keeping of the funds of the department, all of which would be ample "consideration to support a release to the railroad," as will be seen by turning back to the quotation from the Ringle case 164 Pa. St. 529, 30 Atl. Rep. 492, found in the majority opinion. See, also, the Iowa cases, and others too numerous to mention again here.

I cannot concur in this treatment of the plea. I be-

lieve my duty requires me to consider this entire plea. If upon a consideration of this plea and the contract set out therein, we think the contract restricts the liability of the defendant, we should say so; and hold it to be in contravention of our statute. But I am of the opinion that the contract does not effect the release, that the plaintiff in accordance with his right to elect, after his injury, whether he would sue the company or look to the relief department for his compensation, benefits and surgical treatment, etc., made his voluntary election to accept the benefits from the relief department, that this election by the plaintiff under the terms of the contract, binds him to his choice of remedies, operates as a release of the defendant company under the terms of the contract and bars this suit, that the contract is supported by a valid consideration, is not opposed to public policy, is not in violation of our statute, and that the plea sets up the contract fully, sets forth the nature, character, objects of the relief department, the valuable contributions thereto by the defendant company; and so believing, it becomes my duty, as a member of this court, to say, the court erred in sustaining the demurrer to the plea, and that this cause should be reversed.

If the case be reversed, I believe the plaintiff would have a right to set up, by replication to the plea, that his membership in the relief department was not voluntary on his part, but that his employment by the defendant was conditioned upon all employees becoming members of said association, and I am of opinion that such coercion on the part of the railroad company would avoid the relief department contract, and the plaintiff would be entitled to recover in spite of the said contract.

I am also of the opinion that, if the plaintiff Beazley was induced to receive medical and surgical treatment and money as benefits from said relief department by the

misrepresentations of the surgeons and physicians attending him as to the seriousness of his injuries; or, if plaintiff did not elect to go to the hospital for treatment, but was taken there while in an unconscious condition and was unable by reason of his mental or physical condition to make any election under the contract, or if plaintiff received a check for benefits from the relief department under the said contract while he was suffering great pain, and thought it was given him in payment of extra work he had done for the defendant company, and was not informed of the true character of the check, or, if the plaintiff did not have an opportunity of electing whether to accept the benefits or to reject them, but was taken to the hospital by the arbitrary act of defendant company, and, after he was restored to consciousness, the physicians or other employees of defendant deceived him as to the extent of his injuries, and informed him that his injuries were temporary, and that he would be able to return to work in three or four weeks, but that his injuries were of a permanent nature, then the plaintiff will not be debarred of his action and right to recover by the terms of the relief department contract. All these matters were set up by replications to the *original plea* of defendant, and I am of the opinion that the amended plea should stand, and the plaintiff should be permitted to urge and present such matters of fraud, misrepresentations of the defendant company's servants or physicians, or such incapacity of plaintiff to make an election of benefits under the contract, by replications to the *amended plea.* In this way, in my opinion, the right would be saved to the employees of the railroad company to contract for highly meritorious benefits of the relief department and to elect to receive them, if they so desired, in cases where otherwise they might not be able to recover damages by a suit against the railroad com-

pany, and the right would be also secured to them of electing to bring suit for damages against the railroad company, if they thought they had a chance to recover more from the company, and the relief department contract would not be a bar to their right to recover, if they had accepted the surgical treatment and benefits through misrepresentations, fraud or duress of the railroad company's servants or agents, or through their own incapacity to make an election.

By this orderly course in the administration. of the law, the rights of the plaintiff and defendant would be protected and no principle of the law would be violated.